# EEOC AFFIDAVIT

STATE OF NEW YORK  ))  SS.:
COUNTY OF NEW YORK  )

I, RANDI WEINGARTEN, being duly sworn, declare under penalty of perjury the following:

1. I am the President of the United Federation of Teachers, a position I have held since 1998. The United Federation of Teachers ("the UFT") is the sole collective bargaining representative for teachers and other non-supervisory employees of the New York City Department of Education. Of the UFT's more than 140,000 members, approximately 91,000 are teachers or other tenured or tenurable staff members (school secretaries, guidance counselors, psychologists, social workers, etc.). The UFT's and my principal place of business is 52 Broadway, New York, New York 10004.

2. The New York City Board of Education ("the Board")[1] is the governing body of the public school system in New York City, and has as its principal place of business the Tweed Courthouse, 52 Chambers Street, New York, New York 10007. The Board possesses the powers and responsibilities as delineated in the Education Law, including the power to employ, supervise, discipline, and terminate employees. The Board employs more than five hundred (500) people.

3. The UFT brings the instant charge –that the Board has violated the Age Discrimination in Employment Act– on behalf of its members over 40 years of age, who have been harmed by the Board's discriminatory use of the disciplinary system, through the initiation of disciplinary charges under Education Law §3020-a and the issuance of Unsatisfactory annual performance ratings to such teachers, as well as the Board's discriminatory pattern and practice of coercing, threatening, and harassing teachers over 40 years of age to "encourage" those teachers to leave their assigned schools.

---

[1] The Board is also known as the New York City Department of Education.

## FACIALLY-NEUTRAL PRACTICE OR POLICY AT ISSUE

4. Tenured personnel of school districts may only be disciplined pursuant to Education Law §§2590-j(7)(a), 3020 and 3020-a. Education Law §3020 provides that "No person enjoying the benefits of tenure shall be disciplined ... during a term of employment except for just cause ...." A Board of Education may not prefer charges against a tenured employee unless it has found that there is probable cause to do so. *See Education Law §3020-a(2)(a).*

5. Pursuant to the Regulations of the Commissioner of Education (8 NYCRR §§89, 100), New York City Board of Education's Chancellor's Regulations (Special Circular No. 45), and the collective bargaining agreement between the UFT and the Board, all professional personnel must be provided with annual performance ratings. Those ratings must characterize the employee's work as either Satisfactory, Unsatisfactory, or, in certain cases, Doubtful. In still other cases where employees are reassigned outside of their regular assignment for disciplinary reasons, the Board must give them an annual performance rating of "NA" (not applicable). The By-Laws of the Panel for Education Policy of the Department of Education of the City School District of the City of New York provide for an appeal from any rating other than a Satisfactory. *(See By-Law 4.3).*

## THE BOARD'S DISCRIMINATORY APPLICATION

6. Of the UFT's 91,000 pedagogues who are eligible for tenure, approximately 41,000 or 63.4% are tenured teachers who are over the age of 40. This statistic is relevant in analyzing whether the Board is discriminating against older teachers in preferring disciplinary charges pursuant to §3020-a.

7. Upon information and belief, based upon my review of the records maintained by the UFT, as set forth more fully in the following paragraphs, for the past three years, the Board has revealed its discriminatory intent in the rate of its preferral of disciplinary charges against teachers who are 40 years old.

8. During the 2002-2003 school year, I am aware that the Board preferred §3020-a charges against at least 126 tenured pedagogues. Of those charged pedagogues, 114 or **90.5%** were over the age of 40.

9. During that same period, the Board formally threatened to prefer –but did not actually prefer– §3020-a charges against 24 pedagogues. Of those threatened pedagogues, 23 or **95.8%** were over the age of 40.

10. In sum, during the 2002-2003 school year, 137 of the 150 employees threatened with or served with §3020-a charges were over 40 years old. That is, **91.33%** of those threatened or served with charges were over the age of 40.

11. During the 2003-2004 school year, the Board served 147 pedagogues with disciplinary charges pursuant to §3020-a. Of those charged, 132 pedagogues were over the age of 40. That is, **90%** of those charged were over the age of 40.

12. During that same period, the Board formally threatened to prefer –but did not actually prefer– §3020-a charges against 21 pedagogues. Of those threatened pedagogues, 16 were over the age of 40. That is, **76.2%** of those threatened with charges were over the age of 40.

13. In sum, during the 2003-2004 school year, 146 of the 168 employees threatened with or served with §3020-a charges were over 40 years old. That is, **87%** of those threatened or served with charges were over the age of 40.

14. Similarly, during the 2004-2005 school year, the Board preferred §3020-a charges against at least 143 pedagogues. Of those 143 pedagogues, 122 were over the age of 40. That is **85.3%** of all teachers disciplined pursuant to §3020-a during that school year were over the age of 40.

15. I am also aware that, during each of the cited school years, there are pedagogues, over the age of 40, who were not formally threatened with charges, but were apprised that, if they did not retire, would be so charged. Those pedagogues did, in fact, retire or resign from their positions. As yet, I do not have the empirical data regarding those cases.

16. The Board has similarly utilized the annual performance rating process to discriminate against older tenured members of the UFT.

17. For example, of the 729 tenured UFT members who received Unsatisfactory annual performance ratings for the 2004-2005 school year, 571 or **78 %** are over the age of 40.

This statistic is relevant in analyzing whether the Board is discriminating against older teachers in the annual performance review process.

18. During the 2002-2003 school year, 549 pedagogues throughout the New York City public school system were issued Unsatisfactory annual performance ratings (U-ratings). Of those pedagogues, 348 were over the age of 40. That is, 63% of all U-rated pedagogues in the 2002-2003 school year were over the age of 40.

19. For example, in Manhattan alone, the average age of U-rated pedagogues during the 2002-2003 school year was 47.79. The borough of Manhattan was divided into ten School Districts (Districts 1 through 6, District 71, District 75, District 79, and District 81) at that time, and in every single one of those school districts, the average age of a U-rated pedagogue was well over 40; District 4 had the lowest average age, 44.6 years old, of U-rated pedagogues.

20. Similarly, during the 2003-2004 school year, 645 pedagogues throughout the New York City public school system were issued Unsatisfactory annual performance ratings. Of those pedagogues, 381 were over the age of 40. That is, 59% were over the age of 40.

21. Again, using the borough of Manhattan as an example, during the 2003-2004 school year, the average age of U-rated pedagogues in that borough was 49.3 years old. Only District 1's average that year fell below 40 years old; that year, only two teachers in District 1 were issued Unsatisfactory ratings: one was 53 years old with 30 years of service, and the other was 25 years old with 2 years of service. However, the average ages of U-rated teachers in District 2 was 54.25; in District 3 it was 55.9; in District 5, it was 58.1; and in District 6, it was 57.37.

22. Based upon preliminary findings, during the 2004-2005 school year, 314 pedagogues were issued Unsatisfactory annual performance ratings. Of those pedagogues, 129 were over the age of 40. That is, 41% were over 40 years old.

23. The above statistics alone establish that the Board's application of both the annual performance ratings and the preferral of disciplinary charges disparately impacts those members of the UFT who are over 40 years of age to the members' detriment, both professionally and personally.

## THE BOARD'S PATTERN AND PRACTICE OF
## DISCRIMINATION ON THE BASIS OF AGE

24. Upon information and belief, for at least the past three years, the Board has knowingly permitted school administrators to employ a pattern and practice of age discrimination in various schools within New York City. The discrimination has taken the form of unjust and unfounded criticisms, abuse of the observation process to intimidate and harass teachers, blatant disregard of seniority in making classroom assignments, and even making illegal offers of giving satisfactory ratings in exchange for senior teachers leaving the school. The employment of these discriminatory practices has resulted in the elimination of senior teachers from these given schools. In some cases it appears that the discrimination is motivated by administrators' budgetary agenda: that is, seeking to reduce the schools' payroll budgets or allowing the two teachers to be hired for the price of one older, more senior teacher.

**P.S. 146, Region 9**

25. Between September 1999 and June 2004, Principal Laura Silver of P.S. 146 in Region 9 illegally drove nearly all of the senior teachers out of the school.

26. Principal Silver was assigned as principal of P.S. 146 in September 1999.

27. Upon information and belief, Principal Silver arrived at P.S. 146 believing that she was charged with "turning the school around," and undertook to eliminate from the school teachers who were older and/or more senior.

28. Based upon a review of the organization sheets for P.S.146 for the school years 1999-2000 through 2003-2004, at the end of each school year, approximately 20 teachers did not return to P.S. 146 for the following school year.

29. Upon information and belief, based upon conversations with other teachers and UFT representatives at P.S. 146, the majority of the teachers who did not return to P.S. 146 from one year to the next were over the age of 40. Most of them also had satisfactory service records within the Board of Education prior to their transfer from P.S. 146.

30. Upon information and belief, many of the teachers who did not return to P.S. 146 were threatened by Ms. Silver that, if they did not make other arrangements for the following year's assignment, she would give them an Unsatisfactory rating for the year, and possibly bring