ignored.

Timeline

1)On April 30, 2008, Teddy Smith **won a decision** from the Supreme Court of the State of New York regarding the attached matter against The New York City Department of Education. Entire file, documents and exhibits are filed at New York Sate Supreme Court, New York County, 60 Centre Street, New York, Index #117051/07. Attorney: Mr. William A. Gerard.

2)Richard Condon, Special Commissioner of Investigation, Gerald P. Conroy, Deputy Commissioner of Investigation and Michael Humphries, Investigator for The New York City Department of Education released a false and fraudulent report regarding Theodore Smith with respect to this same matter and arbitration.

3)First arbitrator, Jack Tillem, colluded and grievously misled the hearing and record by having off-the-record, ex parte conversations with Smith's former attorney David Kearney of the Law Offices of Neal Brickman in New York, Teresa Europe, Deputy Counsel to the Chancellor of the Department of Education, and Susan Jalowski, Attorney for the Department of the Education. These off-the-record conversations were also held on cell phones at the point of decision and documented in the legal transcripts for the arbitration as well as in the Supreme Court decision reversing a second arbitrator's, Howard Edelman, decision.

4)The New York Daily News and The Chief newspapers of New York City released falsified, inaccurate and unsubstantiated stories based upon a bogus report supplied by the New York City Department of Education in conjunction with an investigation led by the special commissioner, Richard Condon. The story in the Daily News was written by Carrie Melago. Carrie Melago stated that Mr. Smith made an alleged death threat to the arbitrator Jack Tillem. Jack Tillem never said that Mr. Smith had made a death threat against him. It was Smith's former attorney David Kearney who falsely told Jack Tillem and the Department of Education attorneys in an off-the-record phone conversation, that Smith had made the alleged threat. Carrie Melago never interviewed Mr. Smith or his present attorney before having the story sent to press. In an email sent to Teddy Smith, Melago stated that she would write a follow-up story when he was vindicated. Smith was never found guilty. Richard Steier from The Chief also wrote a false and misleading story concerning Smith. He wrote that Teddy Smith allegedly

**Joel Klein's Performance Review**



Joel I. Klein

### Joel Klein's famous statement about rubber room teachers and staff

On November 27, 2006, temporarily re-assigned teacher (TRT) Polo Colon asked Joel Klein, the **"pretend" Chancellor** of the NYC public school system, if he had voted to terminate teachers at the secret Executive Session held just before the public meeting of the **Panel For Educational Policy**.Mr. Klein answered, *"We did not vote to terminate you. We did vote to terminate a teacher in executive Session...in fact, we voted to terminate two teachers. It's perfectly consistent with the law.Many teachers have been charged with sexual activities and some are charged with corporal punishment...I have no interest in removing people who are qualified to teach, I can assure you, because I dont get any return...and in fact, I have complained publicly about how long this process drags out. But our first concern will always be and, as a former lawyer and somebody who clerked on the United States Supreme Court I will tell you, there is no violation of due process whatsoever..."*- extracted from the audiotape of the PEP meeting bought by Betsy Combier after filing a FOIL request to the NYC BOE

threatened to kill the arbitrator, without interviewing Mr. Smith.

5)Lindley Uehling, former principal of the New York City Museum School in Manhattan and now in the Admissions Department of Hunter College High School in Manhattan has testified that Mr. Smith had oversized physical education classes of over 100 students, 75 students and other oversize classes while alone in the gym for months without any help from assistants. Uehling said that this was part of Mr. Smith's job in documented testimony. Meanwhile, Ms. Uehling was violating the teacher's contract by not informing the chancellor or teacher in writing that she was overseeing physical education classes in excess of 50 students.

6)Assistants that were assigned to Smith's oversized classes three months after the school year also often did not report to the classes leaving Mr Smith alone with the oversized classes. Also, some of these assistants that were assigned to these classes were not state certified and were not certified in physical education. Uehling testified that for the first three months of the physical education program there was no gym to hold classes because there was a leak in the ceiling. The physical education classes that Mr. Smith was hired to teach was always considered a part-time program. This was considered an illegal program. In order to justify hiring Mr. Smith fulltime the principal inflated the class periods. Smith had a program where he taught 17 to 18 period per week. Former principal Uehling made the physical education program add up to 25 teaching periods per week by making Smith teach a class alone with over 100 students in the class for close to one year. By teacher's contract, Smith was required to teach the entire school physical education and health classes at least three times per week. Uehling had him scheduled for only once per week for only one to two periods.

7)Smith and his council asked the arbitrator during his hearing in 2007 in to see the budget during the calendar year 2004-2005 to point out what must be discrepancies when he was teaching under such objectionable and illegal circumstances. They were denied access to the budget in any way by the arbitrator Jack Tillem during the hearing.

8)Teddy filed a Federal law suit against the City of New York Department of Education and individuals asserting disability retaliation, discrimination, retaliation, age discrimination, and slander.

9)Arbitrator Jack Tillem asked Smith's former attorney David Kearney to bring a check with him for $1,600 to a hearing because Smith was sick the night before the hearing with a doctor's note. The arbitrator had an ex parte conversation with former attorney David Kearney regarding Smith bringing the check for $1,600. This conversation was never placed in the record.



Michael Bloomberg

**Mayor Michael Bloomberg**

**Editorial: The New York City Department of Education is a Sham and Mike Bloomberg is the Flim-Flam Man**

**Mayor Michael Bloomberg as Co-Partner in Chief of the New York City Department of Education: Performance Review**



Sid, Karen,Lenny, Eric, Justine, Yolanda, Betsy, Gale, Polo, Mildred Nov. 2008

**Special Commissioner of Investigation**



Richard Condon

10)Principal Linda Uehling changed Smith's grade in June, 2005. Class lists with the true amount of students in his classes were falsified.

11)Ted Smith was denied peer intervention which he requested in writing.

12)A report by the Department of Education confirms that during the 2004-2005 school year when Ted Smith was teaching 15 out of 21 left the school that year. The report shows that the school was in total chaos throughout that year.

13)An e-mail dated January, 2005 was sent from Department of Education Fay Pallen on her Blackberry device that was supposedly supposed to be sent to former principal Lindley Uehling. This e-mail was sent to Mr. Smith by mistake. The nature of this e-mail is entirely about the subject of how to simply get rid of Ted Smith by finding reasons giving him 2 unsatisfactory yearly ratings. Also, to get Victor Ramsey the former Director of Physical Education Region 9 in Manhattan, to write a negative evaluation about Mr. Smith. Mr. Ramsey did just this, however he explained personally that the class that he had observed was excellent. Upon questioning by Smith, subsequent to the bad report, he issued an updated report that was good.

14)Arbitrator Jack Tillem informed Smith's former attorney David Kearney in front of Smith at the end of the Department of Education's presentation of witnesses, before Mr. Smith had a chance to bring in his witnesses, that he had already made up his mind against Mr. Smith with a three to six month suspension. Smith sent a letter to the arbitrator at his office protesting this, explaining that the arbitrator was tilted, biased and partial by making such a statement before Smith even had a chance to call in his own witnesses.

15) A new Arbitrator, Howard Edelman, was assigned to Smith's case in June of 2007. Mr. Smith's new attorney William Gerard asked Mr. Edelman to hold another hearing because the previous record and hearing had obviously been biased and tainted. And, that in fairness the new arbitrator must hear the case himself to correctly substantiate the validity of testimony of the witnesses. This was a point in question that the Supreme Court Judge used, among others, to rule against arbitrator Edelman who without hearing any testimony ruled against Mr. Smith. The punishment was one year without pay and benefits and upholding the principal's bogus "unsatisfactory" rating. This unsatisfactory rating, which would make it impossible to be again hired in the school system, was the only such in over ten years with tenured service for the New York City Department of Education.

16) Edelman ignored all the evidence and principal Uelhing's

**November 26, 2007**
**Candelight Vigil**



Thousands of teachers and school staff members rally at Tweed



Corporation Counsel Michael Cardozo

**Fair Use Doctrine**

Fair Use Doctrine

**Parentadvocates.org**




