case, nearly a year before Taylor's arrest by police, investigators in Stancik's office had asked permission to launch a probe of the school official. The request was made after a prison social worker contacted the investigations office to say that an inmate was claiming to have been sexually abused by Taylor, his former teacher. Investigators initially dismissed the charge as one more prisoner trying to reduce his sentence. But the details of the story were disturbingly precise: Taylor had asked the student, then 15 years old, to carry a crate of milk up to his apartment. Once he got him inside, Taylor had sexually assaulted him. The inmate described the apartment in detail. Investigators drove to upstate Green Haven Correctional Facility to interview the inmate, who convinced them that a sexual predator was loose in the schools. The statute of limitations had expired on the earlier assault, but the inmate said he was willing to wear a recording device to a meeting with Taylor to see if he could get him talking about other victims. The investigators relayed that offer to Loughran, then the attorney-in-charge of the child sexual-abuse unit and a key figure in the office. Loughran refused.

"The issue for her seemed to be, 'Why spend the time and money to get this kid out of jail and wire him up for a case that's too old,' " a former investigator told the Voice. "We argued that if we have this one person there are probably others out there at risk."

Loughran was adamant. But the investigators, most of them retired NYPD detectives who lived by chain of command, declined to appeal the decision over her head. The case was closed. Nine months later, the outraged mother of another victim filed her complaint with police. Taylor was immediately arrested and later sentenced to serve up to three years in prison. Under questioning, he said something that chilled both cops and school investigators. He said he was HIV-positive.

---

Ed Stancik's public posture was of a manager with a stern "the buck stops here" policy. But according to the former detective and others, the often ailing commissioner ceded wide authority to Loughran, a hardworking former sex-crimes prosecutor whose ability to turn out clearly written reports was highly prized by Stancik and his successor.

Investigators said Loughran was also often tempestuous, given to sudden rages and sulks. What made their jobs most difficult, however, was her apparent skittishness about dealing directly with outside prosecutors who were needed for any criminal referrals. "She just seemed intimidated or something," said one veteran ex-detective who worked in the office for years. "If we had a tape we needed to get to the D.A. she would have you drop it off with the officer in the lobby, rather than make a call to the prosecutor personally."

As a result, the investigators said, the case of the predatory assistant principal was just one of the instances in Stancik's old office where the system simply broke down.

There was the case of the art instructor accused of having displayed nude photos of himself to disabled students, confiding

NYC Special Commissioner of Investigation
NYCRR
NYS and Local Retirement System
NYS Assembly
NYS Assoc. for Superintendents of School Buildings and Grounds
NYS Commission of Investigation
NYS Department of State
NYS Education Department
NYS Education Department Part 82: 3020a Procedures
NYS FOIL Requests
NYS Freedom of Information (FOIL) Law
NYS Governor
NYS Office of General Services
NYS Open Book
NYS Teacher Preparation
NYS Unified Court System
Office of Special Counsel: Whistleblower Disclosures
Our Kids Come First
Overview of the 3020a Disciplinary Process
LEXIS/NEXIS
Parentadvocates.org
People's Vote
Personnel Today
Point of Law
Public Access to Records
Public Justice
Public School Corruption links
Qui Tam Help
Reference Libraries in New York City
Schrock Guide For Educators
Simple Justice
Tammany Hall II
Teach For America- Debunking the Propaganda
Teacher Advocacy Long Island
Teacher Certification Search
The "Who Are You Kidding Award" Goes to Joel Klein
The Innocence Project
The Reporters Committee For Freedom of the Press
Tort Law: Negligence

that "what a girl wants is a big dick." (The photos weren't found, and Loughran decided the students' testimony was "problematic," ordering investigators to change their findings from "substantiated" to "unfounded." When Board of Ed administrators asked for investigators to testify against the teacher to bar him from further employment, Loughran refused to allow it.)

There was the 48-year-old male teacher who admitted driving a 17-year-old female student to a funeral home parking lot in the Bronx and asking her, "What if I told you I wanted to go down on you?" (The teacher said he was trying to help her learn to fend off improper advances. The principal vouched for the teacher, and the girl later admitted she'd neglected to say they were also drinking beer at the time. Loughran said her testimony was inconsistent and ordered the case dropped.) And there was Paul Kerner, a 61-year-old teacher at Sheepshead Bay High School who romanced an 11th-grade girl, taking her to Atlantic City casinos and a motel where he coerced her into performing fellatio and other sex acts. The investigator on the case urged Loughran to make a quick criminal referral to prosecutors, but the deputy balked. "I don't know what to do, let's hold off," she said, according to a report of the incident.
The office dithered so long that the victim called the investigator, complaining that Kerner was now stalking her, and asking why he hadn't been arrested yet. The investigator asked Loughran for permission to take the case to a friend at the FBI. Loughran expressed skepticism that the bureau would be interested, but reluctantly agreed. But when the FBI came seeking the backup documents for the case, Loughran balked again, forcing agents to get a grand jury subpoena. (Kerner was eventually convicted in federal court, where he received a 33-month sentence. Annoyed at the investigator who had called the bureau, Loughran allegedly had him transferred out of the sex-crimes unit.)
Yet another disturbing case posed an investigative challenge, one that Stancik's former detectives readily accepted, given the stakes, but which Loughran flat-out rejected. In that instance, a former city high school student, now a grown man and a member of the Army Reserves, called the office to say that his former principal had repeatedly sexually abused him a few years earlier. According to his story, he had been a fatherless youngster whom the principal had taken under his wing, bringing him on camping trips to Lake George and elsewhere where he had repeatedly molested him. On the advice of his therapist, the man had decided to confront and report his abuser. Once he did, the principal immediately resigned. The Stancik investigators were able to get a consensually recorded telephone conversation in which the principal admitted his sexual abuse of the former student. Like the Ronald Taylor case, however, the acts were too old to prosecute. But investigators said the ex-principal (a Boy Scout troop leader who still lived with his mother) fit the profile of "a classic

Tort Law: Replevin
Tort Law: Trespass
Truth in Justice
US Law Blogs
US Senate and House Votes
US Unions
Victims of Law
Victims of Law NY
Wall Street Journal Law Blog
Whistleblowers
White Collar Crime Prof Blog
Who is Running For What?
Winkelman v Parma School District
Wrongful Convictions

My Blog List

Adjunct Law Prof Blog
Publication of Law Review Article About Lawyer And His Nurse Clients Who Were Both Criminally Charged Because The Nurses Resigned En Mass

Background Check Weblog : www.BackgroundNow.com
Zul Tejpar Case Information

Blawg's Blog by Bill Gratsch
The Rescue Plan and Other Posts

Chaz's School Daze
DOE's Children Last Program - When A Large School Is Closed & Replaced By Small Schools

City Room
Appointing a New Senator Is Hard

Crime & Federalism
Adam Liptak on Judicial Pay

Employee Benefits Legal Blog
Discrimination is Not Just About Being Highly Compensated

Expose Corrupt Courts
New York Times: How Much Should Judges Make?

pedophile," and they believed he had to have preyed on others. The next step, they proposed to Lough-ran, would be to wire up the ex-student and have him meet with the former principal to see if they could pick up leads on other victims. They would also talk to teachers and students at the principal's school to find out if other boys had been similarly "befriended." Loughran wouldn't hear of it. According to two former investigators, she said, "He is out of the system. Shut it down." (Loughran has denied using those words.)

In an effort to try to breathe new life into the case, one of the investigators reached out to a federal prosecutor he knew who was familiar with sex-crime statutes to ask if there was any other law the ex-principal might have violated. Loughran later said she was "upset" and "embarrassed" by the call, which she said duplicated her own research and had been made without her permission. Investigators said it was much more dramatic than that. "She was livid," said one of them. When the investigator was asked why the call had been made, he responded: "Because I'm trying to catch the son of a bitch."

___

According to the investigators, Lough-ran retaliated by shifting one of the two probers who had worked the case, considered one of the office's most productive teams, out of the sex unit. Loughran later insisted the assignment change had been made by Stancik, not her.

But it still wasn't over. The former principal, concerned at possible civil liabilities, offered to purchase a $250,000 house for the victim in exchange for a promise not to pursue further legal action. When Loughran learned of the offer, she allegedly said that the victim might be arrested for extortion, a suggestion that appalled the investigators. (As it happened, the deal fell through.)

"He had been a principal for 20 years, he had such power," said one of the investigators recently. "All he had to do was find another weak kid. We felt there had to be other victims. It was so egregious to shut it down. Pedophiles don't do it once and then go home. You don't have to be Columbo to figure that out."

___

The two letters detailing the complaints about the bungled past cases landed on the desk of city department of investigations commissioner Rose Gill Hearn in early 2003.

Hearn technically oversees the schools investigation unit (its offices are located in the same Maiden Lane building as DOI), but because of its sensitive mission it operates largely independently. Still, Hearn took the complaints seriously, assigning a pair of senior attorneys to look into them. Over the course of several months, the attorneys interviewed 10 current and former employees of Stancik's old special commissioner's office, including Loughran. During the interviews, the attorneys turned up another instance, in which a complaint about a Bronx teacher accused of sodomizing several young male students had been confirmed by the Stancik office but had somehow never been referred to prosecutors.

JFActivist
Inaugural Disability Events Held Nationwide

JURIST - Paper Chase
Guantanamo military commission hearings for alleged 9/11 conspirators proceed

Justice not "just us"
Now is the time for all men and women of good will to speak up!

School and Education Law Blog
Justices to Hear Two Cases Related to Strip Search of Student at School, Reimbursement of Parents for IDEA Expenses

School Leadership Team Support Center
Pollicino Decision Strengthens SLT's

Settle It Now Negotiation Blog
The Devil in the Details: When Do You First Talk Terms?

Sui Generis-a New York Law Blog
Define that term #309

The BLT: The Blog of Legal Times
Howard Law Alumni Association Luncheon Photos

The Board
(Almost) No Regrets

The National Arbitration Forum Blog
ADR Can Help Lenders and Homeowners Avoid Foreclosure

The School Law Blog
Supreme Court to Review Special Education, Strip-Search Cases

White Collar Fraud Talk
Executives Of Asian LCD Companies Guilty Of Price Fixing Also Plead Guilty