# EXHIBIT  1

08-CV-7673 (DAB)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID PAKTER,

Plaintiff,

-against-

NEW   YORK   CITY   DEPARTMENT   OF
EDUCATION f/k/a BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF NEW YORK;
and JOEL I KLEIN, as Chancellor of the CITY
SCHOOL  DISTRICT  OF  THE  CITY  OF  NEW
YORK, et al.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

### MICHAEL A. CARDOZO
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-314
New York, N.Y. 10007-2601

*Of Counsel:*   Larry R. Martinez
*Telephone:*    (212) 227-3153

Matter No. 2008-031238

of Their Motion To Dismiss the Second Amended Complaint, ("Def. Memo") dated June 26, 2009, fn 1. Finally, plaintiff's counsel, Joy Hochstadt, was aware as early as June 15, 2009, that the Office of the Corporation Counsel represented Madeline Appell, Sonia Stewart and Dr. Audrey Jacobson because this Office informed her that it would accept service of process on their behalf. See E-Mail dated June 15, 2009, Ex. "AA."[4]

While defendants' Notice of Motion inadvertently omitted the names of the individually named defendants, that omission can easily be cured through the filing of an amended notice of motion. Accordingly, plaintiff's contention regarding the representation of the individual defendants is without merit.

Finally, plaintiff argues that the "inclusion in the Motion to Dismiss by Defendant DOE and Klein of allegations that Pakter was 'unfit for duty' or that he used 'pornography' on a school computer violates Rule 12(f) because they are "impertinent and scandalous" and are "made with an intent to deceive." See Pakter Decl. 4(d), 72; see also Pakter Memo., at p. 4-5. First, as further discussed in Point II below, plaintiff's motion pursuant to Fed. R. Civ. P. 12(f) has absolutely no basis in law and must be dismissed in its entirety. Second, any information contained in defendants' motion that plaintiff finds objectionable and "scandalous" is solely attributable to the plaintiff. Plaintiff put these events at issue by raising the allegations in the Complaint. See Second Amended Complaint, Martinez Decl., Exhibit "A" at ¶¶ 72-74; 84-89. Moreover, to the extent plaintiff relies on these events to support his claims of discrimination and retaliation, defendants address these issues to establish that any claims based on these events are time-barred. See e.g. Def. Memo., at pp. 9, 13.

---

[4] To date, Plaintiff has not served this Office with the Complaint on behalf of Madeline Appell, Sonia Stewart or Dr. Audrey Jacobson. See generally Docket Sheet.

# EXHIBIT   2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

DAVID PAKTER,

                                    Plaintiff,

          -against-                                          **NOTICE OF MOTION**

NEW    YORK    CITY    DEPARTMENT    OF              08-CV-7673 (DAB)(KNF)
EDUCATION f/k/a BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF NEW YORK;
and JOEL I KLEIN, as Chancellor of the CITY
SCHOOL DISTRICT OF THE CITY OF NEW
YORK, et al.,

                                    Defendants.

------------------------------------------------------------------------ x


          **PLEASE TAKE NOTICE** that upon the accompanying Declaration of Larry R.

Martinez, dated June 26, 2009, the Defendants' Memorandum of Law in Support of their Motion

to Dismiss, dated June 26, 2009 and all papers and proceedings heretofore had herein, defendants

the New York City Board of Education ("DOE") and Joel I. Klein, as Chancellor of the New

York City Board of Education in the captioned action, will move this Court, before the

Honorable Deborah A. Batts, United States District Judge, at the United States Courthouse for

the Southern District of New York, located at 500 Pearl Street, New York, New York, for an

order pursuant to Rule 12(b)(1), (2), (5), and (6) of the Federal Rules of Civil Procedure for

judgment dismissing the Complaint in its entirety and for such other and further relief as the

Court may deem just and proper.

          **PLEASE TAKE FURTHER NOTICE THAT**, pursuant Local Civil Rule

6.1(b), answering papers, if any, must be served upon the undersigned within ten business days

after service of defendants' moving papers, and reply papers, if any, will be served upon the

plaintiff within five business days after service of the answering papers.

Dated:      New York, New York
            June 26, 2009


                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-314
                              New York, New York 10007
                              (212) 227-3153
                              lmartine@law.nyc.gov

                              By:    **ECF**      /s/
                                     _____
                                     Larry R. Martinez
                                     Assistant Corporation Counsel


TO:    **JOY HOCHSTADT, ESQ.**
       Attorney for Plaintiff
       3000 Central Park West, Suite 2E
       New York, New York 10024
       (212) 580-9930


- 2 -

# EXHIBIT   3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

DAVID PAKTER,

                                        Plaintiff,

                    -against-

NEW     YORK     CITY    DEPARTMENT     OF
EDUCATION f/k/a BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF NEW YORK;
and JOEL I KLEIN, as Chancellor of the CITY
SCHOOL DISTRICT OF THE CITY OF NEW
YORK, et al.,

                                        Defendants.

------------------------------------------------------------------ x

**DECLARATION OF
LARRY R. MARTINEZ**

08-CV-7673 (DAB)(KNF)

          **LARRY R. MARTINEZ** declares, pursuant to 28 U.S.C. § 1746 and subject to

the penalties of perjury, that the following is true and correct:

          1.   I am an Assistant Corporation Counsel in the office of Michael A. Cardozo,

Corporation Counsel of the City of New York, attorney for defendants the New York City Board

of Education ("DOE") and Joel I. Klein, as Chancellor of the New York City Board of Education

in above referenced action. I submit this declaration in support of defendants' motion to dismiss

the Second Amended Complaint, pursuant to Rule 12(b)(1), (2), (5), (6) of the Federal Rules of

Civil Procedure.

          2.   The following documents are copies of public records, documents kept in

the ordinary course of business, and documents incorporated by reference in the Second

Amended Complaint and are submitted in support of defendants' motion to dismiss:

· Exhibit A: A copy of the Second Amended Complaint in this action, dated June 1, 2009;

· Exhibit B: Letter from David Pakter to Chancellor Klein, dated October 2, 2003;

· Exhibit C: Letter from Harold Mason to Plaintiff, dated September 26, 2003;

· Exhibit D: Letter from John Lachky to Plaintiff, dated October 1, 2003;

· Exhibit E: Letter from Harold Mason to Plaintiff with Plaintiff's response, dated October 2, 2003;

· Exhibit F: Letter from Mary Ann Geist-Deninno to Plaintiff with Plaintiff's response, dated October 8, 2003;

· Exhibit G: Letter from Francesca Burack to Plaintiff with Plaintiff's response, dated October 9, 2003;

· Exhibit H: Letter from Harold  Mason to Plaintiff with Plaintiff's response, dated October 22, 2003;

· Exhibit I: Letter from John Lachky to Plaintiff, dated December 18, 2003 with Plaintiff's response dated January 12, 2004;

· Exhibit J: Letter from John Lachky to Plaintiff, dated February 5, 2004 with Plaintiff's response dated February 6, 2004;

· Exhibit K: Annual Professional Performance Review, dated June 28, 2004;

· Exhibit L: Letter from Judith Rivera to Plaintiff, dated September 24, 2004;

· Exhibit M: Letter from Madeline Appell to Plaintiff, dated September 28, 2004,

· Exhibit N: Disciplinary Charges, dated April 4, 2005

· Exhibit O: Letter from Deputy Executive Director of the DOE's Medical, Leaves and Benefits Office, Edna Wells Handy, dated June 21, 2005;

·   Exhibit P: Employee Medical Review, dated July 14, 2005;

·   Exhibit Q: Letter from Dr. Audrey Jacobson dated, August 16, 2005;

·   Exhibit R: Decision of NYSED Hearing Officer Martin F. Schienman
      Dated, August 31, 2006;

·   Exhibit S: Letters from Giovanni Raschilla to Plaintiff with Plaintiff's
      response dated, November 2, 2006 & November 13, 2006;

·   Exhibit T: Letter from Philip Crowe to Plaintiff, dated November 22,
      2006;

·   Exhibit U: Disciplinary Charges, dated October 26, 2007 & underlying
      SCI Report date June 22, 2007;

·   Exhibit V: Notice of Claim, filed March 6, 2007;

·   Exhibit W: Notice of Claim, filed January 15, 2008;

·   Exhibit X: A copy of plaintiff's charge of discrimination filed with the
      New York State Division of Human Rights on August 15,
      2008.

·   Exhibit Y: EEOC Right-to-Sur Letter, dated November 17, 2008;

·   Exhibit Z: New York State Division of Human Rights Determination
      and Order Of Dismissal, dated November 28, 2008

Dated: New York, New York
     June 26, 2009

          **By ECF**    /s/ _____
          Larry R. Martinez (lmartine@law.nyc.gov)
          Assistant Corporation Counsel

# EXHIBIT  4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

DAVID PAKTER,

                                        Plaintiff,

             -against-

NEW    YORK    CITY    DEPARTMENT    OF
EDUCATION f/k/a BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF NEW YORK;
and JOEL I KLEIN, as Chancellor of the CITY
SCHOOL DISTRICT OF THE CITY OF NEW
YORK, et al.,

                                        Defendants.

------------------------------------------------------------------ x

**DECLARATION OF
LARRY R. MARTINEZ**

08-CV-7673 (DAB)(KNF)

     **LARRY R. MARTINEZ** declares, pursuant to 28 U.S.C. § 1746 and subject to

the penalties of perjury, that the following is true and correct:

     1.  I am the Assistant Corporation Counsel in the Office of Michael A. Cardozo,

Corporation Counsel of the City of New York, currently assigned to represent the New York

City Board of Education ("DOE"), Joel I. Klein, as Chancellor of the New York City Board of

Education, Audrey Jacobson, Judith Rivera, Michael LaForgia, Philip Crowe, Sonia Stewart,

Alexis Penzell, Madeline Appell, Mary Ann Geist- Deninno, John Lachky, Hilda Nieto,

Giovanni Raschilla, Ann Garner and Eliane Meyer   (collectively "defendants") in above

referenced action.  I submit this declaration in further support of defendants' motion to dismiss

the Second Amended Complaint, pursuant to Rule 12(b)(1), (2), (5), (6) of the Federal Rules of

Civil Procedure and in opposition to plaintiff's motion to strike pursuant to Rule 12(f).

     2.      The following document is a copy of an electronic communication kept in

the ordinary course of business  and is submitted in support of defendants' motion to dismiss:

· <u>Exhibit AA:</u> A copy of the Electronic Mail Communication between
Larry R. Martinez and Joy Hochstadt, dated June 15, 2009

Dated: New York, New York
July 22, 2009

**By ECF**      **/s/**                          
Larry R. Martinez (lmartine@law.nyc.gov)
Assistant Corporation Counsel

# EXHIBIT   5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X     (ECF CASE)

DAVID PAKTER,                                                     :

                                  Plaintiff,   :   08-cv-7673 (DAB)(KNF)

- against -                                                      :

NEW YORK CITY DEPARTMENT OF EDUCATION               :
      f/k/a BOARD OF EDUCATION OF THE CITY           :
      SCHOOL DISTRICT OF THE CITY OF NEW YORK;        :
JOEL I. KLEIN, as Chancellor of THE CITY SCHOOL      :
      DISTRICT OF THE CITY OF NEW YORK;               :
MICHAEL LAFORGIA;                                   :
JUDITH RIVERA;                                      :
PHILIP CROWE;                                       :
SONIA STUART;                                       :
ALEXIS PENZELL;                                     :
MADELEINE APPELL;                                   :
MARY ANN GEIST-DENINNO;                             :
JOHN LACHKY;                                        :
HAROLD MASON;                                       :
HILDA NIETO;                                        :
GIOVANNI RASCHILLA;                                 :
DR. AUDREY JACOBSON;                                :
DR. ANN GARNER;                                     :
DR. ELIANE MEYER;                                   :
DR. RICHARD SCHUSTER                                :
                            Defendants.   :

-------------------------------------------------------------------------- X

PLAINTIFF PAKTER'S JULY 31, 2009 MEMORANDUM OF LAW
IN REPLY TO NYC & DOE DEFENDANTS' RESPONSE TO MOTION TO STRIKE
AND IN FURTHER SUPPORT OF PLAINTIFF PAKTER'S OPPOSITION
TO NYC & DOE DEFENDANTS' MOTION TO DISMISS

JOY HOCHSTADT, P.C.
300 Central Park West, Suite 2 - E
New York, New York 10024
Tel. (212) 580-9930
Plaintiff's Counsel

## TABLE OF CONTENTS

Page #

1. STATEMENT OF FACTS      1

2. DISCUSSION      9

     a. DOE Defendant Papers are Not Entitled to Consideration      9

     b. Motion to Strike Was Only Means of Calling Into
         Question the Propriety of DOE Defendants' Lawyer
         Affidavits and Supporting Documents that Appear to
         be Intended to Deceive the Court      10

     c. DOE Defendants Have Had Notice of Pakter's Claims
         Dating Back to 2003      12

     d. DOE Defendants Wrongdoing is Part of a Continuing Tort
         Dating Back to 2003      16

     e. Infliction of Emotional Distress      17

     f. Documented Retaliation and Harassment      18

     g. Hostile Work Environment      21

     h. Punitive Damages Warranted      23

3. CONCLUSION      23

# TABLE OF AUTHORITIES

| <u>CASES</u> | <u>Page #</u> |
|---|---|
| Ain v. Glazer, 257 A.D.2d 422. 683 N.Y.S.2d 241 | 16 |
| Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.2002) | 22 |
| Bender v. City of New York, 78 F.3d 787, 791 (2d Cir.1996) | 17, 18 |
| Berry v. Stevinson Chevrolet, 74 F.3d 980 (10th Cir.1996) | 20 |
| Biggers v. Brookhaven-Comsewogue Union Free School Dist., 127 F.Supp.2d 452. (EDNY. 2001) | 14 |
| BMW of North America, Inc. v. Gore, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) | 23 |
| Bonner v. Guccione, 916 F.Supp. 271 (S.D.N.Y.1996) | 17 |
| Boyd v. Presbyterian Hosp., No. 95 Civ. 3847, 2001 WL 314655, *8 (S.D.N.Y. Mar. 30, 2001) | 20 |
| Brandon v. Board of Ed. of Guilderland Central School Dist., 487 F.Supp. 1219 (NDNY 1980) affirmed 635 F.2d 971 (2d Cir.). certiorari denied 102 S.Ct. 970, 454 U.S. 1123, 71 L.Ed.2d 109, rehearing denied 102 S.Ct. 1493, 455 U.S. 983, 71 L. Ed. 2d 694 | 13 |
| Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2414-14, 165 L.Ed.2d 345 (2006) | 19 |
| Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir.1988) | 21 |
| Dominic v. Consolidated Edison Co., 822 F.2d 1249, 1254-55 (2d Cir.1987) | 20, 21 |

Dortz v. City of New York, 904 F.Supp. 127, 156 (S.D.N.Y.1995) — 20

Drury v. Tucker, 210 A.D.2d 891, 621 N.Y.S.2d 822). — 16

Durham Life Ins. Co. v. Evans, 166 F.3d 139, 157-58 (3d Cir.1999) — 20

Falchenberg v. New York City Dept. of Educ., 375 F.Supp.2d 344 (SDNY 2005). — 14

Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir.2000) — 19

Gorman-Bakos v. Cornell Co-op. Extension of Schenectady County, 252 F.3d 545, 553 (2d Cir.2001) — 18

Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir.2001). — 22

Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94 (2d Cir.2000) — 21

Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) — 22

Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 75 (2d Cir.2001) — 22

Howell v. New York Post Co., 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993) — 17

Hughes v. Patrolmen's Benevolent Ass'n of City of New York, 850 F.2d 876, 883 (2d Cir.1988) — 17

Ismail v. Cohen, 706 F.Supp. 243, 250 (S.D.N.Y.1989), aff'd, 899 F.2d 183 (2d Cir.1990). — 16

2

Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir.1997)                 20

Kushner v. Valenti, 285 F.Supp.2d 314 (SDNY 2003)                        12

Lane-Weber v. Plainedge Union Free School Dist., 213 A.D.2d 515,
   624 N.Y.S.2d 185, (2d Dept. 1995) leave to appeal dismissed
   87 N.Y.2d 968, 642 N.Y.S.2d 196. 664 N.E.2d 1259.                     13

Lee v. Edwards, 101 F.3d 805, 808 (2d Cir.1996)                          23

Leon v. Martinez, 84 N.Y.2d 83, 87-88 (1994)                            10

Levine v. Gurney, 149 A.D.2d 473, 539 N.Y.S.2d 967, 968 (N.Y.App.
   Div.2d Dep't 1989).                                                  17, 18

Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d
   Cir.1976)                                                            11

Mathie v. Fries, 121 F.3d 808, 816 (2d cir.1997)                         23

Manliguez v. Joseph  226 F.Supp.2d 377, 386 (E.D.N.Y.2002)              17

Mark Hampton, Inc. v. Bergreen, 173 A.D.2d 220 (1st Dept.1991)          10

Martin v. Town of Westport  558 F.Supp.2d 228 (D. Conn 2008)            11

Mary's Bus Service Inc. v. Rondout Valley Cent. School Dist. 238
   A.D.2d 829, 656 N.Y.S.2d 534 (3d Dept. 1997).                        13

Meckenberg v. New York City Off-Track Betting, 42 F.Supp.2d 359,
   378 (S.D.N.Y.1999)                                                   20

Mejia v. City of New York, 119 F.Supp.2d 232, 285 (E.D.N.Y.2000) 17

Meriwether v. Coughlin, 879 F.2d 1037, 1046 (2d Cir.1989) 21

Metrokane, Inc. v. The Wine Enthusiast, 160 F.Supp.2d 633, 641-42
  (S.D.N.Y.2001). 11

Monroe v. Board of Education, 65 F.R.D. 641, 647 (D. Conn.1975) 11

Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 461
  N.Y.S.2d 232, 448 N.E.2d 86, 90 (1983) 17

Neufeld v. Neufeld, 910 F.Supp. 977, 982-83 (S.D.N.Y.1996). 17

Newport Elec., Inc. v. Newport Corp., 157 F.Supp.2d 202, 208
  (D.Conn.2001) 11

Ottati v. City of Amsterdam No. 5:06-CV-1370 (NPM / DEP) April
  11, 2008. 2008 WL 1744557 (N.D.N.Y.) 22

Osier v. Broome County, 47 F.Supp.2d 311, 325-26 (N.D.N.Y.1999) 21

Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21, 111 S.Ct. 1032,
  113 L.Ed.2d 1 (1991) 23

Radvany v. Jones 184 A.D.2d 349, 585 N.Y.S.2d 343 (1 Dept. 1992) 15

Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426,
  443-44 (2d Cir.1999) 20

Roberts v. Pollack, 92 A.D.2d 440, 444 (1983) 10

Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1104 (10th Cir.1998) — 20

Roe v. City of New York, 151 F.Supp.2d 495, 510 (S.D.N.Y.2001) — 11

Romero v. Howard Johnson Plaza Hotel, No. 97 Civ. 3706, 1999 WL 777915, *7 (S.D.N.Y. Sept. 28, 1999) — 21

Sainato v. Western Suffolk BOCES (2d Dept. 1997) 242 A.D.2d 301, 661 N.Y.S.2d 4 — 15

Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir.1999) — 19

Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir.2003) — 18

Shannon v MTA Metro-North Railroad, 269 A.D.2d 218, 704 N.Y.S.2d 208, 2000 N.Y. Slip Op. 01630 (App Div 2000) — 16

Sims v. MME Paulette Dry Cleaners, 580 F.Supp. 593 (S.D.N.Y.1984) — 21

Specht v. Jensen, 832 F.2d 1516, 1524 (10th Cir.1987) — 21

Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) — 22

Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir.1990) — 18

Varrone v. Bilotti, 123 F.3d 75 (2d Cir.1997) — 21

Vasarhelyi v. New School for Social Research, 230 A.D.2d 658, 661, 646 N.Y.S.2d 795) — 16

Vasbinder v. Scott, 976 F.2d 118, 121 (2d Cir.1992)    23

Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir.1997)    19

Webster v. Pomperaug Regional School Dist. 15, No.
    3:04CV1265(DJS), 2007 WL 987539, at *6 (D.Conn. Mar.30
    2007)    11

White v. Freyman,171 Misc.2d 767, 655 N.Y.S.2d 728 (1997)
    reversed 248 A.D.2d 393, 669 N.Y.S.2d 853.    15

William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744
    F.2d 935, 939 (2d Cir.1984), vacated on other grounds. 478
    U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986)    11

Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir.1986)    21

Wimberly v. Clark Controller Co., 364 F.2d 225 (6th Cir. 1966)    11

Wright v. Stern, 450 F.Supp.2d 335, 373 (S.D.N.Y.2006)    18, 19

--------------------------------------------------

### RULES

CPLR  215    16

Fed. R. Civ. P. 15(b)    21

--------------------------------------------------

### STATUTES

28 USC § 1983    22

42 U.S.C. § 2000e-3    20

NYS Educ. Law § 3813    13

--------------------------------------------------

### TREATISE

6 J. Moore, Federal Practice ¶ 56.22[1], at 2817-2818 (2d ed. 1965)    11

## 1.  STATEMENT OF FACTS

David Pakter has been employed as a Public School Art Teacher for 41 years.  He has been assigned to Art and Design High School ("A&D") for the last thirty years.  For the first 24 years of his tenure at A&D it is fair to say he was "star" of the Faculty.  His combined Master of Fine Arts and Master's Degree in Human Anatomy, serve him well to be quite successful as a painter of full figure and portraits as well as for the instruction of medical illustration.  He developed the first high school program in Medical Illustration and it was the pride of the NYC school system.  The students Pakter taught, mastered not only medical illustration skills but they gained pride in their mastery and newfound confidence in their overall potential, resetting their goals and ambitions to higher levels than before Mr. Pakter taught them.  Pakter's classes were regularly visited when important individuals came to see innovation in NYC schools.  When Harold Levy was Chancellor, he brought visiting dignitaries to view Pakter's classes.  Mayor Rudolph Giuliani honored Pakter by naming him "Teacher of the Year" and celebrating the occasion at City Hall with a ceremony, and photo of the two shaking hands as the Award Certificate was presented to Pakter in 1997.

In approximately 2002, Madeleine Appell arrived as the new Principal at A&D.  Soon Pakter began to notice that the curriculum was rendered non-compliant with state regulations.  Music, required for High School graduation had been dropped from the curriculum.  Traditionally, courses in several languages were offered in NYC comprehensive high schools; all but the first two years of Spanish had been eliminated from the course offerings while the majority of students at A&D already spoke Spanish.  These changes were viewed as a bald attempt to focus on raising Math and English scores to meet No Child Left Behind Legislation at the expense of breadth and rigor of educational opportunities at A&D for its almost totally minority student body.

The first two things that Pakter did to combat this, was to suggest to the parents and friends of A&D students that these ought to be returned to the students of A&D when he was asked to chair and

1

speak at an event sponsored by "Friends of Art and Design," a fund raising foundation, which supported projects and programs at A&D.

Pakter's status at A&D, had a sudden reversal of fortune, in that initiatives and efforts to best serve his students that had previously been welcomed, heralded and even led to his nomination to Mayor Giuliani as evidence of "outstanding achievements in instruction," were suddenly being misconstrued as acts of misconduct. The French enrichment segment of his art classes was suddenly characterized as "unlicensed instruction" inter alia.

The criticisms and the disciplinary meetings he was forced to attend to be reprimanded were so unlike his experiences for his prior 35 years of service for the NYC schools, that he began to openly record these meetings and conferences, causing further reprimands and letters to his personnel file to stifle his ability to defend himself, should there develop further disciplinary action.

At about the same time, Pakter noted that there were window replacements that had just recently been replaced and other areas of the building where there were building permits for work, but there was no work being conducted. Given all of these observations, Pakter heeded the mandate of the investigative arm of the DOE, the Special Commissioner for Investigation (SCI) to report all suspected wrongdoing in the DOE, and he gave testimony to SCI. He testified as to what had come to his attention, however he was advised that such matters are best dealt with at the local/school level. Thus, he was being sent back to his Principal, Defendant Appell, whom he had been accusing of, at a minimum, non-compliance to state regulations.

Therefore, he wrote to Defendant Klein to alert him to the irregularities on October 2, 2003. During the 21 school days that followed Pakter's testimony before SCI, Pakter was summoned ten times with demands that he attend disciplinary meetings with Defendant Appell, Defendant Mason, Defendant Lachky, Ass't Principal Burack, Defendant Dennino, and combinations thereof. Then the 10 meetings were actually held as demanded, and at each meeting he was reprimanded and denigrated by a different combination of the repertory of Defendant Appell's administration for

2

activities for which he had previously been repeatedly lauded and commended, for decades. Finally, when disciplinary letters to file followed the meetings, he was given each and required to acknowledge each one by signing that he was in receipt of said letter and understood that it was being placed in his permanent personnel file. Thus, each and every day he was assailed by these detractors, not only once per day, but often several times per day, already hoping they could constructively terminate him because he would find it so humiliating he would resign.

On October 24, 2003, Pakter received a letter from Chad Vignola, General Counsel to the Chancellor, stating that he was responding on behalf of Defendant Klein to answer Pakter's letter received earlier in the month. However, rather than join in Pakter's concerns, Vignola had evidently contacted the school to learn more about Pakter, and accepted as truth the harassing fabrications, purposeful misconstructions and turnabouts from laudatory to derisive that Defendant Appell and her staff had been serving up to Pakter on a daily basis since his contact with SCI and Defendant Klein several weeks earlier.

Stymied by Pakter's insistence on videotaping, or at least audio taping, any and all "disciplinary" meetings, at which his presence was required, Defendant Appell and her coterie of Assistant Principals beholden to her, found other ways to be invidious to Pakter on a daily basis to create a totally hostile work environment at A&D for him. The administration fabricated arrival times for Pakter for the balance of the 2003-2004 school year, stating that Pakter arrived 1-4 minutes "late" on almost all school days. At the end of the year Pakter was summoned to a "disciplinary meeting and informed he was to be rated "U" (unsatisfactory) for his annual professional performance rating solely for punctuality, though he not ever been late to meet his students in class. In the 25 years that Pakter had served admirably at A&D, he had never before received a single disciplinary letter to file, much less a "U" for the entire school year.

Early in the Fall, of 2004 Pakter finally observed a "smoking gun" not once but twice–first he noticed a school budget in plain view in the main office. It showed that $78,000.00 was allocated to

3

music instruction, but there was no music instruction at A&D. Next he observed that a wing of A&D's second floor was no longer accessible. He discovered it had been annexed by an abutting elementary school and was being used for state-of-the-art music instruction for predominantly white upper middle class students from the Upper East Side or Manhattan.

Pakter, who had been videotaping his classes regularly, to prevent their being mischaracterized as incompetently taught, requested and was granted permission of the music teacher to videotape the musical class. Not only were minority A&D students deprived of music instruction but, the resources of space and funds were being diverted to the elementary school.

The next time Pakter was harassed Pakter revealed he had made the tape of the music class. Suddenly all efforts became concertedly directed toward confiscating the tape from him. He was threatened with draconian measures: charges of insubordination for failing to relinquish the tape; charges of trespassing into the other school though now the two buildings were contiguous; Defendant Appell was desperate to get the tape. The following day, Pakter was removed from the school by uniformed escorts and assigned to one of those horrid places where teachers are warehoused until they are formally charged and then await disciplinary hearings. The day after that, Appell not only resigned as the school's Principal, she resigned entirely from DOE employment.

Teachers removed from the classroom are assigned to be confined in "reassignment centers" which are foul-smelling overcrowded cramped spaces where life-tenured teachers outraged at their inconceivable removal when they have committed no wrong, sit amidst a few teachers who have done some act(s) appropriate for discipline, along with many more teachers who are emotionally paralyzed and disconsolate at what has occurred to them for the unlawful reasons that they are older, at the top of the pay scale, and not wanted by their new, younger, over-empowered (by Defendant Klein who specifically authorized Principals to rid their schools of teachers not wanted by them) Principals. Defendant Rivera testified on June 30, 2009, in another proceeding that the number of reassigned teachers has doubled to trebled since Defendant Klein became schools Chancellor.

4

Chancellor's regulations mandate that teachers are to be assigned to centers in their own District. Pakter was sent an enormous full floor facility to detain "reasssigned" teachers not even in his own borough.

The Teacher Reassignment Centers as these confinement facilities are officially called but better known as "rubber rooms" are specifically designed to be hostile work environments, where the teachers are treated as Pariahs and disdained by other DOE employees, especially by clerical level employees who are assigned to oversee the confinement and record teacher movements.  No work is allowed, no electronic devices, no visitors.   The process is aimed at the demoralization of "reassigned" teachers so that they will resign rather than undergo years of confinement without any duties followed by months to years of the trial itself, of having to be subjected to false testimony, as Pakter was, from several defendants, while at the same time witnessing another DOE witness being sent home because her truthful testimony would support Pakter's claims of false and fabricated charges, was a dispiriting ordeal that took more than two years to conclude (from September 24, 2004 to November 1, 2006 when Pakter was briefly sent to Fashion Industries High School ("FI"). He was made to wait for many months for a decision which was harsh despite the arbitrator telling the attorneys that he would throw out the lateness charges when A&D's on-site UFT Chapter Leader testified that half the A&D teachers arrived after Pakter each day without either comment or incident.

During Pakter daily trudge to the distant Brooklyn "rubber room" from September 2004 until June 2005, not satisfied that an Arbitrator would terminate Pakter on what the school was alleging, "pornography" was placed on a student computer in his former classroom some five months after Pakter was removed from the school, then "discovered" suddenly by Defendants Mason and Dennino, thus, triggering an SCI investigation.  When the SCI did not substantiate that there was any connection between Pakter and the pornography on the student computer in a classroom he had not set foot into for five months but to which every teacher, administrator, student and other employee had free access the administration tried another tack.  Defendant Lachky wrote to Defendant Penzell

5

alleging all of the fabricated complaints against Pakter and re-alleged the Pornography charge, despite its having been refuted by SCI, and without indicating it had been refuted by SCI, to request a Ed. L. § 2568 exam to determine whether the allegedly bizarre new behavior indicated the onset of dementia or other mental illness.

Defendant Penzell requested the medical bureau to evaluate Pakter to determine his mental status fitness to continue service as a teacher. She forwarded Defendant Lachky's letter to the Medical Bureau which then ordered Pakter to appear for exams. He was evaluated by Defendant Garner, staff psychiatrist, and then referred by Defendant Meyer to Defendant Schuster for further testing. The process was humiliating as most of the evaluation was aimed at determining dementia and loss of cognitive skills to which it was totally inappropriate to subject Pakter.

Defendant Garner decided Pakter, showed grandiosity when he merely and truthfully recalled his many achievements, hypo-manic presentation (teachers entertain their classes to maintain rapt student engagement) and exhibited paranoid tendencies (retelling the thrust with which the campaign to drive him from the DOE after 35 years of incomparable service was reality reporting, not paranoia). Defendant Schuster, while finding all Pakter's testing within normal limits, nevertheless ordered that Pakter undergo regular psychotherapy and that psychoactive pharmacotherapy be administered to him.

The result was that in August 2005, Pakter received the determination that he was unfit for duty and he was summarily removed from the payroll without any due process. These were neither isolated nor discrete events. It was a single ongoing conspiracy to terminate Pakter in whatever way possible.

If he was too imbalanced to work at a career in which he had excelled with stellar performance for 35 years, was not he too imbalanced to assist his attorney in defending him against the charges. Pakter was the first teacher who was ever forced to undergo a 3020-a hearing while off the payroll except when serious felonies are alleged. The Arbitrator questioned this and was

6

reluctant to proceed with the hearings but then the ex parte pressure of the DOE Legal department persuaded him otherwise.

These are not discrete acts but a concerted continuing tort to "get Pakter" either by constructive termination of the hearings, the rubber room, the constant targeting while at A&D, or by ex parte pressure on the arbitrator by DOE. Though the motives evolved with time and with Pakter's opposition to the unlawful practices, the single ever-focused aim was to either get Pakter out because he could not tolerate the intentional targeting and abuse any longer, because the DOE would falsely accuse him and administrators would falsely testify to the fabricated allegations, or failing that because the Medical Office would co-operate in the false determination that Pakter was mentally unfit to teach.

Though it took a year to get the false medical determination reversed, being labeled mentally unfit, was in itself the institution of a debilitating, humiliating, egregious situation to live with each day of an entire year, especially when it was wrong, and the DOE admitted it was an error a year later when it finally reversed the determination. Nevertheless it is not only the day of the determination that is actionable, because it is admittedly wrong it is the entire conspiratorial process that led up the decision the unwarranted probing for personal information to make the determination that was humiliating, the subjecting to tests meant to diagnose dementia and the questions asked were humiliating because a kindergarten student could have answered them. The humiliation and suffering Pakter had to endure for the entire year that he was without salary included that he would not be eligible for unemployment benefits as DOE would charge he was unfit for duty, and he would not be eligible for disability as he claimed that he was not in any way disabled, but being retaliated and discriminated against by his employer.

When he was again eligible to be placed back on the payroll, that is when the Arbitrator sentenced him to two months suspension extending the period without pay to fourteen months and necessitating expensive legal and psychiatric consultants costs to be reinstated and to reverse the

7

intentionally wrongful decision Defendant Jacobson knowingly signed to remove him from it and to then state it was made in error a year later. Pakter alleges that she knew it was false all along but that her role was to co-operate with District Superintendents to "get rid" of teachers they or their Principals deem troublesome. Pakter was never reimbursed for legal nor forensic psychiatry costs which he had to be humiliated into borrowing from others because the need coincided with a time he had no salary whatsoever.

Finally after 25 months of not being allowed to practice the profession for which he was so frequently lauded, he was sent to a school for 19 days as a substitute teacher, for the sole purpose of concocting new charges against him. This was admitted by Defendant Raschilla to UFT's Callahan in 2007. It was solely for this special purpose because he was never transferred to FI, but remains on the A&D payroll to this day. On the nineteenth day he was removed for offering incentive "prizes" for students who maintained a 90% average or better as he had done for 35 years, for donating a plant to the school without authorization, inter alia. Thus at the end of November 2006 he was again sent to the rubber room; again to the daily humiliation of security guards escorting the teachers in and out of the building to begin and end the day, at lunch break, and on two 10 minute breaks as if they were prisoners being escorted to their "pods." When it finally was constructive termination and there were days that the humiliation of the rubber room was too great to tolerate, he did not go, he was not only docked half his salary for 2007-2008, but brought up on new charges of excessive absenteeism mandating his termination. The rubber room to which he was assigned was intentionally in distant Harlem while the one less than a quarter mile from FI, was off limits to him, per Defendant Rivera. The reassignment center near both FI and A&D had no guards 2006, but Pakter was shuttled off to the more draconian location.

In the Winter of 2007 a UFT staff reporter contacted Pakter and asked him for an interview leading to an article in the UFT newspaper New York Teacher. Defendant Raschilla also agreed to be interviewed for the article. It was Defendant Raschilla who revealed to the UFT reporter, Jim

8

Callahan, that Defendant Nieto had received orders from "Region 9" to "get Pakter," and that she directed her assistant principals including Defendant Raschilla to assist her in that task. When the article was published Pakter was given new charges that he embarrassed the School and the Department by allowing himself to be interviewed. Defendant Raschilla, whose admission was the one that embarrassed FI and DOE, however, was never removed to a rubber room or otherwise disciplined.

Only on May 18, 2009 did Plaintiff Pakter's disciplinary hearings on the "gifting of watches" and to "donating of plants" (that remain in place at FI to this day), etc., begin. Six years of humiliating, deprecating, discriminatory retaliation, the animus for which evolved from whistle-blowing, to foiling the retaliatory medical determination, to the publication of the Jim Callahan article, to rank age discrimination in that how can he still be employed by the DOE now that he reached full retirement age two years ago. There has also been the constant illegal withholding of paychecks issued to him and sent to the school for him, by Defendant Stewart and others, who have taunted him, that indeed there are numerous withheld paychecks, which will be released the moment Pakter's retirement papers are submitted. This occurred in 2005-2006 and has occurred again recently. Clerical and secretarial personnel have adopted the posture of the hostile work environment against Pakter by mimicking the discriminatory and retaliatory animus they observe in the attitudes of the senior administrators to whom they report.

Thus, it is not a series discrete acts as the Defense contends, solely to posture that some of the wrongdoing is time barred. It is a continuum of wrongful conduct on the part of each and every defendant often in concert with several other Defendants, to "get Pakter" and for no good reason, whatsoever.

## 2. DISCUSSION

### a. DOE Defendant Papers are Not Entitled to Consideration

A court may freely consider affidavits submitted by the plaintiff to remedy any defects in the

9

complaint." *See Leon v. Martinez, 84 N.Y.2d 83, 87-88 (1994).* "Although on a motion addressed to

the sufficiency of a complaint, the facts pleaded are presumed to be true and accorded every

favorable inference . . . nevertheless, allegations consisting of bare legal conclusions, as well as

factual claims either inherently incredible or flatly contradicted by documentary evidence are not

entitled to such consideration'". *See Roberts v. Pollack, 92 A.D.2d 440, 444 (1983) . Mark Hampton,*

*Inc. v. Bergreen, 173 A.D.2d 220 (1st Dept. 1991).*

Here, only one party submitted an affidavit of facts with respect to the causes of action set

forth in the complaint. And as a result the DOE Defendants papers should NOT be entitled to any

consideration.

        b.  **Motion to Strike Was Only Means of Calling into Question the Propriety of DOE Defendants' Lawyer Affidavits and Supporting Documents that Appear to be "Intended to Deceive" the Court**

The DOE Defendants' lawyer is not a competent witness in these proceedings and it is

respectfully submitted that his Declarations and accompanying Exhibits were designed to deceive the

Court by not providing a truthful picture in relation to Plaintiff Pakter's claims.

The blanket statement by counsel for the DOE Defendants that attached to his Declaration are

public records and/or are complete and accurate copies of documents kept in the normal course of

business is simply false. By way of example, counsel for the DOE Defendant submits Exhibits O, P

& Q to his Declaration – which he knows tells only a partial story – and which he submits for one

purpose only to improperly make scandalous and impertinent statements about Plaintiff Pakter's

mental capacity, emotional state and/or fitness for duty. In submitting only partial documentation,

counsel for the DOE Defendants is attempting to mislead and/or intends to deceive the Court. DOE

Defendants and their counsel know that the documents counsel submitted and the scandalous and

impertinent allegations about Plaintiff Pakter's fitness for duty were false and they were forced to

take back all such charges and to clear his name (which they have yet to do). Notwithstanding this

fact, counsel for DOE Defendants again attempts to malign, impugn and besmirch the Plaintiff

Pakter's good name, reputation and fitness for duty.

Since the federal rules provide no other technique for challenging affidavits, courts have been and are willing to view motions to strike as calling the propriety of affidavits into question. *See Wimberly v. Clark Controller Co., 364 F.2d 225 (6th Cir. 1966); 6 J. Moore, Federal Practice ¶ 56.22[1], at 2817-2818 (2d ed. 1965)*. That is precisely what Plaintiff Pakter sought to do in his Motion to Strike.

Motions to strike allegations in pleadings are generally disfavored, and should be granted only if "there is a strong reason for so doing." *See Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.1976)*. To prevail on a motion to strike, a defendant must show that (1) "no evidence in support of the allegations would be admissible;" (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant. *See Roe v. City of New York, 151 F.Supp.2d 495, 510 (S.D.N.Y.2001) (citation omitted)*. The proper remedy when presented with such a Motion is for the Court to disregard the materials for purposes of the motion. *See Monroe v. Board of Education, 65 F.R.D. 641, 647 (D. Conn.1975)*.

A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion and to the extent DOE Defendants seek judgment as a remedy they sought in their Motion and response, the Motion to Strike was appropriate. *See Martin v. Town of Westport 558 F.Supp.2d 228 (D. Conn 2008), Newport Elec., Inc. v. Newport Corp., 157 F.Supp.2d 202, 208 (D.Conn.2001), Webster v. Pomperaug Regional School Dist. 15, No. 3:04CV1265(DJS), 2007 WL 987539, at *6 (D.Conn. Mar.30, 2007)*. Motions to strike are generally disfavored and should be denied unless it is clear that under no circumstances could the defense succeed. *See William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir.1984), vacated on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986)*. And, to prevail on a motion to strike, the movant must show that he will be prejudiced by inclusion of the defense. *See Metrokane, Inc. v. The Wine Enthusiast, 160 F.Supp.2d 633, 641-42 (S.D.N.Y.2001)*.

11

In an attempt to obtain a judgment, DOE Defendants improperly put before this Court scandalous, impertinent and false allegations related to Plaintiff Pakter's mental state, emotional stability and fitness for duty that they know are not true and related to allegations and defenses as to which they know they cannot prevail. They know this because their own expert confirmed that their prior allegations and assessments were false and had to be reversed. The inclusion of such materials with the intent to make false, scandalous and impertinent allegations about issues and defenses they know to be false with the intent to deceive the Court supports Plaintiff Pakter's Motion to Strike or to request the Court disregard the submissions.

### c. DOE Defendants Have Had Notice of Pakter's Claim Dating Back to 2005

Notice of right to sue issued to school district on behalf of employee by the Equal Opportunity Employment Commission (EEOC), notifying district of charge of age discrimination for district's alleged failure to promote employee to department head, constituted effective service of notice of claim on district as required by New York's Education Law as to claim of age discrimination but not as to gender discrimination claim, even though EEOC notice was addressed to director of personnel; employee was required to comply with notice requirement because he sought to vindicate private rather than public interest, and notice was sufficiently presented to governing body of district to meet statutory requirement as to age discrimination claim but not gender discrimination claim because neither EEOC charge nor EEOC notice referenced gender discrimination. *See Kushner v. Valenti, 285 F.Supp.2d 314 (SDNY 2003).*

Since Pakter's complaint to the EEOC and DHR addressed his good faith belief that his adverse actions began as retaliation for the protected activity of complaining about race discrimination against minority students, continued as retaliation for his opposition to denial of due process by a discriminatory and erroneous determination that he was mentally unfit ,i.e. too disabled for service, progressed to when he was finally vindicated from being labeled too disturbed to do his job, that he gave an interview which appeared in his union's newspaper and was brought up on

12

charges of embarrassing his employer and has developed into age discrimination for having reached full retirement age and not wishing to retire from life tenured (without regard to age employment), he has given notice for all of his claims as they arose in this continuing tort.

While compliance with notice requirements of Educ. L. §3813 generally serves as a condition precedent to the commencement of non-tort claims against the school district, the law is fairly well settled, at least with regard to notice requirements in claims against municipalities, that such requirements are inapplicable to civil rights actions. *Brandon v. Board of Ed. of Guilderland Central School Dist., 487 F.Supp. 1219 (NDNY 1980) affirmed 635 F.2d 971 (2d Cir.), certiorari denied 102 S.Ct. 970, 454 U.S. 1123, 71 L.Ed.2d 109, rehearing denied 102 S.Ct. 1493, 455 U.S. 983, 71 L.Ed.2d 694.* Thus, since Pakter makes both civil rights claims, and tort claims and has provided numerous Notices of Claim and DHR notice for the ongoing continuous wrongs the DOE and numerous of its employees have committed, the Defense position that he has failed to meet the condition precedent under Educ. L. §3813 fails and is devoid of merit.

Statutory action against school district for unlawful discriminatory practices was not tort action and thus action was not subject to statutory notice of claim provisions applicable to tort actions against schools. *Lane-Weber v. Plainedge Union Free School Dist., 213 A.D.2d 515, 624 N.Y.S.2d 185,(2d Dept. 1995) leave to appeal dismissed 87 N.Y.2d 968, 642 N.Y.S.2d 196, 664 N.E.2d 1259.* Therefore, Pakter's claims of continuing retaliatory discrimination under applicable federal and state human rights and civil rights statutes never required the many Notices of Claim that Pakter has filed in order to make sure that he has complied with E.L. §3813.

Three-month notice of claim requirement contained in Education Law applies in proceedings involving school districts which seek only enforcement of private rights and duties, but does not apply in proceedings against school districts in which relief is sought in order to vindicate public interest. *See Mary's Bus Service Inc. v. Rondout Valley Cent. School Dist. 238 A.D.2d 829, 656 N.Y.S.2d 534 (3d Dept. 1997).*

13

This is especially important in light of how the claims in this case arose.  Pakter's earliest complaints were solely in the public interest.  He reported his concerns for how minority students were being denied a course required for high school graduation, were not being offered foreign language instruction also part of the traditional high school curriculum, and that funds for music instruction and unnecessary but ordered window repair were being diverted to non-authorized uses. Therefore, Pakter's complaints, and the retaliation that later followed his reports to both the Special Commissioner for Investigation and to Defendant Klein, were not even subject to Educ. L. §3813. The claims he makes are ongoing from that time and constitute a single retaliative animus and continuing wrong over the past six years.  When Pakter walked into the DHR office on the 14th of August 2008, he was asked, as every complainant is asked, "when was the last time you were discriminated against."  His answer was that it is still ongoing as his hearings for "unauthorized donation of a plant to a school," promise and implementation of "an inexpensive watch as a gift to students who maintain a 90% G.P.A. on their report cards," were then to begin September 15, 2008. These hearings have been ongoing have prevented Pakter from entertaining alternate summer plans as there have been hearing days in July 2009 and there also will be hearing days in August 2009.

Further, under New York law, requirement that claim against school district or board of education be presented to governing body within ninety days of its accrual applies only to those actions which seek enforcement of private rights, as opposed to those actions that seek vindication of public interest. *See Biggers v. Brookhaven-Comsewogue Union Free School Dist., 127 F.Supp.2d 452. (EDNY. 2001).*

This exception to the New York statute requiring presentation of claims against the governing body of a school district for actions that seek vindication of a public interest has been reaffirmed more recently as well. *Falchenberg v. New York City Dept. of Educ., 375 F.Supp.2d 344 (SDNY 2005).*

14

Public interest exception to notice of claim requirement for action against school district extends to actions that are brought to protect important rights, which seek relief for similarly situated class of the public, and whose resolution would directly affect rights of that class or group. *White v. Freyman, 171 Misc.2d 767, 655 N.Y.S.2d 728 (1997) reversed 248 A.D.2d 393, 669 N.Y.S.2d 853.*

A separate exception is for acts beyond the scope of a public official's employment. Thus, the Assistant Principal of a High School was not required to notify the School District pursuant to Educ. L. §3813 before commencing lawsuit against the Principal, claiming intentional infliction of emotional harm; alleged conduct of Principal, including placement of dead pigeon in her mailbox, vandalizing of her automobile and urging colleagues to ostracize her, were not undertaken within scope of Principal's employment, as required in order to trigger notice obligation. *Radvany v. Jones 184 A.D.2d 349, 585 N.Y.S.2d 343 (1 Dept. 1992).* Here we claim that many of the mendacious acts were committed ultra-vires of individual defendant's responsibilities in their public positions. For those actions they should be held personally responsible, and thus no notice is required. Plaintiff takes the position, however, that the Defendants acted in both their official and their individual capacities and that adequate notice has been given on five occasions to the DOE (omnibus 2007 NOC, 2008 update NOC, 2008 DHR complaint, EEOC RTSL, 2009 NOC), and that DOE and individual defendants should be held jointly and severally responsible for the claims made.

Although substantial compliance with section of the Education Law regarding degree of descriptive detail in notice of claim against governing body of school district is sufficient, statutory requirements mandating notification to proper public body or official must be fulfilled. *Sainato v. Western Suffolk BOCES (2d Dept. 1997) 242 A.D.2d 301, 661 N.Y.S.2d 43.* Thus, when Pakter's 2008 new Notice of Claim followed the 2007 "omnibus" Notice of Claim, it was to add a new type of claim to what had already been claimed, previously to rather than to supercede his prior Omnibus Notice of Claim. Both of his claims were served to the appropriate bodies, a copy of each being

15

stamped as received in behalf of the "Education" Department, and another being responded to by an Attorney John Petrak, Esq. on behalf of the employer DOE.

The notice-of-claim provision of New York law is intended to enable a prompt investigation and presentation of evidence of the facts and circumstances out of which claims arise. *See Ismail v. Cohen, 706 F.Supp. 243, 250 (S.D.N.Y.1989), aff'd, 899 F.2d 183 (2d Cir.1990).* Thus, not every claim need be set forth in haec verba, as long as the details pertaining to such a claim are described sufficiently with respect to time, place and manner "to enable the city to investigate the claims." *Id.*

Although intentional infliction of emotional distress may not have been specified initially by Pakter as a claim, the DOE Defendants learned of the events underlying the claims through notice of Pakter's various retaliation and discrimination charges. DOE Defendants were given the opportunity to make a prompt investigation of the underlying basis for the federal and state law claims and thus had sufficient notice to fulfill New York's notice requirement.

### d.  DOE Defendants Wrongdoing is Part of a Continuing Tort Back to 2003

Pakter pleaded detailed allegations that defendants intentionally and maliciously engaged in a pattern of harassment, intimidation, humiliation and abuse, causing him unjustified demotions, suspensions, lost pay and psychological and emotional harm over a period of years. *See Shannon v MTA Metro-North Railroad, 269 A.D.2d 218, 704 N.Y.S.2d 208, 2000 N.Y. Slip Op. 01630 (App Div 2000) and Vasarhelyi v. New School for Social Research, 230 A.D.2d 658, 661, 646 N.Y.S.2d 795).*

Based on such allegations, the cause of action was not barred by the one-year Statute of Limitations (CPLR 215) and was instead governed by the continuing tort doctrine, permitting the plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit. *See Ain v. Glazer, 257 A.D.2d 422, 683 N.Y.S.2d 241; Drury v. Tucker, 210 A.D.2d 891, 621 N.Y.S.2d 822).*

Additionally, with respect to Pakter's claims against DOE Defendants that involve actions that occurred dating back to 2003 – when the harassment, retaliation and targeting began -Pakter is

16

entitled to "invoke the continuing tort doctrine to provide an exemption from the statute of limitations where the 'last actionable act' of the alleged course of conduct falls within the statute of limitations." *See Bonner v. Guccione, 916 F.Supp. 271 (S.D.N.Y.1996); Neufeld v. Neufeld, 910 F.Supp. 977, 982-83 (S.D.N.Y.1996).*

"When the alleged offense is part of an ongoing pattern of harassment, the continuing tort doctrine permits a plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit." *See Manliguez v. Joseph 226 F.Supp.2d 377, 386 (E.D.N.Y.2002).*

As such Pakter's claims as articulated in the First Amended Complaint and his July 16, 2009 Declaration set forth sufficient facts to prove an ongoing and continuing tort.

### e.    Infliction of Emotional Distress

The tort has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Howell v. New York Post Co., 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993).*    New York sets a high threshold on conduct that is "extreme and outrageous" enough to constitute intentional infliction of emotional distress. *See Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 90 (1983).*

Nonetheless, in the Second Circuit's assessment of New York law, conduct that included acts such as those Pakter asserted here might well be considered sufficiently outrageous to satisfy the conduct element of the emotional distress tort. *See Bender v. City of New York, 78 F.3d 787, 791 (2d Cir.1996); Hughes v. Patrolmen's Benevolent Ass'n of City of New York, 850 F.2d 876, 883 (2d Cir.1988); Mejia v. City of New York, 119 F.Supp.2d 232, 285 (E.D.N.Y.2000); Levine v. Gurney, 149 A.D.2d 473, 539 N.Y.S.2d 967, 968 (N.Y.App. Div.2d Dep't 1989).*

There is also evidence supporting Pakter's claims as to what motivated the specific retaliatory animus toward him and on this record, a reasonable jury could find that such conduct

17

could sufficiently support a claim for intentional infliction of emotional distress. *See Bender, 78 F.3d at 791; Mejia, 119 F.Supp.2d at 285; Levine, 539 N.Y.S.2d at 967.*

### f.  Documented Retaliation and Harassment

Pakter's claims started when he blew the whistle and spoke out about what he perceived to be improper treatment of minority students.

All Pakter needed to show to succeed on a First Amendment retaliation claim pursuant to § 1983, Pakter must show by a preponderance of the evidence that "(1) [his] speech was constitutionally protected, (2)[he] suffered an adverse employment decision, and (3) a causal connection exists between the speech and the adverse employment determination against him, so that it can be said that [his] speech was a motivating factor in the determination." *See Gorman-Bakos v. Cornell Co-op. Extension of Schenectady County, 252 F.3d 545, 553 (2d Cir.2001).*

Plaintiff had the initial burden of showing that an improper motive played a substantial part in the defendant's action and then the burden then shifted to City Defendant to show it would have taken exactly the same action absent the improper motive. *See Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir.2003).* No such evidence was presented by the City Defendants and they failed to meet their burden.

Pakter showed that he was engaged in protected activity (speaking out about abuses within the NYC school system that caused minority students to be prejudiced against and to denied educational opportunities. The DOE Defendants were aware of what Pakter said and did and they did not like it.

Protected participation or opposition ("protected activity") under Title VII "refers to action taken to protest or oppose statutorily prohibited discrimination." *See Wright v. Stern, 450 F.Supp.2d 335, 373 (S.D.N.Y.2006).* "Informal as well as formal complaints constitute protected activity." *Id. (citing Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir.1990).* Pakter's conduct and speech was protected and DOE Defendants retaliation was unlawful.

18

The second prong for a claim of First Amendment retaliation only required Pakter to demonstrate that he was subject to an adverse employment action, which he also did. *See Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2414-14, 165 L.Ed.2d 345 (2006) (plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination).*

"Courts must examine closely each case to determine whether the challenged employment action reaches the level of 'adverse' ... An adverse action is not defined solely in terms of job termination or reduced wages and benefits ... Less flagrant reprisals by employers may indeed be adverse. *See Wright, 450 F.Supp.2d at 373 (citing Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir.1997)) (internal quotations omitted).*

Finally, there must be a causal connection between the protected activity and the alleged retaliatory action and proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment or fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir.2000).*

The retaliation against Pakter was unlawful because it directly resulted in a loss of a job opportunity or benefit. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir.1999).* The retaliatory actions against Pakter were unlawful because they impeded legitimate employment objectives and prejudiced his tangible future objectives. *See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir.1997)*

Based on both the language and history of Title VII, the conduct directed at Pakter by DOE Defendants was exactly the sort of retaliatory conduct that would naturally create major obstacles for a former employee in obtaining future employment in her field is actionable under this statute. See 42

19

U.S.C. § 2000e-3.

DOE Defendants knew that their conduct would impact negatively Pakter's subsequent ability to obtain gainful employment. *See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 157-58 (3d Cir.1999) (actions by an employer can constitute discrimination under Title VII if they hurt a plaintiff's employment prospects); Berry v. Stevinson Chevrolet, 74 F.3d 980 (10th Cir.1996).*

DOE Defendants actions were unlawful because they singled out of Pakter for heavy-handed supervision, caused disciplinary actions to be instituted against him for minor violations; caused his assignments to be changed regularly and abruptly; transferred him to a location where he would be perceived and treated as a person with performance problems, of which constituted adverse employment actions. *See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 443-44 (2d Cir.1999); Dominic v. Consolidated Edison Co., 822 F.2d 1249, 1254-55 (2d Cir.1987) (direct and heavy-handed supervision can constitute retaliation); Boyd v. Presbyterian Hosp., No. 95 Civ. 3847, 2001 WL 314655, *8 (S.D.N.Y. Mar. 30, 2001) (transfer is adverse employment action under Title VII when it represents a significant change in the nature of an employee's work); Meckenberg v. New York City Off-Track Betting, 42 F.Supp.2d 359, 378 (S.D.N.Y.1999); Dortz v. City of New York, 904 F.Supp. 127, 156 (S.D.N.Y.1995) (increased supervision that disadvantaged and interfered with employee's ability to perform on the job is adverse employment action).*

A continuing pattern of causing disciplinary charges were directed to be written against Pakter, and City Defendants coordinated efforts with others within the NYC Department of Education in order both to portray Pakter as insubordinate, incompetent, irresponsible, a troublemaker, "crazy" and/or otherwise unfit to teach, and to encourage him to "retire" and leave his teaching job with City Defendants, constitute employment retaliation not only under federal law, but under the HRLs as well, and all of this constituted unlawful retaliation. See, *Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1104 (10th Cir.1998); Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir.1997) (filling an employee's records with reprimands and negative reports constituted an*

20

*adverse employment action that could seriously affect the employee's position); Sims v. MME Paulette Dry Cleaners, 580 F.Supp. 593 (S.D.N.Y.1984) (changing employee's reporting time and singling employee out for written warnings and monitoring).*

Actions that produced adverse effects on Pakter's employment in creating negative records as to his reputation on the job, his ability to perform his duties effectively and his compensation were unlawful retaliation and adverse employment actions. *See Dominic, 822 F.2d at 1254-55; Osier v. Broome County, 47 F.Supp.2d 311, 325-26 (N.D.N.Y.1999); Romero v. Howard Johnson Plaza Hotel, No. 97 Civ. 3706, 1999 WL 777915, *7 (S.D.N.Y. Sept. 28, 1999).*

And to the extent any of Pakter's pleadings may have been deficient in any way and not pointed these facts out clearly enough to the Court, they can be deemed by the Court amended to conform to the proof and evidence (as set forth in the previously filed Appendix) and in accordance with Fed.R.Civ.P. 15(b). *See Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94 (2d Cir.2000).*

Pakter has also presented evidence of the individual Defendant's where – as here - the unlawful conduct was carried out by a subordinate acting under direct instructions of a principal violator who possessed the wrongful intent to cause the denial of the Pakter's civil rights. *See Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir.1986) (supervisor may be liable for direct participated in the infraction or creation of a policy or custom under which the unconstitutional practices occurred, or allowed such a policy or custom to continue); Meriwether v. Coughlin, 879 F.2d 1037, 1046 (2d Cir.1989); cf. Varrone v. Bilotti, 123 F.3d 75 (2d Cir.1997); see also Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir.1988) (individual defendant is liable for setting in motion a series of events that the defendant knew or should have known would cause others to violate plaintiff's constitutional rights); Specht v. Jensen, 832 F.2d 1516, 1524 (10th Cir.1987).*

### g. Hostile Work Environment

To succeed on his hostile work environment claim, Pakter need only demonstrate that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the

21

terms and conditions of ... employment were thereby altered." *See Alfano v. Costello, 294 F.3d 365,*

*373 (2d Cir.2002).*    If not "extraordinarily severe," the alleged incidents "must be more than

episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id. at*

*374. See also Ottati v. City of Amsterdam No. 5:06-CV-1370 (NPM / DEP) April 11, 2008. 2008 WL*

*1744557 (N.D.N.Y.)*

Pakter's workplace was permeated with discriminatory intimidation, ridicule, and insult that

is sufficiently severe or pervasive that altered the conditions of his employment and create an abusive

working environment and violated Title VII.    *See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21,*

*114 S.Ct. 367, 126 L.Ed.2d 295 (1993)*

"In determining whether a work environment is sufficiently hostile or abusive to violate Title

VII, the Court looks at all the circumstances, including the frequency of the discriminatory conduct;

its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." *See Holtz v. Rockefeller*

*& Co., Inc., 258 F.3d 62, 75 (2d Cir.2001).*

Pakter pleaded facts that showed the unlawful conduct directed against him (1) was

objectively severe or pervasive and any reasonable person would find it hostile or abusive; (2)

subjected him to an environment that was hostile or abusive and (3) subjected him to such an

environment because of his age, his status and because he spoke out about abuses within the system

that discriminated against and disenfranchised minority students. *See Patane v. Clark, 508 F.3d at*

*113 (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir.2001).*

DOEDefendants are liable for the hostile work environment to which they subjected Pakter.

### h.  Punitive Damages are Warranted For DOE Defendants Wrongful Conduct

Punitive damages may be awarded in an action under § 1983 "when the defendant's conduct

is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference

to the federally protected rights of others." *See Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75*

22

*L.Ed.2d 632 (1983); Lee v. Edwards, 101 F.3d 805, 808 (2d Cir.1996).*

In determining whether to award and the amount of punitive damages, the Court must bear in mind that punitive damages must be "reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Vasbinder v. Scott, 976 F.2d 118, 121 (2d Cir.1992) (quoting Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).*

To guide judicial application of the standards governing the reasonableness of punitive damage awards, the Supreme Court has enunciated relevant criteria including: (1) the degree of reprehensibility of a defendant's conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *See Lee, 101 F.3d at 809 (citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)); see also Mathie v. Fries, 121 F.3d 808, 816 (2d cir.1997).*

The irrefutable, documented, wrongful and unlawful conduct by DOE Defendants against Pakter met each of the elements of the aggravating factors in Gore and Pakter is entitled to punitive damages.

### 3. CONCLUSION

Plaintiff therefore, respectfully requests that Defendants Motion to Dismiss be denied in its entirety, that Defendants be required to make a responsive pleading to the 2nd Amended Complaint without delay and that Court order such other and further relief in favor of the plaintiff as the Court deems just and proper.

Dated: New York, New York     /s/ (electronic signature)
   July 31, 2009        Joy Hochstadt, P.C.
                Attorney for the Plaintiff
                300 Central Park West
                New York, New York 10024-1590
                212 580 9930

23