*Joy Hochstadt, P.C.*
*Attorneys at Law*
*300 Central Park West*
*Suite 2E*
*New York, NY 10024*

November 4, 2009

Re: Pakter v. NYC-DOE 08-CV-7673 (DAB)(KNF)

The Honorable Deborah A. Batts
United States District Judge
for the Southern District of New York
Daniel P. Moynihan Federal Courthouse
500 Pearl Street–Room 2510
New York, New York 10007-1312

Dear Judge Batts:

I represent the plaintiff in the above captioned matter.

I submit this letter memorandum in support of the accompanying Motion, pursuant to FRCP Rule 65, Your Honor's Individual Rule II B. 1 and SDNY Local Rule 37.2, for Miscellaneous Injunctive and Other Relief.

## 1. INTRODUCTION

On October 20, 2009, Plaintiff David Pakter discovered that Defendant NYC DOE started to a new campaign to retaliate against him because of the incredible admissions against interest (including that Defendant NYC DOE witnesses lied and falsified evidence against him, Defendant NYC DOE is knowingly violating Chancellor's Regulations as related to Plaintiff Pakter and Defendant NYC DOE employees have destroyed documents) and all of which have come out during the ongoing 3020-a process.

The newest retaliation comes in various forms. First, they are withholding Plaintiff Pakter's payroll checks in an effort to try to starve Plaintiff Pakter or force him into settling his 3020a hearing case and retire, thereby preventing the ability to use the findings in the 3020-a hearing in this case and having those findings embarrass the DOE. Second, they are trying to change Plaintiff Pakter's status to try to starve him or force him into making a deal to retire; they are attempting to change his status from "leave with pay" to "suspension with pay". Third, they are trying to change Plaintiff Pakter's employment status in the midst of the ongoing 3020a hearings and during the pendency of this case B so that they can use that against Plaintiff Pakter in each of the federal and 3020-a cases. Fourth, they are libeling, slandering and defaming

Plaintiff Pakter in his profession by referring to or "branding" him with the "99" pre-fix Code, which he was told means that he is allegedly a "trouble maker".

This application is necessary to prevent the imminent and irreparable harm that Plaintiff Pakter will suffer, prevent further destruction of evidence, permit the imposition of sanctions for destruction of evidence, prevent a change of status, prevent further withholding of Plaintiff Pakter's paychecks and above all to maintain the *status quo* during the pendency of this suit and the ongoing 3020-a hearing.

## 2. **RELEVANT FACTS**

The facts that led to and which support this application come from the ongoing disciplinary hearing that Defendant New York City Department of Education ("NYC DOE") has commenced and is prosecuting against me before Impartial Hearing Officer Douglas Bantle Esq. and during which hearing incredible evidence that supports my Federal Claims is emerging. *Pakter Decl.* ¶ 5.

During the disciplinary hearings, other admissions by Defendant NYC DOE employee Darlene Alba Hart that (i) Plaintiff Pakter's official employment status with the Defendant NYC DOE is "leave with pay"; (ii) in her capacity as a payroll official, with years of experience with the Defendant NYC DOE, because Plaintiff Pakter's official employment status with Defendant NYC DOE is "leave with pay", it is her understanding and opinion that he does not have to go to school or the reassignment centers; (iii) Defendant NYC DOE is attempting to change my official employment status from "leave with pay" to "absent without permission"; (iv) Defendant Judith Rivera instructed that his paychecks start to be withheld and that there are email communications, documents, memos and files related to these instructions and the efforts to change his employment status; (v) Defendant John Lachky lied in Plaintiff Pakter's first 3020-a hearing; and (vi) Defendant Harold Mason shredded evidence before he left Defendant NYC DOE's employ. *Pakter Decl.* ¶¶ 6 a i – iii, b. i – iii and c - g, including footnotes.

What Plaintiff Pakter's inquired about my employment status and the whereabouts of his payroll checks he was informed that (i) Defendant NYC DOE is withholding his paychecks; (ii) Defendant NYC DOE is currently holding two checks totaling $8337.42 which checks were cut and are sitting in Darlene Alba Hart's drawer ; (iii) Plaintiff Pakter's official status with Defendant NYC DOE is "leave with pay"; and (iv) in addition to his status as being "leave with pay" – Plaintiff Pakter' has been flagged as *persona non grata* by the Defendant NYC DOE, my internal records show me as having been given a "99" Pre-fix Code which I was told is the Code for pariahs and *personae non grata*. *Pakter Decl.* ¶¶ 7 and 8 a - d.

It now appears that the Defendant NYC DOE has decided to retaliate against Plaintiff Pakter's because (i) he refused to be silenced; (ii) continues to exercise his 1st Amendment rights and speak out on issues of public importance related to the NYC public school system and what Defendant NYC DOE, Defendants Bloomberg & Klein and the others have been and are doing to hurt students and pedagogues; (iii) he continues to exercise his 1st Amendment rights to speak out against the use of the Rubber Room; (iv) he filed and is pursuing this Federal Action, (v) he refused to make a deal to end his 3020-a disciplinary hearing and insist on continuing it and exercising his rights in the hearings – as limited as they are in the 3020-a hearing – and fight to

have a full vindication, (vi) because in the 3020-a hearings certain evidence, testimony and admissions are coming out that could be prejudicial to Defendant NYC DOE and the individual Defendants in this case and (vii) because he is am sharing the evidence, testimony, admissions and information he gets in my 3020-a hearings with my fellow teachers so that they can use it in any way they can to defend themselves in their disciplinary hearings and assist in the prosecution of their individual cases or claims against the Defendant NYC DOE. *Pakter Decl. ¶ 9*.

The retaliation against Plaintiff Pakter has included (i) Defendant NYC DOE and Defendant Judith Rivera have instructed that his payroll checks NOT to be given to him (he believes to try to starve him out or force him into settling my 3020-a hearing case and retire and thereby prevent him from being fully exonerated from restoring his good name and from being able to use the findings from the 3020-a hearing in this case); (ii) Defendant NYC DOE and Defendant Judith Rivera are trying to change his status to try to starve him out or force me into making a deal; (iii) Defendant NYC DOE and Defendant Judith Rivera are trying to change his employment status in the midst of the ongoing 3020-a hearings and during the pendency of this case – so that they can use that against him in both cases; and (iv) Defendant NYC DOE and others within their employ (whose identities are as yet unknown to him) are libeling, slandering and defaming him in his profession by referring to or "branding" him by removing his 41-year file number "407530" and replacing it with the "99" Prefix Code, which he was told means *persona non grata*. *Pakter Decl. ¶ 10 a - d.*

Defendant NYC DOE employee Darlene Alba-Hart has admitted that evidence has been destroyed (by Defendant Mason) and other evidence is at risk because offices have been relocated, files have been moved, file cabinets are missing and she cannot find everything related to his case and him. *Pakter Decl. ¶ 12.*

If an Evidence Preservation Order is not immediately entered and instructions are not circulated to all departments and personnel involved in Plaintiff Pakter's case or claims even more evidence will be destroyed. *Pakter Decl. ¶ 15.*

Given the confirmed instances/admission related to retaliation and evidence destruction an expedited hearing related to spoliation of evidence and relief necessary to insure that no further evidence is destroyed.

   a. **Likelihood/ Probability of Success on The Merits**
   During the August and September 2009 ongoing 3020-disciplinary hearings Defendant Rivera and Defendant NYC DOE employee witness Darlene Alba Hart made admissions that show the probability and/or likelihood that Plaintiff Pakter will succeed on the merits on his claims.

With these admissions, Plaintiff Pakter can prove, among other things: (i) his re-assignment to a Temporary Reassignment Center in Brooklyn rather than Manhattan, outside his District, and despite his seniority status violates Chancellor's Regulation C-770, (ii) his re-assignment was a form of retaliation just because Plaintiff Pakter took a picture of Defendant Rivera on the day he saw her at his "assigned location" to prove he was present at her office on that given day; (ii) Defendant NYC DOE violates Chancellor's Regulation C-770 related to

reassignment of teachers in Rubber Rooms; and (iii) Defendant NYC DOE violates Chancellor's Regulation C-770 because Plaintiff Pakter (and other reassigned teachers) are not given assignments in the Rubber Rooms and are forced to sit and wait with no job duties or obligations and are watched by security guards, (iii) Defendant NYC DOE's Rubber Rooms – as they relate to Plaintiff Pakter and others - meet the legal requirements for a hostile work environment because teachers are reassigned outside of their District, the Rubber Rooms are overcrowded, the Rubber Rooms are nothing at all like the schools; and Teachers assigned to Rubber Rooms are not given assignments*)*; (iv) Defendant NYC DOE subjected Plaintiff Pakter to a "hostile work environment", (v) Defendant NYC DOE subjected Plaintiff Pakter to unlawful punishment and retaliation, (vi) Defendant NYC DOE is retaliating against Plaintiff Pakter by withholding issue payroll checks; (vii) Defendant NYC DOE is retaliating against Plaintiff Pakter by libeling, defaming and slandering him on a daily basis by referring to him in internal memos as a "pariah" and *persona non grata*, and (viii) Defendant NYC DOE has allowed or encouraged spoliation of evidence related to Plaintiff Pakter and his claims. *Pakter Decl.* ¶ ¶ *19 - 21*.

These admissions alone would be sufficient for Plaintiff Pakter to prevail on his claims.

### b. Real Threat of Imminent & Irreparable Harm

There is a real threat of imminent and irreparable harm that Plaintiff Pakter will suffer without the Court's intervention. *Pakter Decl.* ¶ *27*.

The spoliation of evidence admissions confirm a real risk of imminent and irreparable harm for which monetary damages are insufficient. *Pakter Decl.* ¶ *28*.

The threat and efforts to change in Plaintiff Pakter's employment status are unlawful retaliation to try to force him to retire or quit and presents a risk of imminent and irreparable harm for which monetary damages are insufficient. *Pakter Decl.* ¶ *29.* If Plaintiff Pakter were to retire and enter retirement status, he can no longer resume my career and return to active status. *Pakter Decl.* ¶ *30*.

The retaliation against Plaintiff Pakter is an attempt to interfere with his 1st Amendment, due process, civil and contractual rights and presents a risk of imminent and irreparable harm for which monetary damages are insufficient. *Pakter Decl.* ¶ *31*.

The continuing libel, slander and defamation by referring to me by a code that means a "pariah" and a *persona non grata* in internal documents presents a risk of imminent and irreparable harm for which monetary damages are insufficient. *Pakter Decl.* ¶ *32*.

Plaintiff Pakter faces actual and imminent risk of harm that is neither remote nor speculative. *Pakter Decl.* ¶ *34*.

Defendant NYC DOE's retaliation against Plaintiff Pakter, withholding of his payroll checks, efforts to change his employment status and efforts to silence him or interfere with his exercise of his 1st Amendment rights, due process and civil rights under Federal, State and NYC laws, presents an actual and imminent risk of harm for which monetary damages are insufficient.

c. **Injunctive Relief Sought, Necessary & Appropriate**

Plaintiff Pakter submits that (i) Defendant NYC DOE's ongoing retaliation against him should not be permitted, (ii) Defendant NYC DOE should not be permitted to change his status from "leave with pay" to "absent without permission", (iii) Defendant NYC DOE should not be permitted to withhold his payroll checks, (iv) Defendant NYC DOE should not be permitted to refer to him as a pariah, or *persona non grata* by the "99" Pre-fix Code as a new internal ID for him in their records, (v) Defendant NYC DOE's ongoing destruction, alteration and spoliation of evidence should be stopped permitted and (vi) Defendant NYC DOE should be sanctioned for admitted destruction of evidence. Plaintiff submits that this relief is necessary to preserve the *status quo*.

Plaintiff Pakter believes the Court should convene a Preliminary Injunction hearing at its earliest convenience at which the confirmed instances of retaliation and destruction of evidence can be addressed and the appropriate relief, including injunctive relief and imposition of appropriate spoliation sanctions, can be granted.

3. **DISCUSSION**

a. **Preliminary Injunction Standards to Preserve Status Quo Pending Trial**

To prevail on a motion for a preliminary injunction, the moving party must demonstrate (1) a threat of irreparable injury and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation, as well as a balance of hardships tipping decidedly in the moving party's favor. *See, e.g., Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 923 (2d Cir. 1997).*

Irreparable injury exists where, but for the granting of the preliminary injunction, it would be difficult or impossible to return the parties to the positions they previously occupied. *See Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999).*

A trial court has the discretion to fashion a preliminary injunction that will preserve the status quo pending a trial on the merits. *Arthur Guinness & Sons, PLC v. Sterling Pub. Co., 732 F.2d 1095, 1099 (2d Cir. 1984); see also Grand Union Co. v. Cord Meyer Dev. Co., 761 F.2d 141, 147 (2d Cir. 1985).*

b. **Irreparable Harm**

"Irreparable injury is the sine qua non for the grant of preliminary injunctive relief." *See United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir.1978).* Irreparable harm has been defined by the Second Circuit as "harm shown to be non compensable in terms of money damages." *See Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113-14 (2d Cir.2003).* "[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue.". *See Jayaraj v. Scapini, 66 F.3d 36, 39 (2d Cir.1995), (citing Loveridge v. Pendelton Wollen Mills, Inc., 788 F.2d 914, 914 (2d Cir.1986)).*

A showing of probable irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *See Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir.1983), quoting 11 C. Wright & A. Miller, Federal Practice and Procedure* '

*2948 at 431 (1973)*. The threat of irreparable harm, moreover, must be actual and imminent, not remote or speculative. See *Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir.2002); Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989). Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979); Kamerling, 295 F.3d at 214*.

### c. Violation of 1st Amendment Rights

An alleged violation of a constitutional right automatically triggers a finding or irreparable harm. See *Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir.1986)*. And, because violations of constitutional rights are presumed irreparable, the allegations themselves satisfy the irreparable injury requirement that a plaintiff must show when seeking injunctive relief. See *Elrod v. Burns, 427 U.S. 347, 373 (1976), State of Connecticut Dept. of Envtl. Prot. v. Occupational Safety & Health Admin., 138 F.Supp.2d 285, 291 (D.Conn.2001), Bery v. City of New York, 97 F.3d 689, 694 (2d Cir.1996), cert. denied, 520 U.S. 1251 (1997) and Kamerling v. Massanari, supra at pp. 214-15*.

Since violations of First Amendment rights are presumed to be irreparable, the allegation of a First Amendment violation satisfies the irreparable injury requirement. See *Tunick v. Safir, 209 F.3d 67, 70 (2d Cir.2000)*. Irreparable harm is shown / satisfied because an alleged First Amendment violation presents evidence of an actual chilling effect. See *Latino Officers Ass'n v. Safir, 170 F.3d 167, 171 (2d Cir.1999)*. Where there is a cognizable claim based on the chilling of First Amendment rights, a party satisfies the irreparable harm element necessary to entitle him or her to injunctive relief by showing that there is Aspecific present objective harm or a threat of specific future harm. See *Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)*.

To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that (1) the speech was constitutionally protected, as a result of which (2) the plaintiff suffered an adverse employment decision and (3) there is a causal connection existed between the speech and the adverse employment decision, so that it can be said that the speech was the motivating factor in the determination. See *Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005)*.

A public employee's speech is constitutionally protected when he/she speaks "as a citizen on a matter of public concern," See *Garcetti v. Ceballos, 547 U.S. 410, 418, 421 (2006)*.

As noted above, the retaliation against Plaintiff Pakter started when and has continued because in part he is exercising his First Amendment rights to speak out publicly on issues of public interest related to the NYC public school system, discrimination against minority students, improper allocations/use of public funds, improper treatment of pedagogues and the use of the Rubber Rooms. Therefore, Plaintiff Pakter has satisfied the elements necessary to prove irreparable harm for which injunctive relief is appropriate, should be granted and a hearing should be held.

### d. Hostile Work Environment & Retaliation Claim

To prove a hostile work environment claim, a plaintiff must allege that: (1) the workplace was permeated with discrimination that was sufficiently severe or pervasive to alter the conditions of the work environment, and (2) a specific basis exists for imputing the conduct that created the hostile work environment to the employer. See *Schwapp v. Town of Avon, 118 F.3d*

*106, 110 (2d Cir.1997) and Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir.1996).*

"The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered;" *See Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.2002).* The misconduct must be sufficiently severe and pervasive "to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive." *See Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).*

Defendant Rivera has already admitted that the Rubber Rooms meet the legal requirements for a hostile work environment because teachers are reassigned outside of their District, the Rubber Rooms are overcrowded, the Rubber Rooms are nothing at all like the schools and that the assignments of Plaintiff Pakter to the Rubber Room was in violation of Chancellor's Regulation C-770. Defendant NYC DOE employee witness Darlene Alba Hart has admitted that Defendant NYC DOE – at the specific instructions of Defendant Rivera - is withholding Plaintiff Pakter's issued payroll checks. Defendant NYC DOE documents show that they are libeling, defaming and slandering Plaintiff Pakter on a daily basis by referring to him by a "99" Code which means they consider him a "pariah" and *persona non grata*. Therefore, Plaintiff Pakter has satisfied the elements necessary to prove likelihood of success on certain of his claims so that the request for injunctive relief is appropriate, should be granted and a hearing should be held.

### e. Spoliation / Destruction of Evidence and Preservation Issues

There is an increasing need to protect against intentional, reckless and inadvertent spoliation, especially spoliation of electronically stored information ("ESI"). The duty to preserve relevant evidence is fundamental to federal litigation. *See Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir.2001).* The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation. *See Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998).*

The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge. *See West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999).* In New York, the range of relief appropriate when spoliation has occurred include imposition of monetary fines, imposition of adverse inferences, striking of pleadings and granting of default judgment. *See Metlife Auto & Home v Joe Basil Chevrolet et al 1 N.Y. 3d 478 (2004), Ortega v City of New York 9 N.Y. 3d 69 (2007), Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y.2003). Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y.2003), In re NTL, Inc. Securities Litigation, Case No. 02-3013, -7377 (S.D.N.Y. Jan. 30, 2007), and Phoenix Four, Inc. v. Strategic Res. Corp., 2006 WL 1409413, at *4 (S.D.N.Y. May 23, 2006)).*

A litigant is not under a duty to keep or retain every document in its possession but it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be

requested during discovery and/or is the subject of a pending discovery request. *See Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y.1991).* This obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery. *See Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. 396, 399 (S.D.N.Y.2001).*

There are many ways to preserve electronic data and a litigant is free to choose how to do so and once the duty to preserve attaches, at a minimum, a litigant is expected to suspend its routine document and retention/destruction policy and to put in place a litigation hold. *See Zubulake, 220 F.R.D. at 218.*

Defendant NYC DOE employee Darlene Alba-Hart has admitted that evidence has been destroyed (by Defendant Mason) and other evidence is at risk because offices have been relocated, files have been moved, file cabinets are missing and she cannot find everything related to his case and him. Therefore, Plaintiff Pakter has satisfied the elements necessary to prove likelihood of success on certain of his claims so that the request for injunctive relief is appropriate, should be granted and a hearing should be held

### 4. CONCLUSION

In view of the foregoing, Plaintiff Pakter prays the Court grant his application for an expedited hearing on a Preliminary Injunction to protect him from the ongoing irreparable harm that the Defendant Rivera and Defendant NYC DOE are perpetrating against him, and that other Defendants are committing in the spoliation of evidence .

Respectfully submitted,

*[signature]*

cc:   L. Martinez, Esq.
      R. Dozis, Esq.
      D. Pakter