08-CV-7673 (DAB)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID PAKTER,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION f/k/a BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF NEW YORK;
and JOEL I KLEIN, as Chancellor of the CITY
SCHOOL DISTRICT OF THE CITY OF NEW
YORK, et al.,

Defendants.

## CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR MISCELLANEOUS RELIEF

### MICHAEL A. CARDOZO
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-314
New York, N.Y.  10007-2601

*Of Counsel:*    Larry R. Martinez
*Telephone:*    (212) 227-3153
lmartine@law.nyc.gov

Matter No. 2008-031238

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ................................................................................... 3

      A.  Plaintiff Files the Second Amended Complaint................................. 3

      B.  City Defendants Move to Dismiss the Second
          Amended Complaint ........................................................................... 4

      C.  Ms. Hochstadt Files An Unauthorized Motion
          to Strike. .............................................................................................. 5

      D.  Ms. Hochstadt Files an Unauthorized Sur-
          Reply. ................................................................................................... 6

      E.  The Court Strikes Ms. Hochstadt's Sur-Reply
          & Issues A Stay of Discovery. .......................................................... 6

      F.  Ms. Hochstadt Files An Unauthorized "Cross-
          Motion For Miscellaneous Relief." ................................................... 6

      G.  Ms. Hochstadt Files the Instant Unauthorized
          "Motion For Miscellaneous Relief Related to
          Spoliation and Retaliation"................................................................ 8

      H.  Allegations Made In The Instant "Motion For
          Miscellaneous Relief": Judith Rivera ............................................... 10

      I.  Allegations Made In The Instant "Motion For
          Miscellaneous Relief": Darlene Alba-Hart........................................ 11

ARGUMENT ..................................................................................................... 14

     POINT I ................................................................................................. 14

     PLAINTIFF'S MOTION FOR MISCELLANEOUS
     RELIEF IS PROCEDURALLY DEFECTIVE........................................ 14

     POINT II ................................................................................................ 15

     PLAINTIFF'S CLAIMS OF SPOLIATION ARE
     PATENTLY WITHOUT MERIT.......................................................... 15

     POINT III............................................................................................... 18

PLAINTIFF'S REQUEST FOR INJUNCTIVE
RELIEF MUST BE DENIED. ................................................................. 18

A.    No Threat Of Irreparable Harm. ........................................................ 19

     (a) No First Amendment Retaliation. ............................................... 19

     (b)No Spoliation Of Evidence. ......................................................... 22

     (c)No Libel, Slander, and Defamation. ............................................ 22

B.    No Likelihood Of Success On The Merits. ...................................... 23

## PRELIMINARY STATEMENT

David Pakter ("Plaintiff") brings this "Motion for Miscellaneous Relief related to Spoliation and Injunctive Relief" pursuant to Rule 65 of the Federal Rules of Civil Procedure, Individual Practice Rule II, B, 1 and Local Civil Rule 37.2.  Plaintiff alleges that: (1) he has confirmed that evidence relevant to his claims in this action has been destroyed; and (2) he is currently being retaliated against for continuing to exercise his First Amendment rights and "speak out on issues of public importance related to what City defendants are doing to hurt students and pedagogues."   City defendants[1] now submit their opposition and respectfully request that the plaintiff's motion be denied in its entirety.

First, the portion of plaintiff's motion which seeks relief pursuant to Individual Practice Rule II, B, 1 and Local Civil Rule 37.2 must be denied as it runs afoul of the pre-motion conference requirements of this Court. Indeed, as has been the case with every motion filed by plaintiff's counsel, no pre-motion conference has been requested. Second, on August 27, 2009, the Court issued an Order staying all discovery in this case pending the resolutions of the pending motions to dismiss. Therefore, as discovery has not begun, no dispute can be deemed to exist in this case. Therefore, plaintiff's motion must be denied.

Third, plaintiff's claim that there have been "confirmed" instances of spoliation of evidence  is baseless. Plaintiff alleges that during a telephone call on an unknown date, an unidentified NYC DOE employee "spontaneously stated that there was a great deal of paper shredding going on, especially when Defendant Mason was leaving the school." Contrary to

---

[1] City defendants in the above referenced action are the New York City Board of Education ("DOE"), Joel I. Klein, as Chancellor of the New York City Board of Education, Audrey Jacobson, Judith Rivera, Michael LaForgia, Philip Crowe, Sonia Stewart, Alexis Penzell, Madeline Appell, Mary Ann Geist-Deninno, John Lachky, Hilda Nieto, Giovanni Raschilla, Ann Garner, Eliane Meyer and Harold Mason.

plaintiff's belief, this statement does not establish: (1) the identity of any evidence relevant to this case; (2) that this evidence has been destroyed; and (3) that the evidence was destroyed by Harold Mason. Assuming the statement was made, all that it establishes is that unknown documents, which may or may not have pertained to the plaintiff, were destroyed by an unknown individual at an unknown time. Therefore, plaintiff's motion must be denied.

Third, the portion of plaintiff's motion which seeks injunctive relief based on what he alleges is ongoing retaliation in violation of his First Amendment rights must be denied as plaintiff has failed to come forward with any evidence even remotely suggesting that he has engaged in any constitutionally protected speech. Assuming that he has, his unsubstantiated allegations certainly do not establish a causal connection between his speech and any adverse employment action. As he has failed to establish a *prima facie* case of retaliation, plaintiff has failed to establish the threshold requirements for injunctive relief, namely, a threat of irreparable harm and a likelihood of success on the merits. Accordingly, plaintiff's motion must be denied in its entirety.

Ultimately, plaintiff's latest motion is nothing more than another attempt to circumvent the pre-motion conference requirements imposed by this Court on discovery disputes and to inject into this action each and every issue that arises at plaintiff's disciplinary hearings that are currently being held before Arbitrator Douglas J. Bantle at the DOE Office of Legal Services.

In short, plaintiff is asking the Court to address claims that are outside of the Second Amended Complaint and which are the subject of a contractually mandated arbitration proceeding. Accordingly, City defendants oppose plaintiff's motion to the extent that he is

attempting to amend the complaint, for the third time, to include claims which are or should be decided in arbitration.

Finally, by virtue of the numerous frivolous motions filed by the plaintiff, it has become abundantly clear that plaintiff and his counsel are not deterred by the prescriptions set forth by the Federal Rules of Civil Procedure, Local Civil Rules, Individual Practice Rules, and Orders of this Court.  Accordingly, City defendants urge the Court to promptly issue a decision granting City Defendants' Motions to Dismiss and for Reasonable Attorney's Fees pursuant to 28 U.S.C. § 1927. [2]

## STATEMENT OF FACTS

### A.    Plaintiff Files the Second Amended Complaint.

On June 1, 2009, plaintiff filed the Second Amended Complaint raising ten causes of action against the DOE and fourteen individual defendants. See Docket Entry 72. Specifically, plaintiff commenced this action alleging that he has been subjected to various acts of employment discrimination and a hostile work environment on the basis of his age.  Plaintiff also alleges that he has been retaliated against for opposing race discrimination in the DOE's educational programs in 2003.  The claims are brought under numerous federal and state laws,

---

[2] Since the filing of City defendants' motion to dismiss, plaintiff, through her attorney Joy Hochstadt, has filed three (3) frivolous motions for various forms of relief in violation of this Court's pre-motion conference requirement. First, on July 16, 2009, Ms. Hochstadt filed a "Motion to Strike" City defendants' motion to dismiss. See Docket Entry 90. Second, on September 2, 2009, Ms. Hochstadt filed a "Cross-Motion for Miscellaneous Relief." See Docket Entry 103. Finally, on November 9, 2009, Ms. Hochstadt filed the instant "Motion for Miscellaneous Relief. See Docket Entry 119. Each of these motions are examples of Ms. Hochstadt's contemptuous and vexatious behavior which has needlessly multiplied the proceedings in this case. City defendants urge the Court to take judicial notice that Ms. Hochstadt was recently admonished by the Honorable Jed Rakoff, United States District Court Judge, for engaging in similar behavior. See Lavandeira v. Infuse, LLC, No. 08 Civ. 11213, 2009 U.S. Dist. LEXIS 72887 (S.D.N.Y. Aug. 18, 2009)(Cautioning Ms. Hochstadt that any further motions that are brought in violation of the pre-motion conference requirement imposed by Magistrate Judge Freeman in this case would be summarily denied.).

including, *inter alia,* Title VII of the Civil Rights Act of 1964 ("Title VII"),  42 U.S.C. § 1983 ("1983"), the Age Discrimination in Employment Act ("ADEA"), the False Claims Act ("FCA"), and the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL" respectively). <u>See</u> Second Amended Complaint, filed June 1, 2009 ("Comp."), Docket Entry 79.

**B.    City Defendants Move to Dismiss the Second Amended Complaint**

On July 1, 2009,[3] City defendants moved to dismiss the Second Amended Complaint on various grounds. <u>See</u> Notice of Motion to Dismiss the Comp., filed July 1, 2009 and August 18, 2009, Docket Entries 84 & 100; Declaration of Larry R. Martinez, filed July 1, 2009 ("Martinez 7/1/09 Decl."), Docket Entry 86; Memorandum of Law in Support of City Defendants' Motion to Dismiss the Comp., filed July 1, 2009 ("Def. Memo."), Docket Entry 86.

First, many of plaintiff's claims are time barred. Specifically, plaintiff's  § 1983 and FCA discrimination and retaliation claims based on discrete acts that accrued on or before **September 2, 2005** are barred by the applicable three-year statute of limitations. <u>See</u> Def. Memo, Docket Entry 86, p. 6-9.   Similarly, plaintiff's ADEA and Title VII discrimination and retaliation claims arising from discrete acts occurring prior to **October 20, 2007** are barred by the applicable 300-day statute of limitation.  Furthermore, plaintiff's NYSHRL, NYCHRL and Intentional Tort claims arising from discrete acts that occurred on or before **September 2, 2007,** are barred by the applicable one-year statute of limitations. <u>Id.</u>

Second, plaintiff's NYSHRL and NYCHRL claims must be dismissed for failing to file a timely notice of claim pursuant to N.Y. Education Law  § 3813(1). <u>Id.</u> at 9-15.  Third, plaintiff's state common law tort claims must be dismissed because he has failed to satisfy the

---

[3] On August 18, 2009, Defendant Harold Mason retained the Office of the Corporation Counsel to represent him in this action and joined City Defendants' motion to dismiss.

heightened pleading requirements set forth in Section 3016(a) of the New York Civil Practice Law and rules ("CPLR"). Id.

Fourth, plaintiff First Amendment retaliation claims must be dismissed because plaintiff has failed to plead facts establishing a *prima facie* case. Specifically, plaintiff fails to establish a causal connection between engaging in what he purports to be a protected activity in October 2003 and any subsequent adverse employment action. Id. at 15-22. Similarly, plaintiff's FCA retaliation claim must be dismissed for failing to plead any facts even remotely establishing that he engaged in conduct protected under the FCA or that he was retaliated against because of the protected conduct. Id. at. 19.   Moreover, plaintiff's Title VII retaliation claim must be dismissed for failing to establish a causal connection between engaging in what he purports to be a protected activity in October 2003 and any subsequent adverse employment action. Furthermore, plaintiff's ADEA claim must be dismissed because he has failed to establish any facts establishing that he engaged in a protected activity under ADEA. That is, plaintiff has not alleged any facts establishing that he voiced any opposition to age discrimination.

Finally, plaintiff's hostile work environment claim must be dismissed because he has failed to plead any facts establishing that the harassment he complains of was based on plaintiff's membership in any protected class. Similarly, plaintiff's claim must be dismissed because the cobbling together of a number of distinct, disparate acts will not create a hostile work environment.   Pursuant to Local Rule 6.1(b), plaintiff's opposition to City defendants' motion was due on July 16, 2009, with defendants' reply due on July 23, 2009. See Notice of Motion, Docket Entry 84.

## C.    Ms. Hochstadt Files An Unauthorized Motion to Strike.

On July 16, 2009, in violation of the Court's pre-motion conference requirement and instead of filing opposition papers to City Defendants' motion, Ms. Hochstadt filed a motion

to strike the motion to dismiss. See Docket Entry 90. The motion to strike contained a declaration from the plaintiff as well as a five-page letter brief that addressed both the motion to strike and opposed City defendants' motion to dismiss. Id.

On July 23, 2009, City defendants timely filed their "Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint and in Opposition to Plaintiff's Motion to Strike." See Docket Entries 91 & 92.

Accordingly, City defendants' motion to dismiss was fully submitted on July 23, 2009. All that remained was for plaintiff to file a reply to City defendants' opposition to the motion to strike by the July 30, 2009.

**D.     Ms. Hochstadt Files an Unauthorized Sur-Reply.**

On August 2, 2009, more than one week after City defendants' motion was fully submitted, and more than three days after the July 30th return date on the motion to strike, Ms. Hochstadt filed a "Memorandum of Law in Opposition to Defendants' Motion to Dismiss"("plaintiff's memorandum"). See Docket Entry 93.

On August 3, 2009, City defendants moved to strike plaintiff's memorandum as an untimely, unauthorized sur-reply.

**E.     The Court Strikes Ms. Hochstadt's Sur-Reply & Issues A Stay of Discovery.**

On August 27, 2009, the Court issued an Order striking plaintiff's memorandum "as an un-authorized sur-reply and for violations of the Local Rules and the Court's Individual Practice Rules." See Order Dated August 27, 2009, Docket Entry 102. In its August 27th Order, the Court also stayed all discovery "until after the disposition of any motion to dismiss." Id.

**F.     Ms. Hochstadt Files An Unauthorized "Cross-Motion For Miscellaneous Relief."**

On September 1, 2009, in violation of the Court's pre-motion conference requirement, Ms. Hochstadt filed a Notice of Motion seeking "miscellaneous relief" including:

(1) reconsideration of the Court's August 27th Order pursuant to Fed. R. Civ. P. 60(b) and Local Civil Rule 6.3; (2) an order "consolidating" the motions to dismiss of City Defendants and Dr. Shuster pursuant to Rules 16 and 42; (3) an order denying the parties' motions to dismiss and; (4) an order entering "[d]efault against Individual Defendants Garner, Rivera, Raschilla, Penzell, Nieto, LaForgia, Lachky, Jacobson, and Geist-Deninno." See Docket Entry 103.

On September 2, 2009, Ms. Hochstadt filed a declaration in support of her Cross-Motion. See Declaration of Joy Hochstadt, filed September 2, 2009 ("Hochstadt Decl."), Docket Entry 104.

Without any authorization from this Court, Ms. Hochstadt re-filed the Memorandum of Law, which was stricken by the Court on August 27, as an Exhibit to the declaration. See Hochstadt Decl., Exhibit 5 n. 1. Ms. Hochstadt attempted to excuse this contemptuous action with the statement that "The July 31, 2009 Memorandum of Law is therefore being re-filed in response to the August 18, 2009 ["Me Too"] Motion by Defendant Mason." Id. In the same footnote, she argued that the "Court erred in striking" the memorandum, but did not identify what matters or controlling decisions she believed the Court had overlooked. See Id. at fn. 1.

On September 16, 2009, City defendants filed their opposition to plaintiff's "Cross-Motion for Miscellaneous Relief." See Declaration of Larry R. Martinez, filed September 16, 2009 ("Martinez 9/16/09 Dec."), Docket Entry 107; Memorandum of Law in Opposition, Docket Entry 106.

City defendants also sought sanctions in the form of reasonable attorney's fees against plaintiff's counsel Joy Hochstadt based on her contemptuous and vexatious behavior

which has needlessly multiplied the proceedings in this case. See generally Martinez 9/16/09

Decl..

Decisions on City defendants' motion to dismiss and for sanctions remain

pending.

**G.    Ms. Hochstadt Files the Instant Unauthorized "Motion For Miscellaneous Relief Related to Spoliation and Retaliation"**

On November 9, 2009, in violation of the Court's pre-motion conference

requirement, Ms. Hochstadt filed the instant motion for "miscellaneous relief" which seeks: (1)

entry of an evidence preservation order; (2) monetary and equitable sanctions based on what she

alleges is "confirmed spoliation of evidence"; (3) a preliminary injunction to prevent further

retaliation including the withholding of payroll checks during the pendency of the ongoing 3020-

a hearings. See Notice of Motion for Miscellaneous and Injunctive Relief, filed November 9,

2009 ("Pl. Notice"), Docket Entry 119; see also Memorandum of Law in Support of Plaintiff's

Motion ("Pl. Memo"), Docket Entry 120.

Attached to Ms. Hochstadt's notice of motion is a "Declaration of David Pakter in

Support of Plaintiff's Motion for Miscellaneous Relief" which attached eight exhibits including

excerpts from the transcripts of witness testimony recently given at plaintiff's 3020-a hearing

that is currently being heard before Arbitrator Douglas Bantle at the DOE Office of Legal

Services. See Declaration of David Pakter, filed November 13, 2009 ("Pakter Decl."), Docket

Entry 121.

The excerpted testimony comes from the disciplinary hearings that are currently

being held on charges that were filed based on several acts of misconduct committed by the

plaintiff during the 2006-2007 school year. See Martinez 7/1/09 Decl., Ex. U, Docket Entry 85;

see also Notice of Appendix, Section 7, Docket Entry 65, p. 643-648.

Specifically, plaintiff submitted excerpts of the testimony given by Darlene Alba-Hart, a payroll secretary at the High School of Art and Design, on September 8, 2009 and by Judith Rivera, the Deputy Director of Human Resources at the DOE's Manhattan Integrated Service Center on August 5, 2009. See Declaration, Docket Entry 121.

On November 26, 2006, prior to the commencement of this lawsuit, plaintiff was suspended from Fashion Industries High School and assigned to a reassignment center in Manhattan pending the hearing and resolution of the charges. See Letter from Philip Crowe, Human Resources Director, dated November 22, 2006, Exhibit A;[4] see also Letter from Theresa Europe, Deputy Counsel to the Chancellor, to Plaintiff, dated October 26, 2007, Martinez 7/1/09 Decl., Exhibit U, Docket Entry 85, p. 643.

Pursuant to the collective bargaining agreement ("CBA") between plaintiff's union, the United Federation of Teachers ("UFT") and the DOE, a teacher who is suspended pending the hearing and determination of charges is entitled to full compensation. See CBA, Article 21, E, Exhibit B.

However, such continued compensation during the suspension period is contingent on the suspended teacher reporting to the reassignment center and performing "duties appropriate to their regular assignments, insofar as possible." See Chancellor's Regulation C-770, "Assignment of Suspended Employees," Exhibit C.

In other words, suspended teachers are expected to report to the reassignment centers every day during their suspension period in order to get paid. Teacher attendance is

---

[4] All exhibits are annexed to the Declaration of Assistant Corporation Counsel Larry R. Martinez, dated November 30, 2009 ("Martinez Decl."), submitted in opposition to plaintiff's motion.

recorded on a DOE issued time-sheet that is used to generate the suspended teacher's bi-weekly paycheck. <u>See</u> 3020-a Testimony of Judith Rivera given on August 5, 2009 ("Rivera Tr."), Exhibit D at 2495.

Beginning in November 2007, plaintiff sporadically reported to the reassignment center. Indeed, plaintiff's failure to report to work forms the basis of one of the pending disciplinary charges levied against him. <u>See</u> Specification 7, Disciplinary Charges, Martinez 7/1/09 Decl., Exhibit U.

On or about September 2009, plaintiff stopped reporting to the reassignment center completely in violation of the terms of the CBA and Chancellor's Regulations. <u>See</u> <u>e.g.</u> Time-Sheet for September 2009, Exhibit E. As a result, DOE stopped issuing pay checks to plaintiff because of his failure to report to work at the reassignment center.

**H.    Allegations Made In The Instant "Motion For Miscellaneous Relief": Judith Rivera**

In his declaration, plaintiff alleges that several "admissions against interest" have been made at the current 3020-a hearings by Darlene Alba-Hart and Judith Rivera that "support [his] Federal Claims." <u>See</u> Pakter Decl., ¶ 6.

Specifically, plaintiff alleges that Judith Rivera made the an "admission against interest" by stating that in 2004 plaintiff was wrongfully assigned to a reassignment center in Brooklyn pending the hearing and determination of the previous 3020-a charges that he was found guilty of in August 2006. <u>See</u> Pakter Decl. at 6.

As an initial matter, Chancellor's Regulation C-770 states that "[s]uspended employees are to be assigned within their own districts or divisions. <u>See</u> Chancellor's Regulation C-770 (5), Exhibit C. Rivera testified that, in 2004, pending the resolution of the previous 3020-a charges plaintiff was temporarily assigned to a re-assignment center in Brooklyn. <u>See</u> Rivera Tr., Exhibit D, at. 2390-2399.

- 10 -

While Rivera acknowledged that, in 2004, plaintiff's Brooklyn assignment was inconsistent with the Chancellor's regulation, she also testified that, between 2003-2006, many other suspended DOE employees were reassigned to centers outside of their districts. Id. at 2391-2395. Accordingly, any attempt by the plaintiff to use this "admission" as being probative of any of his federal, state and city retaliation and discrimination claims must be dismissed in its entirety.

Furthermore, as further discussed in City defendants' motion to dismiss, any claim based on plaintiff's 2004 re-assignment is time-barred. See Def. Memo, p. 6-14, Docket Entry 86.

## I.     Allegations Made In The Instant "Motion For Miscellaneous Relief": Darlene Alba-Hart

Plaintiff alleges that payroll secretary Darlene Alba-Hart made the following "admissions against interest": (a) plaintiff's current payroll status is "leave with pay" which means that he does not have to "go to school or the reassignment center" in order to get paid; (b) defendant John Lachky lied at plaintiff's 2005-3020-a hearing "about the documents that supposedly proved that [he] was late [to school during the 2003-2005 school years]"; and (c) defendant Harold Mason "shredded evidence before he left Defendant NYC DOE's employ." Id. ¶ 6 (b); see also 3020-a Testimony of Darlene Alba-Hart given on September 8, 2009 ("Hart Tr."), Exhibit F.

First, plaintiff's reliance on Hart's testimony for the proposition that his status as "leave with pay" does not require him report to the reassignment center in order to get paid is baseless because the testimony cited by the plaintiff does not support such a conclusion. See Pakter Decl., Exhibit 3; see also generally Hart Tr., Exhibit G.  Specifically, a complete review of the transcript of Hart's testimony reveals that she never testified that it was "her understanding

and opinion that [plaintiff does not] have to go to school or the reassignment center." See Hart Tr., Exhibit G.   If anything, Hart's testimony simply supports the conclusion that as a clerical matter, she no longer "wait[s] for time-sheets" from the plaintiff because she believed he was on "some type of leave." See Pakter Decl., Exhibit 3. Accordingly, plaintiff's claim must be dismissed.

Furthermore, plaintiff's claim that he is entitled to a pay check even though he is not reporting to work is belied by: (a) the October 26, 2007 letter from the DOE which explicitly ordered him to report to a Manhattan reassignment center until "the hearing and determination of the charges preferred against [him]"; (b) the explicit terms of the CBA; and (c) Chancellor's regulation C-770 which states that suspended individuals are required to report to the reassignment center and perform "duties appropriate to their regular assignments, insofar as possible." See Chancellor's Regulation C-770, Exhibit C.  Accordingly, plaintiff's claim that he should continue to get paid despite his refusal to report to work is a matter that should be decided by an arbitrator in the contractually mandated arbitration proceeding, not by this court..

Second, plaintiff's allegation that Hart admitted that defendant John Lachky lied at plaintiff's 2005-3020-a hearing "about the documents that supposedly proved that [he] was late [to school during the 2003-2005 school years]" is another factual issue that should be decided by the arbitrator in the current 3020-a proceeding pending against plaintiff, not by this Court.

In April 2005, disciplinary charges raising eleven (11) counts of misconduct were issued to the plaintiff pursuant to N.Y. Education Law § 3020-a charging him with excessive lateness, absences and insubordination. See Disciplinary Charges, dated April 4, 2005, Martinez 7/1/09 Decl., Exhibit N. Hearings on those charges were conducted between April 2005 and

August 2006. Sss decision of NYSED Hearing Officer Martin F. Scheinman, dated August 31,

2006, Exhibit G.

Two of the eleven counts charged plaintiff with excessive latenesses during the

2003-2005 school years. Id. At the 2005 hearings, John Lachky the former Assistant Principal at

Art & Design High School testified regarding the documents that evidenced plaintiff's many

latenesses. Id. Plaintiff was ultimately found guilty of excessive latenesses. Id. at 30-31.

In making the allegation that Lachky "lied" at plaintiff's 2005-3020-a hearing

plaintiff insinuates that the 2005 decision that found him guilty of the charges was somehow

tainted. However, plaintiff ignores the specific findings of the arbitrator that he was found guilty

of the charges in large part because he admitted that he had been excessively late. Id. at 30-31. In

finding plaintiff guilty of excessive lateness, the Arbitrator observed that:

> [Plaintiff]. . . displayed a complete disregard for the importance of reporting to work on time**. As [plaintiff] testified to at Transcript 394-395, he viewed his latenesses as "technical" latenesses. When I inquired as to the meaning of a technical lateness, [plaintiff] indicated he may have reported [to school] after the required starting time but he "wasn't missing instruction."** The fact remains [plaintiff] is required to be at his building at a particular time. The fact he is not missing instruction is immaterial. He reported after the time he was required to appear. Thus, he was inappropriately late.

Id. (emphasis added).

Finally, plaintiff's allegation that Hart testified that defendant Harold Mason

"shredded evidence before he left Defendant NYC DOE's employ" is meritless. Indeed, plaintiff

stakes his entire spoliation claim on inadmissible evidence. Specifically, the only evidence that

plaintiff's offers in support of his claim is a hearsay statement made by an unidentified "NYC

DOE employee" buried in a footnote of the Pakter Declaration which states:

- 13 -

> In a telephone call with the Arbitrator Bantle related to his inquiry about my status and where my checks, Defendant NYC DOE employee spontaneously stated that there was a great deal of paper shredding going on, especially when Defendant Mason was leaving the school.

See Pakter Decl., n 6.

Contrary to plaintiff's assertion, this footnote does not "confirm" that any spoliation of evidence relating to plaintiff's "Federal Case" has occurred and certainly does not prove that defendant Harold Mason "shredded evidence before he left Defendant NYC DOE's employ." Ultimately, because plaintiff's claims regarding spoliation are supported by nothing more than an inadmissible hearsay statement, plaintiff's claims regarding "confirmed instances of spoliation" must be dismissed.

## **ARGUMENT**

### **POINT I**

#### **PLAINTIFF'S MOTION FOR MISCELLANEOUS RELIEF IS PROCEDURALLY DEFECTIVE.**

Plaintiff's motion is procedurally defective as no request for a pre–motion conference has been made. This Court's Individual Rule II, B, 1 sets forth the requirement for pre-motion conferences in all civil cases with the exception of discovery motions whose procedures are set forth in Local Civil Rule 37.2. Local Civil Rule 37.2 clearly states:

> No motion under Rule[]. . .37. . . shall be heard unless counsel for the moving party has first requested an informal conference with the court **and** such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference.

<u>See</u> Loc. Civ. R. 37.2 (emphasis added).  Accordingly, the Rule not only requires that a moving party request a conference to address a *discovery dispute,* but also, that the moving party refrain from filing a motion until the conference request is denied or held**.**

In this case, plaintiff's motion is brought, in part, pursuant to this Court's Individual Practice Rule II, B, 1 and Local Civil Rule 37.2.  However, as has been the case with every motion that has been filed by plaintiff's counsel since the inception of this case, no pre-motion conference has been requested prior to the filing of this motion. Nor should one have been convened  as Local Civil Rule 37.2 contemplates that a conference will be convened to address *discovery disputes*.  On August 27, 2009, the Court issued an Order staying all discovery "until after the disposition of any motion to dismiss." <u>See</u> Order, dated August 27, 2009, Docket Entry 102.  As discovery in this case has not begun, no discovery dispute can be deemed to exist. It may be that plaintiff stakes his claim on the existence of a discovery dispute on his bald allegation of "confirmed spoliation." <u>See</u> Hochstadt Letter, p. 2.  However, as discussed in Point II below, plaintiff's claim is meritless as he has yet to come forward with any evidence even remotely substantiating his conclusory allegations of "confirmed and/or admitted" spoliation. Accordingly, plaintiff's motion must be denied in its entirety.

<b><u>POINT II</u></b>

<b>PLAINTIFF'S    CLAIMS    OF    SPOLIATION<br><u>ARE PATENTLY WITHOUT MERIT.</u></b>

A party seeking sanctions for alleged spoliation of evidence must demonstrate: (1) that its adversary had control of the evidence and a duty to preserve it at the time it was lost or destroyed; (2) that the adversary had a "culpable state of mind" when the evidence was lost or destroyed; and (3) that the lost or destroyed evidence was "relevant" to the moving party's claims such that a reasonable trier of fact could find that it would support a claim. See <u>Zubulake</u>

v. UBS Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004); see also  Farella v. City of New York, No. 05 Cv. 5711, 2007 U.S. Dist LEXIS 7420 at *5-12 (S.D.N.Y.). Therefore, for sanctions to be appropriate it is a necessary condition that the moving party identify the existence of relevant evidence and establish that it was destroyed. See Farella, 2007 U.S. Dist LEXIS 7420 *6.

In this case, plaintiff moves for injunctive relief based on "confirmed and/or admitted spoliation" of evidence. See generally Pakter Notice of Motion, Docket Entry 119. Specifically, plaintiff alleges that "[d]efendant Harold Mason shredded evidence before he left Defendant NYC DOE's employ. See Pakter Decl., ¶ 6(g). In support of his allegation, plaintiff presents a hearsay statement buried in a footnoted which alleges that an unidentified "NYC DOE employee spontaneously stated that there was a great deal of paper shredding going on, especially when Defendant Mason was leaving the school." Id. fn.6. [5]  Plaintiff's motion for injunctive relief must be denied because he has failed to establish all the conditions necessary to establish his claim of spoliation of evidence.

First, plaintiff has failed to specifically identify the "evidence" that he claims has been destroyed.  All that plaintiff alleges is that "[d]efendant Harold Mason shredded evidence." See Pakter Decl. ¶ 6(g). Without its identification, it is impossible to determine whether the evidence existed and that it has been destroyed. See Farella, 2007 U.S. Dist LEXIS 7420 *6, quoting Riddle v. Liz Claiborne, Inc, 2003 U.S. Dist. LEXIS 14378, *2 (S.D.N.Y. Aug. 19, 2003) ("The principal problem with plaintiff's [argument] is that plaintiff offers no evidence

_____

[5] The identity of the declarant is unclear. In footnote 6, plaintiff claims that the declarant is an unknown "NYC DOE employee" but later claims that the declarant is Darlene Alba-Hart, a payroll secretary at Art & Design High School who recently testified at plaintiff's 3020-a hearing. Id. ¶ "12." Regardless of the identity of the declarant, for the reasons set forth herein,

whatsoever that the allegedly missing documents ever existed and, thus, she has failed to offer any evidence suggesting that they were destroyed…"). Accordingly, because plaintiff has failed to establish the existence of the allegedly destroyed evidence, plaintiff's motion must be denied.

Second, assuming <u>arguendo</u>, that plaintiff identified the evidence in question, plaintiff certainly has not established that any evidence in this case has been destroyed. All that plaintiff presents to support his spoliation claim is a hearsay statement from an unidentified "NYC DOE employee" that he buries in a footnote in his declaration which alleges that during a telephone call on an unknown date, an unidentified NYC DOE employee "spontaneously stated that there was a great deal of paper shredding going on, especially when Defendant Mason was leaving the school." <u>Id.</u>. <u>See</u> Pakter Decl. n 6.

Contrary to plaintiff's belief, this statement does not establish: (1) the identity of any relevant evidence in this case; (2) that this evidence has been destroyed; and (3) that the evidence was destroyed by Harold Mason. Assuming the statement was made, all that it establishes is that unknown documents, which may or may not have pertained to the plaintiff, were at an unknown time, destroyed by an unknown individual.

Furthermore, the statement is inadmissible hearsay. Plaintiff offers this statement for its truth, namely that Mason destroyed evidence relevant to plaintiff's claims. However, it is well settled that an out-of court statement offered in evidence to prove the truth of the matter asserted therein is inadmissible hearsay. <u>See</u> Fed. R. Evid. 801(c) and 802. Accordingly, the statement cannot be used to establish the existence of spoliation of evidence in this case.

Nor, as plaintiff seems to suggest, is the statement admissible under "statement against interest" exception to the hearsay rule. <u>See</u> <u>generally</u>, Pl. Memo, p.1; <u>see</u> <u>also</u> Fed. R.

the statement is inadmissible to establish that any spoliation of evidence has occurred in this

Evid 804(b)(3) In order to fall under the "statement against interest" exception the statement must be "self-inculpatory." See Sept. 11 Litig., 621 F.Supp 2d 131, 161 (S.D.N.Y. 2009)("Only self-inculpatory statement are admissible under Fed. R. Evid 804(b)(3)."). Assuming that the declarant of the statement was Darlene Alba-Hart, the statement does not establish that she destroyed any evidence in this case. Indeed, in order for the statement to be admissible against defendant Mason under the "statement against interest" hearsay exception, the declarant must have been Harold Mason himself. Plaintiff does not allege that Mason made the statement. Accordingly, the statement does not fall under the "statement against interest" exception to the hearsay rule and must be precluded.

Finally, in a declaration previously filed on September 11, 2009, plaintiff's counsel made a similar bald allegation that the 3020-a Hearing Arbitrator issued an order finding that there had been spoliation of evidence in this case. See "Notice of Declaration of Joy Hochstadt Esq. in Support of Plaintiff's Notice of Cross Motion re: Defendant Shuster" dated September 11, 2009 ("Hochstadt Decl."), Docket Entry 112, ¶ "23"-"27." However, when called to task by the defendants to produce the order of spoliation, Ms. Hochstadt tellingly never responded as no such order was issued or finding made by Arbitrator Bantle. See Letter from Assistant Corporation Counsel Larry R. Martinez to the Court, dated October 5, 2009. Accordingly, because he has failed to establish that any evidence has been destroyed in this case, plaintiff's motion must be denied in its entirety.

## POINT III

### PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF MUST BE DENIED.

---

case.

A preliminary injunction is an extraordinary remedy not to be routinely granted. <u>Patton v. Dole</u>, 806 F.2d 24, 28 (2d Cir. 1986). The general standard for granting such relief in this circuit is well settled: to justify the issuance of an injunction, the plaintiff must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." <u>Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.</u>, 596 F.2d 70, 72 (2d Cir. 1979).

**A.    No Threat Of Irreparable Harm.**

In this case, plaintiff alleges that a threat of irreparable harm exists to the extent: (1) he is being retaliated against for exercising his First Amendment rights to free speech; (2) there have been "confirmed" instances of spoliation of evidence; and (3) he has been subjected to libel, slander and defamation by unknown individuals by being referred to in internal DOE documents by a code that supposedly means "pariah." <u>See</u> Pakter Decl. ¶¶ 27 – 39.  Plaintiff falls woefully short from establishing the existence of any irreparable harm in this case.

**(a) No First Amendment Retaliation.**

Plaintiff's reliance on <u>Tunick v. Safir</u> for the suggestion that the mere "allegation of a First Amendment violation satisfies the irreparable injury requirement" is misplaced. <u>See</u> Hochsadt Ltr., at 6; <u>see</u> <u>also</u> <u>Tunick v. Safir</u>, 209 F.3d 67 (2d Cir. 2000).

In <u>Tunick</u>, plaintiff, a photographer, sought an injunction prohibiting the City of New York from interfering with his proposed photo shoot of 75 to 100 nude models on a public street. <u>Tunick</u>, 209 F3d at 68-70. Plaintiff had sought a permit from the City to photograph the models which was denied. <u>Id.</u>  Alleging that he had been arrested for arranging nude photo shoots in the past and that the City was likely to interfere with the planned photo shoot, he claimed that his rights under the First Amendment were threatened. <u>Id.</u> Specifically, he asserted

that his photo shoot was a form of artistic expression that was constitutionally protected. Id. In affirming the grant of the preliminary injunction, the Second Circuit agreed with the District Court that the photo shoots were a form of constitutionally protected speech and the threat of police involvement and arrests at the planned photo shoot amounted to a threat to plaintiff's First Amendment rights. Id. at 70.

In this case, plaintiff's allegation regarding perceived violations of his First Amendment rights are insufficient to establish the irreparable injury requirement. Specifically, unlike the plaintiff in Tunick, plaintiff here has not clearly established that his speech was constitutionally protected. Indeed, plaintiff altogether fails to provide this Court with any proof that he engaged in any protected speech. All that plaintiff provides is a bald allegation that defendants have retaliated against him because:

> . . . (ii) [plaintiff] continue[s] to exercise [his] 1st Amendment rights and speak out on issues of public importance related to the NYC public school system and what [defendants] have been and are doing to hurt students and pedagogues; (iii) [plaintiff] continue[s] to exercise [his] 1st Amendment rights to speak out against the use of the Rubber Room. . .

See Pakter Decl., ¶ 9.[6]

Presumably, this conclusory allegation relates to the only First Amendment claim asserted in the Second Amended Complaint: that plaintiff is being retaliated against based on a letter that he wrote to the Chancellor of the DOE over six years ago. Specifically, on October 2, 2003, plaintiff wrote a letter to Chancellor Klein allegedly "blowing the whistle" on what he believed was intentional race discrimination against the students at Art & Design High School ("A&D") during the 2003-2004 school year. See Letter dated Oct. 2, 2003, Martinez 7/1/09

---

[6] Plaintiff's retaliation claims based on alleged speech concerning pedagogues and the "Rubber Room" are not asserted in the Second Amended Complaint and are raised here for the first time.

Decl. Docket Entry 86, Ex.B.  In this letter, plaintiff alleged that the students of A&D were discriminated against on the basis of their race when the school administration ended the school's music program and "prevented … minority children from studying any language other than Spanish." Id.

However, this letter is not evidence of constitutionally protected speech because his speech was made pursuant to plaintiff's duties as a teacher at A&D. See, e.g. Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1204 (10th Cir. 2007) (finding, inter alia, that the speech of the plaintiffs, who were teachers at the defendant school, which related to the regulation of student behavior, the curriculum and pedagogy, and to the need for certain materials, were made pursuant to their official duties and, thus, could be freely regulated); Williams v. Dallas Independent School Dist., 480 F.3d 689, 694 (5th Cir. 2007) (per curiam) (finding that the statements made by the plaintiff, the athletic director at the defendant school, in his memoranda focused on his daily operations and, thus, were made in the course of performing his employment and were not protected by the First Amendment); Battle v. Board of Regents for Georgia, 468 F.3d 755, 761 (11th Cir. 2006) (finding that the plaintiff's retaliation claim failed because she, in her capacity as an employee in the defendant's Office of Financial Aid and Veterans Affairs, had a clear employment duty to ensure the accuracy and completeness of student files and to report any mismanagement or fraud in the student financial aid files). Accordingly, to the extent plaintiff's First Amendment retaliation claims are premised upon his communications to the chancellor about A&D's music and linguistic programs, those claims must be dismissed.

Nevertheless, assuming, arguendo, that plaintiff has pled facts establishing that he engaged in constitutionally protected speech on October 3, 2003, plaintiff's claims must still be

dismissed.  This is because, as discussed on City defendants' motion to dismiss, plaintiff has failed to establish a causal connection between the speech and any subsequent adverse employment action "so that it can be said that the speech was a motivating factor in the determination." See Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004); see also Def. Memo, at 15-19, Docket Entry 86.  Accordingly, because plaintiff has failed to establish that he engaged in constitutionally protected speech and a causal connection between the speech and an adverse employment action, plaintiff cannot establish both: (1) a threat of irreparable harm and; (2) a likelihood of success on the merits on his First Amendment retaliation claim.  Therefore, plaintiff's motion must be denied in its entirety.

### (b) No Spoliation Of Evidence.

For the reasons set forth in Point II above, plaintiff cannot establish a threat of irreparable harm based on his bald allegations of spoliation of evidence. Therefore, plaintiff's motion must be denied in its entirety.

### (c) No Libel, Slander, and Defamation.

In a last ditch attempt to establish the existence of a threat of irreparable harm, plaintiff alleges that he is being libeled, slandered and defamed by unknown individuals in that internal DOE documents relating to the plaintiff are being marked with a "99 pre-fix code [which he] was told…is the code for pariahs and *personae non grata*." See Pakter Decl., ¶ 8(d). As an initial matter, plaintiff's claim does not establish a threat of irreparable harm based on this allegation as he has failed to establish that the DOE maintains a "pre-fix code" to distinguish between its DOE employees. Moreover, he has failed to establish that a number "99" on any DOE document necessarily means that the individual named in the document is considered a "pariah."  Indeed, such a suggestion is preposterous and resolves itself to nothing more than a wild attempt to get the Court's attention to plaintiff's meritless claims.  Furthermore, similar to

the statement relied on for spoliation of evidence claim, the "evidence" proffered by the plaintiff to support his defamation claim is inadmissible hearsay. See Fed. R. Evid 802.

Finally, assuming arguendo, that the DOE maintained any such pre-fix code, plaintiff has failed to show how the use of the code has caused him an injury for which a monetary award would not adequately compensate him. Studebaker Corp. v. Gittlin, 360 F.2d 692, 698 (2d Cir. 1966); Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214, 216 (2d Cir. 1948). Indeed, it is well settled that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (U.S. 1974). In this case, assuming plaintiff could prove the existence of a defamatory "pre-fix" code, plaintiff has not established, let alone explained, why this "code" cannot be corrected at a later date, and why monetary compensatory damages would not suffice to repair any alleged harm caused by the use of the code. Accordingly, because plaintiff has failed to establish a threat of irreparable harm, plaintiff's motion must be denied in its entirety.

**B.    No Likelihood Of Success On The Merits.**

Like the rest of plaintiff's claims, plaintiff's  arguments that "Defendant Rivera and Defendant NYC DOE employee witness Darlene Alba-Hart made admissions that show the probability and/or likelihood that Plaintiff Pakter will succeed on the merits of his claims," fall short of their mark and fail to establish a likelihood of success on the merits. See Pl. Memo, at 3,

Defendant Judith Rivera's  alleged "admission against interest" is nothing more that an acknowledgement  that in 2004 plaintiff was assigned to the wrong reassignment center in Brooklyn pending the hearing and determination of previous 3020-a charges that he was found guilty of in August 2006. See Pakter Decl., ¶  6.While Rivera testified that plaintiff's Brooklyn assignment was  inconsistent with the Chancellor's Regulation C-770 which requires in district

assignments, she also testified that, between 2003-2006, many other suspended DOE employees were reassigned to centers outside of their districts. Id. at 2391-2395. Accordingly, this alleged "admission" is not probative of any of any discriminatory animus directed at plaintiff because of any protected status that is at issue in any of the federal, state and city rlaw claims asserted in the Second Amended Complaint. Moreover, for the reasons set forth in City defendants' motion to dismiss, any claim based on plaintiff's 2004 Brooklyn assignment to a center in the wrong district is barred by all applicable statute of limitations. See Def. Memo, Docket Entry 86, p. 6-9.

Plaintiff's arguments about Darlene Alba-Hart alleged "admissions against interest" all go to the merits of claims that are being or should be addressed in a contractually mandated arbitration that is currently pending before Arbitrator Bantle, not claims asserted in the Second Amended Complaint. Those arguments are: (a) plaintiff's current payroll status is "leave with pay" which means that he does not have to "go to school or the reassignment center" in order to get paid; (b) defendant John Lachky lied at plaintiff's 2005-3020-a hearing "about the documents that supposedly proved that [he] was late [to school during the 2003-2005 school years]"; and (c) defendant Harold Mason "shredded evidence before he left Defendant NYC DOE's employ." Id. ¶ 6 (b); see also 3020-a Testimony of Darlene Alba-Hart given on September 8, 2009 ("Hart Tr.") Exhibit F. In the event the Court concludes that these factual issues have some bearing on the claims asserted in this action, injunctive relief should be denied as plaintiff can not establish a likelihood of success on the merits.

Plaintiff's claim that he is entitled to a pay check even though he is not reporting to work is belied by: (a) the October 26, 2007 letter from the DOE which explicitly ordered him to report to a Manhattan reassignment center until "the hearing and determination of the charges preferred against [him.]"; (b) the explicit terms of the CBA; and (c) Chancellor's regulation C-

770 which states that suspended individuals are <u>required</u> to report to the reassignment center and perform "duties appropriate to their regular assignments, insofar as possible." <u>See</u> Chancellor's Regulation C-770, Exhibit C. Accordingly, plaintiff's suggestion that he should continue to get paid despite his refusal to report to work must be dismissed.

Moreover, a review of Hart's complete hearing testimony reveals that she never testified that it was "her understanding and opinion that [plaintiff does not] have to go to school or the reassignment center." <u>Id.</u> If anything, Hart's testimony simply supports the conclusion that she no longer "wait[s] for time-sheets" from the plaintiff because she was told that he was on "some type of leave." <u>See</u> Pakter Decl., Exhibit 3.

Furthermore, plaintiff's contention that Hart admitted that defendant John Lachky lied at plaintiff's 2005-3020-a hearing "about the documents that supposedly proved that [he] was late [to school during the 2003-2005 school years]" is nothing more than his personal assessment of evidence that led to a finding of guilty of excessive absences in the 2005 3020-a hearing. <u>See</u> decision of NYSED Hearing Officer Martin F. Scheinman, dated August 31, 2006, Exhibit G at 30-31.  .In making the allegation that Lachky "lied" at plaintiff's 2005-3020-a hearing, plaintiff insinuates that the 2005 decision was somehow tainted.  However, the arbitrator's decision makes clear that he found plaintiff guilty of excessive lateness in large part because plaintiff admitted that he had been excessively late! <u>Id.</u> at 30-31.

> [Plaintiff]. . . displayed a complete disregard for the importance of reporting to work on time**. As [plaintiff] testified to at Transcript 394-395, he viewed his latenesses as "technical" latenesses. When I inquired as to the meaning of a technical lateness, [plaintiff] indicated he may have reported [to school] after the required starting time but he "wasn't missing instruction."** The fact remains [plaintiff] is required to be at his building at a particular time. The fact he is not

> missing instruction is immaterial. He reported after the time he was required to appear. Thus, he was inappropriately late.

Id. (emphasis added).

Finally, for the reasons set forth herein and in City defendants' memorandum of law in support of their Motion to Dismiss the Second Amended Complaint, plaintiff fails to establish a likelihood of success on any of his remaining claims. See generally Def. Memo, Docket Entry 86. Accordingly, because plaintiff has failed to establish a threat of irreparable harm and a likelihood of success on the merits, plaintiff's motion for a preliminary injunction must be denied in its entirety.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein and in City defendants' Memorandum of Law in Opposition to the Motion for Miscellaneous Relief, City Defendants respectfully request that plaintiff's motion for Miscellaneous Relief be denied, defendants motion to dismiss the Second Amended Complaint be granted, and that the City defendants be awarded costs, fees, and disbursements, together with such other and further relief as this Court may deem just and proper.

Dated:          New York, New York
                November 30, 2009

                                        **MICHAEL A. CARDOZO**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney of for Respondents
                                        100 Church Street, Room 2-314
                                        New York, New York 10007-2601
                                        (212) 227-3153
                                        lmartine@law.nyc.gov


                          By:    _____/s/_____
                                        Larry R. Martinez,
                                        Assistant Corporation Counsel




**KATHLEEN M. COMFREY,**
**LARRY R. MARTINEZ**
        *Of Counsel*