UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
DAVID PAKTER,

                    Plaintiff,

          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
f/k/a BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK;
and JOEL I. KLEIN, as Chancellor of the
CITY SCHOOL DISTRICT OF THE CITY OF NEW
YORK, et al.

                    Defendants.
----------------------------------------X
DEBORAH A. BATTS, United States District Judge.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 3-22-10

08 Civ. 7673 (DAB)
MEMORANDUM & ORDER

     Plaintiff David Pakter, a New York City high school teacher,
brings suit against the New York City Department of Education,
Chancellor Joel Klein, and other Individual Defendants employed
by or consulting for the New York City Department of Education.
Plaintiff alleges ten causes of action under federal and state
law arising from alleged acts of discrimination and retaliation
against Plaintiff.

     Defendants now move to dismiss the Second Amended Complaint
under Rule 12(b)(6).  Plaintiff cross-moves to strike Defendants'
Memorandum of Law and for "Miscellaneous Relief."  For the
following reasons, Defendants' Motions to Dismiss are GRANTED.
Further, Plaintiff's Motions are DENIED in their entirety.
Defendants' Motion for Costs and Attorneys' Fees is GRANTED.

## I. BACKGROUND

A.   The Parties

Plaintiff, David Pakter, is a resident of New York, New York.  (SAC ¶ 4a.).[1]  Defendant New York City Department of Education (hereinafter "NYDOE") is the governing body of the School District of the City of New York under the laws of the State of New York, and employed Plaintiff during all relevant time periods.  (SAC ¶ 1.)  Defendant Joel I. Klein is the Chancellor of NYDOE and its chief executive officer. (SAC ¶ 2.) Defendants Michael LaForgia and Alexis Penzell are the Local Instructional Superintendents for Region 9, to which the High School of Art and Design (hereinafter "HSA&D") and Fashion Industries High School (hereinafter "FIHS") are assigned. (SAC ¶¶ 3-4.)  Defendant Judith Rivera is the Deputy Human Resources Director for the NYDOE in Manhattan. (SAC ¶ 5.)

The following Defendants held their positions at all relevant times to the Second Amended Complaint.  Defendant

---

[1] The Second Amended Complaint's begins with paragraphs 1 through 4, which assert the bases for jurisdiction and venue, as well as Plaintiff's residency and employment.  These paragraphs are followed by a second paragraph 1, describing Defendant Department of Education, after which the paragraphs continue in ascending order.   To avoid confusion, the Court will refer to the first four paragraphs as paragraphs 1a through 4a and the remainder of paragraphs in the Second Amended Complaint as paragraphs 1, 2, 3, etc.

Madeline Appell was Principal of HSA&D.  (SAC ¶ 6.)  Defendants
John Lachky, Mary Ann Geist-Deninno, and Harold Mason were
Assistant Principals of HSA&D.  (SAC ¶¶ 8-10.)  Defendants Hilda
Nieto and Giovanni Raschilla were Principal and Assistant
Principal, respectively, of FIHS.  (SAC ¶¶ 7, 11.)  Defendant
Sonia Stuart was an employee of NYDOE.  (SAC ¶ 12.)  Defendants
Audrey Jacobson, M.D. and Eliane Meyer, M.D., served as Medical
Director and Deputy Medical Director, respectively, of the NYDOE.
(SAC ¶¶ 13-14.)  Defendants Ann Garner, M.D., and Richard
Schuster, Ph.D. served as staff psychiatrist and a consulting
psychologist, respectively, for NYDOE.  (SAC ¶¶ 15-16.)  Each of
these individual Defendants is sued both in his or her capacity
as an employee and agent of the NYDOE as well as in his or her
individual capacity.  (SAC ¶ 17.)


B.    Events Prior to and During 2003.

      Plaintiff has been a licensed art teacher with NYDOE since
1968. (SAC ¶¶ 18-21.)  In 1978, Plaintiff became a commercial art
teacher at HSA&D in Manhattan, where he taught for the next 25
years.  (SAC ¶¶ 22-23.)  In 2003, Plaintiff determined that
changes to the HSA&D curriculum, including the removal of music
classes, were creating disparate educational opportunities for
minority children and that $75,000.00 that had been earmarked for

the music program was being diverted elsewhere.  (SAC ¶¶ 27-29.)

     In October of 2003 Plaintiff reported these facts to the
Special Commissioner of Investigation ("SCI") and wrote to
Chancellor Klein to inform him of disparate treatment in the New
York City schools based upon race. (SAC ¶¶ 30-31.)  One week
after he wrote to Defendant Klein, Defendant Superintendent
LaGorgia came to HSA&D and met with Defendants Appell, Lachky,
and Geist-Deninno to discuss Plaintiff, at the conclusion of
which Defendant Appell directed Defendant Geist-Deninno to visit
Pakter's classroom and rate his lesson as "Unsatisfactory."  (SAC
¶¶ 32-34.)  Defendant Geist-Deninno was unable to complete this
directive because Plaintiff had installed a video camera in his
classroom to record his lessons.  (SAC ¶ 35.)  Further, Defendant
Mason was directed to and did file repeated letters to
Plaintiff's file, accusing Plaintiff of insubordination,
incompetence and other offenses that Defendant Mason claimed
required discipline through a 3020-a administrative process. (SAC
¶ 36.)  Plaintiff was also taunted and provoked by Defendant
Mason and was accused by Defendant Geist-Deninno of improperly
taking time at the end of his class to engage in French
instruction.  (SAC ¶ 38.)  Defendants' alleged harassment,
ridicule, and derogatory remarks in front of students and peers
continued throughout 2003 and additional disciplinary letters

4

were placed in Plaintiff's file.  (SAC ¶¶ 39-40.)

C.   Events During 2004.

During April of 2004, Defendant Appell directed and caused Assistant Principals to make false charges against Plaintiff, place disciplinary letters in his file, preclude Plaintiff's nominees from being invited as Guest Speakers on "Career Day," and assign his classroom to other classes in a way that would lead valuable property in the room to be destroyed.  (SAC ¶¶ 41-43, 45.)  In Spring of 2004, Plaintiff informed investigators from the Inspector General's Office, at the request of the Office of the SCI, that the school was filing fraudulent reports and spending money on unnecessary window repairs.  (SAC ¶ 47.) Immediately following this meeting with investigators, Defendant Appell caused or directed that Plaintiff's Senior Medical Art Class be transferred to a younger teacher for the following year. (SAC ¶¶ 44, 48.)   Further, in June of 2004, Defendant Appell placed Plaintiff on the late "Time Schedule" without his consent. (SAC ¶ 46.)  For the 2003-2004 school year, Plaintiff was rated "Unsatisfactory" for the first time in twenty years with HSA&D. (SAC ¶ 49.)

Plaintiff then received a fellow teacher's permission to videotape one of her classes in order to prove reports of

5

discrimination and the false use of federal funding. (SAC ¶¶ 51-53.)  On September 22, 2004 when Plaintiff brought the videotape, which he considers evidence of discrimination and fraudulent conduct, to the Defendants' attention, he was accused of insubordination for refusing to turn over the tape.  (SAC ¶¶ 54-56, 59.)  On September 23, 2004, Defendant Appell called an emergency faculty meeting, announced her immediate resignation, and took steps to turn the school over to Defendant Lachky.  (SAC ¶¶ 57-58.)  On September 24, 2004, Defendant Rivera directed that Plaintiff be reassigned to a "reassignment center," or "rubber room" where teachers with criminal and administrative disciplinary charges await decisions on their continued employment.  (SAC ¶¶ 61-63.)  Then, on September 28, 2004, Defendant Rivera provided Plaintiff with a written directive informing him that he was being transferred from the Manhattan reassignment center to the reassignment center in Brooklyn, in violation of Chancellor's Regulations. (SAC ¶¶ 65-68.)  At that time, Plaintiff was told by a high ranking union official that if he turned over all copies of the videotape he would be returned to his regular teaching assignment, all charges of misconduct against him would be withdrawn, and he would be permitted to draw up a "wish list" of the educational deficits that he believed the minority students were suffering.  (SAC ¶ 70.)  Plaintiff refused

to turn over all copies of the videotape and was subsequently told that disciplinary charges of insubordination would be made against him. (SAC ¶¶ 71.) Further, following his removal from HSA&D, Defendant Geist-Deninno broke into Plaintiff's metal file closets and examined, stole, and destroyed Plaintiff's personal and professional materials and property. (SAC ¶ 69.)

D.   Events During 2005.

In January of 2005, Plaintiff was investigated by Defendant Geist-Deninno for pornographic images that had been downloaded onto a student computer, but was ultimately never formally charged with responsibility for the pornography. (SAC ¶¶ 72-75.) Additionally, for the 2004-2005 school year, Plaintiff was again rated "Unsatisfactory" based upon his record of attendance at the reassignment center. (SAC ¶ 101.) On June 21, 2005, Plaintiff was informed of new charges of insubordination, downloading pornography, as well as allegations of lateness and mental illness. (SAC ¶¶ 80-82.)

On July 14, 2005, Plaintiff was directed, at the behest of Defendants Lachky and Penzell and pursuant to orders issued by Defendants Garner and Meyer, to be medically and psychologically evaluated by Defendant Jacobson to determine if he was "unfit for duty." (SAC ¶¶ 80, 83-88.) After completing various

7

psychological examinations and tests, Defendant Garner, staff psychologist at NYDOE, found Plaintiff to be "fidgety," "grandiose," hypo manic," "delusional," and "paranoid." (SAC ¶¶ 90-94.)   In August of 2005, Defendants informed Plaintiff that he had been found "unfit for duty."   (SAC ¶ 95.)   In response to Plaintiff's challenge to the medical testing and findings, as well as a demand for formal arbitration, Plaintiff was removed from the payroll and kept off salary.   (SAC ¶¶ 96-98.)

E.   Events During 2006.

In January of 2006, a Medical Arbitrator found that Defendants' finding of Plaintiff's unfitness for duty was not supported by the evidence. (SAC ¶ 99.)   However, Plaintiff remained off of the payroll for an additional six months, for a total of twelve months, until a written finding was issued.   (SAC ¶¶ 99-100.)

In 2006, Plaintiff was assigned to FIHS in Manhattan, where (1) at the direction of Defendant Nieto he was "shadowed" by Defendant Raschilla; (2) accused by Defendant Nieto of various improprieties; and (3) pulled out of class to attend "disciplinary meetings." (SAC ¶¶ 103-108.)   Furthermore, from September to December of 2006, Defendants Nieto and Raschilla demanded that Plaintiff be removed from FIHS and accused him of

8

additional improprieties such as selling his artwork and fashion watches, to students and faculty.  (SAC ¶¶ 110-112.)

F.    Events From 2007 to the Present

Immediately prior to the 2007-2008 school year, Defendant Nieto presented Plaintiff with additional 3020-a charges, including: (1) promoting his family's watch business during school hours; (2) giving watches to students and employees as gifts; (3) making references to his personal life; (4) making references to his removal from HSA&D as a "whistle blower;" (5) showing "R" rated feature films to his students; and (6) bringing plants to the school without authorization.  (SAC ¶¶ 116-120.)

On September 2, 2008, Plaintiff filed the original Complaint in this matter against the NYDOE and Chancellor Klein.  On October 21, 2008 Defendants moved to dismiss the Complaint.  On April 2, 2009, Plaintiff filed an Amended Complaint.  On May 1, 2009, the Court dismissed Plaintiff's Amended Complaint for prolixity.

On June 1, 2009 Plaintiff filed the instant Second Amended Complaint, adding the remaining Defendants and alleging causes of action for (1) retaliation under the First Amendment of the United States Constitution and 42 U.S.C. § 1983; (2) discrimination and retaliation under the Due Process Clause, the

9

Equal Protection Clause, and 42 U.S.C. § 1983; (3) discrimination, retaliation and hostile work environment under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq; (4) discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e; (5) retaliation under the False Claims Act (the "FCA"), 31 U.S.C. § 3730(h); (6) discrimination and retaliation under the New York State Human Rights Law, E.L. § 290 et seq; (7) retaliation under the New York Education Law § 3028-d; (8) discrimination and retaliation under the New York City Human Rights Law, N.Y. Admin. Code § 8-101 et seq; (9) discrimination and retaliation under §§ 8 and 11 of Article I of the New York State Constitution; and (10) slander per se, defamation, and intentional infliction of emotional distress under New York common law.

On July 1, 2009, Defendants NYDOE and Chancellor Klein filed a Motion to Dismiss the Second Amended Complaint under Rule 12(b)(6).  In response, Plaintiff filed a 12(f) Motion to Strike Defendants' Memorandum of Law.  After the Defendants filed their Reply Memorandum of Law in Support of their Motion to Dismiss, on August 2, 2009, Plaintiff filed a First Reply Memorandum of Law in Support of its Motion to Strike.

On August 10, 2009, Defendant Schuster filed a Motion to

Dismiss the Second Amended Complaint and on August 18, 2009, Defendant Harold Mason joined the Department Defendants' Motion to Dismiss. On August 27, 2009, the Court Ordered Plaintiff's August 2, 2009 First Reply Memorandum of Law Stricken from the Docket as an unauthorized sur-reply in violation of both Local and the Court's Individual Practice Rules. Subsequently, on September 1, 2009, Plaintiff filed a Cross-Motion for Miscellaneous Relief, including: (I) reconsideration of the Court's August 27, 2009 Order; (ii) consolidation of the Motions made by the various Defendants; (iii) denial of the Motions made by the various Defendants; (iv) and an Order entering default against the remaining Individual Defendants.

On September 16, 2009, Defendants filed an Amended Motion to Dismiss the Second Amended Complaint, joining the remaining Individual Defendants to the July 1, 2009 Motion. That same day Defendants responded to Plaintiff's Motion for Miscellaneous Relief and sought an Order from the Court finding that Plaintiff had violated 28 U.S.C. § 1927's prohibition against "unreasonably and vexatiously" multiplying the proceedings in any case, and should therefore be liable for costs and attorneys' fees.

## II. DISCUSSION

A.   Plaintiff's Cross-Motion to Strike

Rule 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Here, Plaintiff seeks to Strike Defendants' Memorandum of Law in Support of its Motion to Dismiss. As an initial threshold matter, a memorandum of law is not a "pleading." Additionally, Plaintiff argues that Defendants' memorandum of law should be stricken because "counsel has offered an insufficient defense and because Defendants' counsel has intentionally misrepresented certain facts and evidence . . ." (July 16, 2009 Pakter Decl., ¶ 4c.) Plaintiff's Cross-Motion is patently meritless, and indeed, frivolous. Accordingly, it is DENIED.


B.   Plaintiff's Cross-Motion to Miscellaneous Relief

Plaintiff's cross-motion for reconsideration of the Court's August 27, 2009 Order, striking Plaintiff's unauthorized sur-reply to Defendants' Motion to Dismiss because that "Memorandum of Law and supporting documents are relevant to the issues presented in this case," (Sept. 1, 2009 Hochstadt Decl., ¶ 39 n.1), is also meritless. Further, the Court is troubled that Plaintiff has apparently "re-filed" that memorandum of law in

12

response to Defendant Mason's Motion to Dismiss in direct contravention of the Court's August 27, 2009 Order.  (Sept. 1, 2009 Hochstadt Decl., ¶ 39 n.1.)

Plaintiff's request for consolidation of Defendants' Motions is also DENIED, as Plaintiff cites to no authority that would support such a request.  Plaintiff's Motion for the denial of Defendants' Motions is similarly DENIED.

Finally, Plaintiff moves the Court to enter Default against the Individual Defendants, or in the alternative, direct that the Individual Defendants file their responses to the Second Amended Complaint.  While Defendants' Counsel concedes that the City's original Notice of Motion inadvertently omitted the names of the Individual Defendants, it has since filed an Amended Notice of Motion and has filed a Notice of Appearance on behalf of the Individual Defendants.  Accordingly, Plaintiff's Motion for an Order entering Default against the Individual Defendants is DENIED.


C.   Defendants' Motions to Dismiss Under Rule 12(b)(6)

     1.   Legal Standard for a Motion to Dismiss

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007). "A claim has facial plausibility," the

Supreme Court has explained,

> when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant
> is liable for the misconduct alleged. The plausibility
> standard is not akin to a 'probability requirement,' but
> it asks for more than a sheer possibility that a
> defendant has acted unlawfully. Where a complaint pleads
> facts that are 'merely consistent with' a defendant's
> liability, it 'stops short of the line between
> possibility and plausibility of 'entitlement to relief.'

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly,

550 U.S. at 556-57). "[A] plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. at 555 (internal

quotation marks omitted). "In keeping with these principles,"

the Supreme Court has stated

> "a court considering a motion to dismiss can choose to
> begin by identifying pleadings that, because they are no
> more than conclusions, are not entitled to the assumption
> of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by
> factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement to relief."

Iqbal, 129 S.Ct. at 1950.

In ruling on a 12(b)(6) motion, a court may consider the

complaint as well as "any written instrument attached to the

complaint as an exhibit or any statements or documents

14

incorporated in it by reference." <u>Zdenek Marek v. Old Navy</u> <u>(Apparel) Inc.</u>, 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (citing <u>Yak v. Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)).

      2.    Plaintiff's Federal Claims

          a.    Statute of Limitations for Plaintiff's § 1983 (Counts One & Two) and False Claims Act (Count Five) Retaliation and Discrimination Claims.

In New York, as incorporated by federal law, a three-year statute of limitations is applicable to § 1983 actions, for which "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." <u>Pearl v. City of</u> <u>Long Beach</u>, 296 F.3d 76, 79-80 (2d Cir. 2002)(internal quotations omitted).  Federal courts in New York also apply a three-year statute of limitations for claims under the False Claims Act. See <u>McKenna v. Senior Life Mgmt.</u>, 429 F.Supp.2d 695, 697 (S.D.N.Y. 2006).

Furthermore, the applicability of the continuing violation doctrine, which permits recovery for discriminatory conduct that is outside the statute of limitations, has been restricted by the Supreme Court's decision in <u>National Railroad Passenger Corp. v.</u> <u>Morgan</u>, 536 U.S. 101, 122 (2002).  In that decision, the Court held that "each discrete discriminatory act starts a new clock

15

for filing charges alleging that act" so that discriminatory
"termination, failure to promote, denial of transfer, or refusal
to hire" are examples of actions that constitute "discrete
discriminatory acts" and therefore are not subject to the
continuing violation doctrine.  <u>Nakis v. Potter</u>, 422 F.Supp.2d
398, 409-10 (S.D.N.Y. 2006)(quoting <u>Morgan</u>, 536 U.S. at 114).  In
contrast, the Court found that "a hostile work environment would
support the application of the continuing violation doctrine
because such a claim is composed of a series of separate acts
that collectively constitute one unlawful employment practice."
<u>Id.</u>, 410 (quoting <u>Morgan</u>, 536 U.S. at 117.)

Here, Plaintiff filed the original Complaint on September 2,
2008.  This means that the statute of limitations for all § 1983
and FCA claims arising from discrete acts that occurred before
September 2, 2005 would have expired by the date the Complaint
was filed on September 2, 2008.  As a result, the only alleged
acts for which Plaintiff brings a timely § 1983 or FCA claim
include: (1) the removal of Plaintiff from payroll, allegedly
because he challenged the finding that he was "unfit for duty" in
binding medical arbitration, (SAC ¶ 95-97); (2) the alleged
retaliatory actions during the fall of 2006 at FIHS, (SAC ¶¶ 107-
110); and (3) the 2007 3020-a charges and resulting proceedings,
(SAC ¶¶ 114-118).  Accordingly, all other § 1983 and FCA claims

are time-barred and therefore DISMISSED, with prejudice.

     b.  Statute of Limitations for Plaintiff's ADEA (Count Three) and Title VII (Count Four) Claims.

  Title VII and ADEA claims brought in New York must be filed with the Equal Employment Opportunity Commission ("EEOC") or State Division of Human Rights ("SDHR") within 300 days of the discriminatory or retaliatory practice. <u>Canales-Jacobs v. New York State Office of Court Admin.</u>, 640 F.Supp.2d 482, 501 (2d Cir. 2009).

  Here, Plaintiff filed a Complaint with the SDHR on August 15, 2008, which was then also filed with the EEOC. (Martinez Decl., Ex. X.)  Consequently, only Title VII and ADEA claims for discrimination or retaliation that arose within the prior 300 days, <u>i.e</u>, after October 20, 2007, were timely filed.  The only act of retaliation or discrimination that is alleged to have occurred after October 20, 2007 is the October 26, 2007 3020-a disciplinary charges.  (SAC ¶¶ 114-118; Martinez Decl., Ex. U.) All other Title VII and ADEA claims based upon discrete acts of discrimination or retaliation are DISMISSED, with prejudice.

     c. Remaining Retaliation (All Counts) Claims.

  To state a cause of action for retaliation under the ADEA or

17

Title VII, a Plaintiff must allege "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." <u>Gorzynski v. JetBlue Airways Corp.</u>, — F.3d —, 2010 WL 569367, *14 (2d Cir. 2010). To state a claim for First Amendment Retaliation, a plaintiff must show "(1) that the speech or conduct at issue protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 380 (2d Cir. 2004). To state a claim for retaliation under the FCA, Plaintiff must plead that (1) the employee engaged in conduct protected under the FCA; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct." <u>McAllan v. Von Essen</u>, 517 F.Supp.2d 672, 685 (S.D.N.Y. 2007)

Although the Court has dismissed the majority of Plaintiff's retaliation claims as time-barred, Defendants also contend that Plaintiff's surviving retaliation claims must be dismissed because any remaining discrete instances of retaliation are alleged to have occurred in September of 2005 or later, (<u>see</u>

18

Section II.B.1, <u>supra</u>), while all instances of protected activity are alleged to have occurred on or prior to September of 2004. (SAC ¶¶ 65-71.)  In support of this argument, Defendants cite to the fact that "[w]hile a plaintiff may allege . . . a causal connection [between protected activity and a defendant's retaliation]. . . through temporal proximity, case law requires that such proximity in time must be 'very close.'" <u>Patane v. Clark</u>, 508 F.3d 106, 116 (2d. Cir. 2007).  Thus, Defendants contend that Plaintiff cannot satisfactorily allege the required element of causality for any of his remaining retaliation claims.

As an initial matter, Plaintiff does allege that in the fall of 2005 he was removed from the payroll in retaliation for challenging the finding that he was "unfit for duty." (SAC ¶¶ 95-97.)  However, the August 16, 2005 letter informing Plaintiff that he had been found "unfit for duty," which is incorporated into the Second Amended Complaint by reference, clearly states that he would be placed on sick leave until that leave was exhausted, at which point Plaintiff "must regularize [his] status by applying for a leave <u>without</u> pay." (Martinez Decl., Ex. Q) (emphasis added)  This same letter informs Plaintiff of his right to request an independent evaluation of the finding by a "medical arbitrator." (Martinez Decl., Ex. Q.)  Accordingly, it was made clear to Plaintiff that he would be removed from payroll before

he had even challenged the finding that he was "unfit for duty." Any claim of retaliation arising from his removal from payroll must, therefore, be DISMISSED.

While Defendants are correct that there is no temporal proximity between the remainder of the alleged protected activity and the remaining alleged acts of retaliation, the case law also provides that the element of causal connection need "not [be] based only-or even primarily-on temporal proximity" but may also rely on non-circumstantial evidence, such as written or verbal statements of retaliatory intent. Patane, 508 F.3d at 116-17.

Here, Plaintiff's Second Amended Complaint alleges two such statements. First, it alleges that "Defendant Geist-Deninno later admitted to Plaintiff Pakter that it was Defendants Appell and Latchy who issued the orders to carry out the campaign of retaliation, harassment, discrimination and punitive measures against Plaintiff Pakter." (SAC ¶ 76.)  This allegation does not explain what, if any, protected activity led to these orders, and lacks the requisite specificity to satisfy the element of causality.  More importantly, however, Defendants Appell, Latchy and Geist-Deninno's alleged retaliation against Plaintiff ended at the latest during the summer of 2005, when he was found "unfit for duty."  (See SAC ¶¶ 72-95.)  As discussed, supra, such instances of retaliation prior to September of 2005 are time-

barred.

Plaintiff also alleges that in late September of 2004, "contemporaneous with Plaintiff Pakter being reassigned to the Brooklyn Rubber Room, Defendant DOE conveyed a message to Plaintiff Pakter via a high ranking Union Official" that if "Plaintiff Pakter refused to attest that he would keep no copy whatsoever [of the videotape], . . . that disciplinary charges for insubordination would be made against him."  (SAC ¶¶ 70-71.)

Plaintiff not only fails to identify this union official, he has not explained how his refusal to attest that he would keep no copy of the videotape constituted protected activity under either the ADEA, Title VII, the First Amendment, or some other Constitutionally protected right.  Moreover, the alleged retaliatory charges of insubordination that are the subject of this statement by the union official occurred during the spring and summer of 2005, and are therefore time-barred.  (See SAC ¶¶ 72-95.)

Accordingly, because Plaintiff cannot adequately plead the element of causality between any protected activity and the remaining retaliation claims under Federal Law, those claims are DISMISSED, with prejudice.

### d.   Remaining Discrimination Claim

The remaining, timely, Federal discrimination claim in the Second Amended Complaint arises from Plaintiff's allegation that the 2007 3020a Charges were filed against him because of his age. (SAC ¶¶ 114-119.)  Yet while this claim may be timely, it does not meet the standard to survive a Motion to Dismiss under Rule 12(b)(6).

Here, Plaintiff's mere conclusory allegation that "Defendants targeted and harassed Plaintiff Pakter because of his age," (SAC ¶ 119), does not state a plausible entitlement to relief.  In <u>Sanders v. Grenadier Realty, Inc.,</u> 2010 WL 605715, *2 (2d Cir. 2010), the Second Circuit recently held that where a Complaint alleges "facts consistent with a discrimination claim, <u>i.e.</u>, that non-black residents were granted subsidies" it still "stop[ped] short of the line between possibility and plausibility of entitlement to relief" under <u>Iqbal</u>.  <u>Id.</u>  Here, Plaintiff alleges even less factual matter that would raise his allegations to the level of a plausible claim.  Accordingly, Plaintiff's remaining claim for age discrimination under the ADEA is DISMISSED.

e.   ADEA Hostile Work Environment (Count III) Claim.[2]

To establish a hostile work environment claim, a plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, . . . (2) that a specific basis exists for imputing the objectionable conduct to the employer . . ." and (3) and that the conduct occurred because of [plaintiff's membership in a protected class.]" <u>Alfano v. Costello</u>, 294 F.3d 365, 373-74 (2d Cir. 2002).   Further, "[a]lthough incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred, they must occur under circumstances in which the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." <u>Fordham v. Islip Union Free School Dist.</u>, 662 F.Supp.2d 261, 273 (E.D.N.Y. 2009) (internal citations omitted).

Here, even assuming Plaintiff's allegations to be true,

---

[2] Defendant NYDOE also moves to dismiss what it terms Plaintiff's Title VII hostile work environment claim "based on [Plaintiff's] opposition to alleged race discrimination." (Def. NYDOE's Mem. of Law, 22.)   However, it is clear from Count IV of Plaintiff's Second Amended Complaint that Plaintiff does not allege any such claim.   (<u>Compare</u> SAC ¶¶ 165-68) (pleading that "Defendants' aforesaid acts constitute unlawful discriminatory and retaliatory practices within the means of and as proscribed by [Title VII]," but nowhere alleging a hostile work environment , (<u>with</u> SAC ¶¶ 158-64) (alleging the creation of "a hostile work environment.")

nothing in the Complaint suggests that the alleged hostility of Plaintiff's work environment was a result of his age, other than Plaintiff's conclusory assertions.  Indeed, while there is only one instance of age discrimination that is alleged with any specificity, (SAC ¶ 44), the Complaint is replete with allegations that his harassment and hostile treatment were actually the result of retaliation against Plaintiff for raising concerns about alleged race discrimination.  Without any factual allegations tying Plaintiff's alleged harassment to his age, this single discrete 2004 incident of transferring Plaintiff's "Senior Medical Art Class" to "a less qualified younger art teacher," (SAC ¶ 44), is facially insufficient to constitute a "workplace permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of his employment."  Alfano, 294 F.3d at 373.  Accordingly, Plaintiff's claim under the ADEA for a hostile work environment is DISMISSED, with prejudice.

3.    Plaintiff's State Law Claims

Because the Court has dismissed all of Plaintiff's Federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining State claims.  Accordingly, these claims are also DISMISSED, without prejudice.

D.    Defendants' Motion for Costs and Attorneys' Fees under 28
      U.S.C. § 1927.

      28 U.S.C. § 1927 provides that:

      Any attorney or other person admitted to conduct cases
      in any court of the United States . . . who so
      multiplies the proceedings in any case unreasonably and
      vexatiously may be required by the court to satisfy
      personally the excess costs, expenses, and attorneys'
      fees reasonably incurred because of such conduct.

      To impose a Sanction under Section 1927 "the trial court

must find clear evidence that (1) the offending party's claims

were entirely meritless and (2) the party acted for improper

purposes."   Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d

Cir. 2000).

      Here, the Court finds that Plaintiff's July 16, 2009 "Motion

to Strike" Defendants' Motion to Dismiss was completely meritless

and in bad faith.   Plaintiff, who was represented by counsel,

sought to strike Defendants' Motion for what can only be

described as his disagreement with Defendants' position.   (See

July 16, 2009 Pakter Decl., ¶¶ 4c-9; July 16, 2009 Hochstadt

Letter) (noting that Defendants' Motion "is not supported by any

affidavit from a person with personal knowledge of the facts",

and arguing that it be stricken because "it falls into only two

categories, to wit: a frivolous attempt to suggest that I have

somehow missed the applicable statute of limitations and that I

failed to provide the NYC Defendants with the required Notice of

my claims.")

Further, Plaintiff's Counsel, in her July 16, 2009 letter, argued in the alternative, that the Defendants' Motion, or parts thereof, should be stricken because that Motion refers to allegations that Pakter was "unfit for duty" or had used pornography on a school computer.  (July 16, 2009 Hochstadt Letter, 6.)  Of course, these were the very allegations that Plaintiff refers to in his own Second Amended Complaint.  (SAC ¶¶ 81, 88-89, 95, 99.)  Obviously, neither the Plaintiff nor the Court can expect Defendants to respond to Plaintiff's allegations without referencing the subject of those very allegations.

Subsequently, on August 2, 2009, Plaintiff filed a First Reply Memorandum of Law in Support of its Motion to Strike, which in reality, was nothing more than a memorandum of law in opposition to Defendants' Motion to Dismiss and a belated and unauthorized attempt to argue the merits of Defendants' Motion. For this reason, among others, on August 27, 2009 the Court Ordered the First Reply Memorandum Stricken.  In derogation of this Court's Order, Plaintiff "re-filed" that memorandum of law in response to Defendant Mason's Motion to Dismiss.  (Sept. 1, 2009 Hochstadt Decl., ¶ 39 n.1.)

The Court thus refers this matter to the Honorable Kevin N. Fox for an inquest for reasonable attorneys' and the

26

costs to Defendant of responding to Plaintiff's Motion to Strike, as well as responding to Plaintiff's unauthorized First Reply Memorandum and Plaintiff's unauthorized re-filing of the First Reply Memorandum.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike (Docket # 90) and Motion for Miscellaneous Relief (Docket # 103) are DENIED in their entirety.  Defendants' Motions to DISMISS the Second Amended Complaint (Docket ## 84, 95 100, 108) are GRANTED. Plaintiff's Federal claims are DISMISSED, with prejudice. Because the Court declines to exercise Supplemental Jurisdiction over Plaintiff's remaining State claims, they are DISMISSED without prejudice.  This matter is referred to Magistrate Judge Fox for an inquest into costs and reasonable attorneys' fees as described herein.

SO ORDERED.

Dated:     New York, New York

March **22**, 2010

_Deborah A. Batts_

Deborah A. Batts
United States District Judge