UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------- X   (ECF CASE)

DAVID PAKTER,                                                      :

          Plaintiff,     08-cv-7673

                 (DAB)(KNF)

• against -             :

                  :

NEW YORK CITY DEPARTMENT OF EDUCATION  :

   f/k/a BOARD OF EDUCATION OF THE CITY : SCHOOL

DISTRICT OF THE CITY OF NEW YORK; : JOEL I. KLEIN, as

      Chancellor of THE CITY SCHOOL

   DISTRICT OF THE CITY OF NEW YORK;   :

MICHAEL LAFORGIA;          :

JUDITH RIVERA;           :

PHILIP CROWE;           :

SONIA STUART;           :

ALEXIS PENZELL;        :

MADELEINE APPELL;         :

MARY ANN GEIST-DENINNO;      :

JOHN LACHKY;           :

HAROLD MASON; HILDA NIETO;

GIOVANNI RASCHILLA; DR. AUDREY JACOBSON;  :

DR. ANN GARNER;        :

DR. ELIANE MEYER;         :

DR. RICHARD SCHUSTER      :

          Defendants. :

------------------------------------------------------------------------------- X

==================================================================

PLAINTIFF'S OBJECTIONS
TO REPORT AND RECOMMENDATIONS
OF HIS HONOR KEVIN N. FOX, U.S.M.J.

==================================================================

JOY HOCHSTADT, P.C.
Plaintiff's Counsel
300 Central Park West, Suite 2E
New York, New York 10024
Tel. (212) 580-9930

## TABLE OF CONTENTS

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**DISCUSSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. **The fair cost for reimbursement given the what the clients can afford as willing clients**. 3

B. **The Corporation Counsel bills out its non-supervising attorneys at $40.00 or less per hour**
3

C.   **Other considerations as to whether sanctions are appropriate at all in this case**       4

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**DECLARATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>INTRODUCTION</u>

The basis of these objections, comprise the following:

(1) A willing client depends on the nature of the case; in a vagrancy case a willing client, might be willing and able to pay less than $1.00 per hour; the instant case involves a city employee who was taken off the payroll in order to coerce him to retire and he ultimately was forced to retire in July 2010, having not been allowed his paycheck since October 1, 2009, and after having been denied $83,400.00 or more of his $100,049.00, annual salary.   Before retiring however, because Plaintiff had no funds whatever to feed and house himself, the impartial arbitrator presiding over Plaintiff's Ed. L. §3020-a hearing, dismissed all the original charges against Pakter, leaving only the later charges that Pakter found the rubber room to be intolerable constructive termination (as do most other similarly reassigned educator–and could no longer attend).   Had Pakter retired at the point that they stopped paying him he would have had $85,000.00 + (Pakter's pension after 42 years of service exceeded his final salary).   Plaintiff's counsel had not been paid for over a year, due to plaintiff's insolvency caused by his city employer.   Plaintiff's counsel's practice is made up entirely of a) individual teachers and assistant principals who have been fired, suspended or fined to a level that they cannot afford and pay plaintiff almost nothing, b) all educators removed from the schools during the Klein administration (which luckily has ended today as I write these opposition papers)  in a putative class action (which can only be paid if the class prevails at the end of the case) and c) 160 plaintiffs who are victims' kin or survivors of the worst train fire in history who are still hoping for a modicum of justice a decade after the catastrophe, who like those in a class action will not pay.   If the case is won the court will allocate attorneys fees at the end of the case.   Therefore, the "willing" clients for this attorney pay much less than not only the $175/hr Mr. Martinez says he should be paid, but much less than Mr. Martinez actual earns.

2) There should be considerations of the impact of even an actual costs award to the attorney who will have to pay and because of the above does not have funds with which to pay.   3) There are considerations of that the striking of the offensive material was at the insistence of the Plaintiff who found the material highly offensive, untrue and defamatory unless removed from the PACER/ECF system.   3) This writer had never at that time, nor has she thereafter, met an attorney as unforgiving as Mr. Martinez, when I confided in a colleague as to how to handle the situation where Mr. Martinez, was getting my papers struck where as a 71 year old woman with macular degeneration filing her first case on ECF, I was unable to convert word processing tp PDF files and thus my papers were only gotten up onto ECF almost 17 hours after the midnight deadline.  He demanded it be stricken and it was struck.  Mr. Martinez, was anything but a cooperative opposing counsel.  He took advantage that though I had been admitted to the bar three years before Mr. Martinez, Pakter v DOE *et al*, was my first federal case and the advice I received concerning how to deal with Mr. Martinez aggression was bad advice–it was to be equally aggressive in my posture to regain control of the case.   4) This type of sanction is rarely, if ever imposed on an attorney on her first case in federal court.  For all of these reasons, it would be a loss to my many clients, who have come to me because I am the only attorney who did take their case, on whatever they could pay, who took the initiative to file on behalf of all teachers mistreated by the outgoing Chancellor in a class action pursuant to FRCP 23, if I, too, like Pakter were force to retire prematurely because I cannot afford this sanction.  I admit I made mistakes in this my first federal action, especially taking the advice of an attorney I met in the course of the "rubber room" battles because of his advocacy of reassigned teachers like Mr. Pakter.  Unfortunately, I was naive, the attorney who advised me was later disbarred for his own misconduct and almost three years later I am the wiser.

<u>DISCUSSION</u>

A.     **The fair cost for reimbursement given the what the clients can afford as willing clients**.

For the period in which this case was conducted, my practice, Joy Hochstadt, P.C. was operated at a loss.  The costs of supplies, court costs, depositions, copying, transportation, professional liability insurance, utilities, Westlaw @ $619/mo., cable modem (the cellular modem used to upload the stricken Memorandum was inadequate when used from my office in a "dead spot"), printer/copier fax replacement, *inter alia* have cost more than the fees that I collected.  Therefore my practice operated at a deficit, and thus many willing clients, have not been willing or able to pay enough to cover my expenses much less to pay me a fee, yet I have more clients (about 30) than I should and am over committed.  On this basis, I am paid $0 dollars/hr so on the willing client basis, fired suspended, about to be fired or suspended, fined teachers have only been willing or able to pay me less than my total expenses and on this basis the hourly rate would be $0; why should Mr. Martinez get more.

B.     **The Corporation Counsel bills out its non-supervising attorneys at $40.00 or less per hour** when it is the Corporation Counsel Administration that is doing the billing.  The Law Department is a non-profit, modestly billing organization.  I learned this from Ivan A. Mendez, Jr. Esq. (Former Assistant Corporation Counsel until July 2010) in the presence of NYSUT Counsel Wendy Star, Esq, and Damon Lewenstein, Esq. during 2009 when this billing was taking place.  Therefore, Mr. Martinez took it upon himself, for the purposes of this motion, to demand sanctions and then to demand an amount he designates is what he believes he should be paid rather than what his employer bills when the authorized individuals in the Law Department make the demand.  If despite the attestation that willing clients who wish to be represented by my law firm (Joy Hochstadt, P.C.) are both willing **and able to pay** , then the rate should be as follows.  Law Department employees

3

officially work a 40 hour week, and work 47 weeks per year.  The starting salary for new attorneys at the Law Department (from its website under careers) is $62,037.00.  The hours that new attorneys are expected to work (deducting 29 days as per website from 52.2 weeks @ 40 hours per week) are 1856 hours *per annum*.   Therefore, Mr. Martinez actual salary the first year would be at the rate of $33.43/hour for the first year and allowing for as much as a $10,000.00 increment after the first year > 15% to $72,037 for the second year calculates to $38.81/hour for the second year.   The average of these two since the alleged submission was at the midpoint is $36.12/hr.  Therefore the actual rate for 69 hours would be $2492.28.  While that is more than my willing clients would be able to pay, and more than I can afford to pay, at least it is an appropriate calculation of what 69 hours of Mr. Martinez time is worth, and what would have been billed had the executive offices of Corp. Counsel calculated the amount rather than Mr. Martinez.

### C.  Other considerations as to whether sanctions are appropriate at all in this case

1. I was graduated from Brooklyn Law School in 2004 and was admitted in the state of NY in February of 2005 and to the SDNY in May of 2005. .

2. I was 65 years old when I graduated; and though I was invited to a fair number of job interviews, I received no job offers. Therefore, I reclaimed my position as a Biology Teacher in a NYC High School and continued to do research and drafting for a well established general practitioner who had a long established litigation practice after school, and taught biology during school hours.

3. By May of 2005, I met a retired State Acting Supreme Court Justice, who was practicing also in a litigation practice.

4. In the summer of 2006 I established my corporate Practice, Joy Hochstadt, P.C. .

5. Mr. Pakter's was the first case I filed in federal court not as a *pro se*.

6. The practice has grossed a total of just under $100,000 over the past 27 months, and it has netted zero as it is operating at a deficit after paying all the practice expenses.

7. The very modest retainers from teachers who have been disciplined unfairly, like Mr. Pakter make up the bulk of practice. To date the only employment cases that I have actually won/settled are my

own.  I have lost only two including Pakter out of over twenty, but post trial motions and appeals continue in these two as well, but all the teacher cases are taking more than 18-24 or more months to complete.

8. I am waiting for those 33% contingency cases to settle or be won at trial, thus far I have not had this occur, though several are progressing to that to that point or to be awarded counsel fees by the Court.  On the contingency cases I have taken from $0 retainer to a few thousand dollars.

9. Mr. Pakter's case in 2008 was the first teacher case besides my own, that I undertook.

10. Before that I had a mixed general practice of commercial, contract and family issues.

11: In the two intervening years I have built up the practice to include 20 teachers in private lawsuits and a class action to obtain due process, equal protection and reparations for all reassigned teachers. But all the cases are at intermediary points; none have as yet settled and only one has gone to trial to date in the EDNY.

12. I do not have ~$12,000.00 in cash or cash equivalents; I am very worried that I will lose my ability to practice to the great detriment of numerous clients, if I cannot pay that enormous sum of money.

13. In responding to Defense Motion to dismiss in this instant matter I required several adjournments, because first I was hospitalized with syncope, and then I was diagnosed with macular degeneration and had to reorganize my workspace (large monitor and keyboard) and accustom myself to meeting the challenges of unexpected visual limitations.

14. I also had a cellular modem for internet access at the time and my desk is at a place in my office that cellular calls are always getting dropped, therefore, when I tried to upload numerous exhibits I would lose the call in the middle and have to start all over again –thus I did not get my response uploaded to ECF on time and it took days to get all the exhibits up. (Now I have cable modem) and only my voice cellular calls get dropped.

15. Twelve days after I filed my response Mr. Martinez wrote to Your Honor and complained about my vexatiousness in lengthy uploading, and there were too many footnotes ergo it would have been too long –in fact it was a page too long (which I excused that the footnote placement left space at the bottom of certain pages.

16. I was devastated, Mr. Martinez sought to have my Memorandum stricken and Your Honor struck it.

17. Mr. Martinez was so avariciously intent on his *ad hominem* assault on me I did not know how to react, I felt such responsibility for Mr. Pakter, I was at odds to know what to do. I had never been so attacked before.

18. I sought the advice of colleagues who had vastly more experience than I.

19. I was told that I had lost control of the case that I needed to reassert control of the case.

20. I was advised that a good plaintiff's attorney is ever reviewing ways to anticipate the opposition, and plans everyday to move the case forward planning for each of defense moves.

21. It is untrue that these were frivolous motions.

22. Mr. Martinez made a notice of motion in which he cited that he was moving for the Department and for the Chancellor, and failed to indicate that he was moving for 14 other defendants.

23. We pointed this out in our next papers, but Martinez never filed any corrected Notice of Motion, and we then pointed this out. Eventually he wished to rely on the motion for all defendants.

24. We said he could not do that. I was also given the advice that since defense papers made characterizations of Mr. Pakter as having been accused of sexual misconduct which defense knew was not true, Mr. Pakter was never accused of sexual misconduct, but that is what the Defendants liked to do to slander Plaintiff with this allegation, so I moved to strike the offense material at my clients insistence that the scandalous material be removed

25. I was advised that when papers or pleadings contain scandalous or prejudicial content that they should be struck. Plaintiff was very eager to get the untrue allegation out of the public domain.

25. The New York Post also was given this same slanderous remark by defendants, and the Post published it on March 21, 2010.

26. Pakter was very upset and has filed as *pro se* action in NYS Supreme Court against the DOE for slander and the New York Post for libel. At first the Post said that they were given that information by the DOE; when I demanded to know the source within the DOE, the Post said it investigated that DOE denied ever making the remark. Pakter's claim is for $10,000.000.

27. The Post published a retraction the libelous remark; Pakter felt the defendants should be made to do the same (the Defendants remark was nine months earlier than the Post libel).

28. The next "horrid" and "vexatious" bad act I am accused of, is that I made a reply to my own cross-motion.  Defendants Counsel decided that it contained material that was a sur-reply to their

motion. Defense not only complained that it should be struck but that it should be sanctioned. I do not believe that the reply was a surreply, it was a reply, the subject matter was closely related such that if there was the desire to attack me, and there was no review of the what we argued and whether it was proper to argue what we did–then indeed the Defendants could posture inappropriately that it was a sur-reply.

29. Rather than Plaintiff's counsel acting contemptuously by filing certain papers, we believe that that defense counsel is being disingenuously, bellicose in making attacks and defaming me.

30. Finally the last accusation is equally non consequential made in response to the filing of the Notice of Motion for Mr. Mason. Mr. Mason was a former employee of the DOE, who now lives in another state.

31. Defense counsel agreed to accept service for this individual, and provided a Notice of Motion for the former administrator. We could and should provide opposition to that Defendant, especially if there are somewhat different allegations against that defendant versus the others.

32. Taking the opportunity to serve/file a memorandum with the Notice of Motion of a new defendant did not seem to be wrong to me.

33. I do not believe it caused the multiplication of proceedings, I do not believe that our prior actions were in anyway inappropriate. We filed the memo as our reply to our cross motion. It was struck on the Defendant's say so, not because it really deserved to be struck. We then reserved it against a different defendant for a different for a different purpose.

34. It was struck assumedly because it was filed at the wrong time. Its ideas and its arguments were not struck forever, it was then used with regard to a different defendant for a for a different purpose.

35. I am disappointed that the Court did not look beyond the characterizations of the Defendants, to examine whether the allegations or the posture had any basis.

36. The standards for the administration of 28 USC 1927 require for more to transpire to actually make work for the opposition, than to ask that a response that is libelous be purged of the false statements does not cause extra work, all the Defense had to do was redact the offending characterization and resubmit. Defense made work for itself by defending the inclusion of the characterization.

37. I further believe, that the submission of a reply to a cross motion is my right and my duty to

prosecute the case. If opposing it had to be done in any of papers then, there is no extra work if they defense responds–the defense just complained it covered a broader than allowed scope and perhaps rebutted something.

38. Finally, the "resubmission" of the struck memorandum in response to the appearance and notice of motion to dismiss on the part of Defendant Harold Mason: this also is defense placing unnecessary obstacles for the plaintiff and then calling foul when one of them is used to good advantage.

39. Had defense accepted service for Defendant Mason and responded for him when it responded for other defendants it would not have provided the additional opportunity, to submit a response for Mr. Mason.

40. Defense refused to accept service for any defendant other than the Chancellor and the Department initially.  In fact, it returned numerous summons and complaints for each Defendant after service had been accepted at the service window at 100 Church Street, 4th Floor. The window for service of process, accepted, time stamped, and acknowledged service for each Department affiliated (or retiree) Defendant by stamping a duplicate summons and page 1 of the complaint to verify service of process at the server's request. This "proof of service" along with declarations of service for each Defendant were then upload to ECF.

41. A day or two later, all of the Summons and Complaints after having been duly docketed into the Law Department of NYC, appeared at my office, with the exception of the one for the Chancellor and the Department, with a note from Mr. Martinez that service is only accepted for the Department and the Chancellor.

42. But service had already been accepted receipted, attested to and uploaded to ECF.

43. Nevertheless, Plaintiff then personally re-served each of the employed Defendants at the DOE site to which they were assigned. Then Plaintiff began to serve each of the severed former employees at their residences.

44. As soon as the first, Audrey Jacobs, M.D., was served, an e-mail was received from Mr.Martinez accepting service for all remaining defendants.

45. The Law Department had refused to provide assignment addresses for employed Defendants nor would it provide current addresses for former employees, making extra work and expense for Plaintiff to serve each of the Defendants.

46. When the obstacles the Defense placed in Plaintiff's path turned out to be costly, i.e. billable time locating assignment address for relocated employees within the DOE, process servers and a huge bill (over $4,000.) for out-of-plan services on Westlaw ("people finder") to obtain the residence addresses for severed employees, does Plaintiff's counsel get credit for this expense totaling $5325 [$700, process service; $4125, Westlaw people finder usage; $500, hourly fee networking, calling switchboards, searching DOE and Google websites to locate new business addresses for relocated employees], does Plaintiff's attorney get credit for these costs against any assessment of fees.

47. The above was a totally unnecessary make work expense, since the service of process was already docketed and receipted, sworn to, and filed on ECF.

48. The numbers of *ad hominem* letters by Mr. Martinez to the Court to discredit me for trivial and totally fallacious reasons are many. I had to rebut each of them. Their purpose was to undermine me as a means of undermining an otherwise unassailable case. Unfortunately for both plaintiff and for justice, attacking me worked (the adage goes "when do not have the facts, argue the law; when the law is not with you argue the facts, when both are against you–attack opposing counsel) and that is exactly what Mr. Martinez has done

.49. Mr. Martinez specifically chose to request sanctions under 28 U.S.C. §1927 because as he said at the CAMP "no motion is involved," i.e. there is no due process for me to be hears and at the CAMP he mocked me to undermine my credibility about why did I need extensions there is nothing to do but add up his numbers, and faulted me for requesting them.

50. Unlike the EDNY, letters do not appear on the docket. Thus, there is no record of how the Defense has attacked me mercilessly, and then when it felt that it had sufficiently undermined me it requested costs as a sanction, in a way that did not even give me an opportunity to defend. In fact, Mr. Martinez is expected to respond that my response is improper this is only an inquisition that requires no substantive argument, my argument should be stricken or he should again be paid for the time of his response.

51. If not here? Where? Martinez already announced that he chose this vehicle because "no motion was involved," ergo no opportunity to respond or rebut.

52. Even at the rate that Mr. Martinez is valuing his work, the number of hours that I have expended rebutting his unnecessary, unsolicited plethora of letters that have indeed proliferated the work I have

9

had to perform, exceeds by manyfold the work that Martinez, even suggests, much less actually claims, he was required to perform.

51. Martinez had one purpose in his "litigation by letter" and that was to attack me personally, and then finally to aver that the conduct that he had proffered was so unconscionable it warranted sanction of money I do not have, so as to undermine my total career.

52. I have had another career, and at age 65, six years ago was admitted to the practice of law.

53. I never dreamed that I would work so hard, have to sleep an average of two hours a night in weeks that the pressure of work is heavy, such as this one, and beseech the Court as I do now, to accept my work *nunc pro tunc* I did here simply because though I set aside the time so solely work on this matter, I physically could work no faster, was unable to prevent nodding off at my computer, or became so hypersensitive that I literally could no longer tolerate being in my own skin without a significant break–that was why though I was determined to complete this last night I simply did not have the visual accuity to work any faster,

54. Before turning to legal standards for the application of 28 USC 1927, I shall summarize:

(a) For a variety of medical and an experiential reasons it was difficult to make my initial and this instant response as timely as directed and respectfully request *nunc pro tunc* consideration.

(b.) Mr. Martinez once he read my opposition to his motion to dismiss papers but not for twelve days thereafter, began a campaign to "litigate by letter" attacking me personally and culminating in the request for §1927 sanctions against me.

(c ) Nothing that Mr. Martinez claims caused him extra work really did, as explained above

(d.) Mr. Martinez entire strategy as exemplified in his numerous letters was to focus on my alleged "misconduct" which was all contained in the letters. He never dealt with the substantive facts or law that this was at the core of this matter other than to say it was time-barred as discrete events. The facts, however, show a compelling pattern of civil rights deprivations in a continuing tort of seven years of malicious prosecution that is only ending now with the dismissal of the charges against Plaintiff.

(e.) Mr. Martinez now focuses on Mr. Pakter's attendance in the rubber room, which was an after the fact, appropriate response to the one most demeaning aspect of the seven years of malicious prosecution, i.e. six years of confinement under prison-like conditions.

10

(f.) The decision that only the inception of confinement counts, that only the initiation of false charges count and that six years of confinement, two years of constructive termination (was docked $78,000.00 for 2007-2008 out of $95,000.00 salary and has not been paid since October 1, 2009) and seven years of malicious prosecution do not count: everything is time-barred; there is no continuing tort is wrong and will on appeal.

(g.) The decision that I did anything deserving of the sanctions before Your Honor is wrong.

55. The standards for the application of 28 USC §1927 do not include anything as, shall we say, "mild" as what is even alleged here. It is the "spin" of contentiousness that Mr. Martinez has placed on it.

56. Statute empowering federal courts to hold attorney who "multiplies the proceedings in any case unreasonably and vexatiously" personally liable for excess costs, expenses, and attorney fees carries with it potential for abuse, and should be construed narrowly and with great caution, so as not to stifle enthusiasm or chill creativity that is very lifeblood of law. Mone v. CIR, C.A.2 1985, 774 F.2d 570.

57. Power to assess costs against an attorney under 28 U.S.C.A. § 1927, authorizing such an award if actions of attorney multiply the proceedings and are vexatious and unreasonable, is a power that must be strictly construed and utilized only in instances evidencing a serious and standard disregard for the orderly process of justice. Dreiling v. Peugeot Motors of America, Inc., C.A.10 (Colo.) 1985, 768 F.2d 1159.

58. Being penal in nature, this section permitting a district court to require an attorney to personally satisfy costs when he "so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously" is to be strictly construed. U.S. v. Ross, C.A.6 (Ohio) 1976, 535 F.2d 346.

59. Statute making counsel liable for excessive costs in multiplication of proceedings is penal in nature and must be strictly construed. Murray v. Playmaker Services, LLC, S.D.Fla.2008, 548 F.Supp.2d 1378, affirmed 325 Fed.Appx. 873.

60. Statute providing for counsel's liability for excessive costs is to be strictly construed, and sanctions are not appropriate unless attorney is shown to have acted in bad faith, with improper motive, or with reckless disregard of duty owed to the court, and decision to award attorney fees thereunder is committed to court's discretion. Cypress-Fairbanks Independent School Dist. v.

11

Michael F. by Barry F., S.D.Tex.1995, 931 F.Supp. 474, affirmed as modified 118 F.3d 245, 152 A.L.R. Fed. 771, certiorari denied 118 S.Ct. 690, 522 U.S. 1047, 139 L.Ed.2d 636

61. Plaintiff who was allowed to amend his civil rights complaint but was cautioned that making only minor changes that prompted another motion to dismiss could be regarded as frivolous filing would not be sanctioned under statute dealing with vexatious litigation even though complaint was dismissed after repleading; statute must be construed narrowly and with great caution, and circumstances of case did not justify sanctions under statute. Nowosad v. English, E.D.N.Y.1995, 903 F.Supp. 377

62. Statute providing sanctions for unreasonable and vexatious delay of litigation is punitive and must therefore be construed strictly. Harriston v. Chicago Tribune Co., N.D.Ill.1991, 136 F.R.D.482

63. A principal purpose of the statute which provides for the imposition of a monetary sanction upon counsel who unreasonably multiply the proceedings is the deterrence of intentional and unnecessary delay. Beatrice Foods Co. v. New England Printing and Lithographing Co., C.A.Fed.(Conn.) 1990, 899 F.2d 1171

64. Thus, in addition to broad consensus throughout the circuits that the conduct must be egregious, that it is penal in nature (ergo where has the due process been here, there was no warning by the Court, the defense announced it chose this mechanism because there was no motion), and this Circuit, construed its purpose to deter defendants from multiplying proceedings so as to delay the inevitable. *Id.*

65. Here, it is Plaintiff, which has been subject to a panoply of maneuvers, never to get to the substantive issues in the case; it should be Defense who is sanctioned for objecting to every one of numerous attempts to appear at conference or hearing and the case was sidetracked by no exploration of the continuing nature of the wrong. Even defense reiterated several times "as discrete incidents" but kept pressing the personal; attacks on Plaintiff's counsel and prevented the demonstration that there was a single course of bad faith by the government employer to destroy Plaintiff's career over seven years.

66. The statute which allows a court to impose sanctions upon any attorney who unreasonably and vexatiously multiplies the proceedings is not a "catch all" provision designed to serve a basis for sanctioning any and all conduct courts want to discourage; instead, the statute was designed to

sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith. Merial Ltd. v. Intervet, Inc., N.D.Ga.2006, 437 F.Supp.2d 1332

67. There has been no bad faith here, except on part of defense, to prevent Plaintiff from getting his day in Court, and to vilify Plaintiff's counsel for her good faith efforts to obtain justice for her client.


68. Purpose of statute authorizing sanctions for vexatious and unreasonable multiplication of proceedings is to deter unnecessary delays in litigation. Hudson Motors Partnership v. Crest Leasing Enterprises, Inc., E.D.N.Y.1994, 845 F.Supp. 969.

69. This section providing that an attorney who multiplies proceedings unreasonably and vexatiously may be liable for excess costs and attorneys' fees is designed as a sanction against dilatory litigation practices and is intended to require attorneys to personally satisfy excess costs attributable to their misconduct. Piljan v. Michigan Dept. of Social Services, E.D.Mich.1984, 585 F.Supp. 1579

70. The Plaintiff wanted nothing more than to expedite the procedures, it was the defense that wanted to delay and dismiss a case where the defendant had acted in very bad faith, and certainly had perjury, larceny of already issued paychecks, and conspiracy to deny civil tights over seven years to defend. (See ¶¶ 73-74).

71. The statute which allows sanctions for creating excessive litigation costs imposes upon counsel the responsibility to act in good faith throughout all phases of legal action and it is specifically designed to deter bad faith conduct by any attorney. Herrera v. Scully, S.D.N.Y.1992, 143 F.R.D. 545

77. Purpose of statute imposing liability on counsel for excessive costs is to deter unnecessary delays in litigation. In re French Bourekas, Inc., Bkrtcy.S.D.N.Y.1995, 183 B.R. 695, affirmed 195 B.R. 19

72. There has been no bad faith on the part of Plaintiff's Attorney any where in the course of the proceedings. Thus by the standards of this Court, the statute does not apply here. There has certainly been no desire to delay –but to get on with the case, past Defense couching its time-barred arguments, always by prefacing "if discrete incidents" *Id.*

73. Plaintiff however was never given opportunity to demonstrate that they were not.

74. The statute, 28 U.S.C.A. § 1927, imposes sanctions in form of costs, expenses and attorney fees so as to discourage dilatory litigation practices and advocacy designed to burden an opponent without chilling aggressive litigation and good-faith assertions of colorable claims. Matter of Capitol-York

Const. Corp., Bkrtcy.S.D.N.Y.1985, 52 B.R. 317

75. The District court had authority, under federal statute and under court's inherent power to promote orderly and just administration of its caseload, to impose monetary sanctions upon attorney who deliberately misrepresented legal authority in support of nonfrivolous motion. Premier Commercial Corp. Ltd. v. FMC Corp., N.D.Cal.1991, 139 F.R.D. 670

76. There has been no misrepresentation to the Court by the Plaintiff. There has been no indication of bad faith. Each of the three items, a) moving to strike libelous material that when a newspaper published and retracted it, the supposed DOE source denied ever having made the statement and plaintiff has brought and action, b) a reply ro a cross motion was called a sur-reply by Defense and without any examination by Court, was struck on Defense say-so, c) when Defense noticed addition of last served Defendant to motion to dismiss the struck reply memo was considered because now its content would be appropriate, even if is was not as a reply (which we disagree with); we see these sanctions as simply an erroneous decision.

77. A court has discretion to impose sanctions, under statute authorizing sanctions against an attorney who multiplies the proceedings in any case unreasonably and vexatiously, when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice, pursued a claim that is without a plausible legal or factual basis and lacking in justification, or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound. Jolly Group, Ltd. v. Medline Industries, Inc., C.A.7 (Ill.) 2006, 435 F.3d 717, rehearing denied.

78. There is nothing akin to any of this conduct, here, it is a misapplication of the statute. *cf. Id.*

79. Punishment under statute which allows court to sanction attorney, who unnecessarily multiplies proceedings, by requiring him to pay costs of litigation, is sparingly applied, and except when entire course of proceedings was unwarranted and should neither have been commenced nor persisted in, award under that statute may not shift entire financial burden of action's defense. F.D.I.C. v. Calhoun, C.A.5 (Tex.) 1994, 34 F.3d 1291.

80.. Power to assess costs on attorney guilty of misconduct should be exercised only in instances of a serious and studied disregard for orderly processes of justice. Kiefel v. Las Vegas Hacienda, Inc., C.A.7 (Ill.) 1968, 404 F.2d 1163, certiorari denied 89 S.Ct. 1750, 395 U.S. 908, 23 L.Ed.2d 221,

rehearing denied 89 S.Ct. 2128, 395 U.S. 987, 23 L.Ed.2d 776. See, also, Overnite Transp. Co. v. Chicago Indus. Tire Co., C.A.7 (Ill.) 1983, 697 F.2d 789.

81. Under rule which provides for sanctions against attorney who multiplies proceedings in any case unreasonably and vexatiously, award should be made only in instances evidencing serious and studied disregard for orderly process of justice. White v. American Airlines, Inc., C.A.10 (Okla.) 1990, 915 F.2d 1414

82. Focus under statute authorizing court to require attorney to satisfy excess costs, expenses and attorney fees reasonably incurred because of attorney's vexatious and unreasonable multiplication of proceedings is on course of conduct, rather than particular papers. Bowler v. U.S. I.N.S., S.D.N.Y.1995, 901 F.Supp. 597

83. By this District's own rulings it is not specific paper's but a course of conduct that is sanction able. *Id.* By that standard it should be Defense Counsel here who is sanctioned for his vituperous and unwarranted campaign to attack Plaintiff's counsel.

84. Three substantial requirements must be met before liability may be imposed under attorney fee statute: multiplication of proceedings by attorney or other person; conduct that can be characterized as unreasonable and vexatious; and resulting increase in cost of the proceedings. Hidahl v. Gilpin County Dept. of Social Services, D.Colo.1988, 699 F.Supp. 846. See, also, Shields v. Shetler, D.Colo.1988, 120 F.R.D. 123.

85. In determining whether sanctions award against plaintiff's counsel was reasonable under Rule 28 USC 11, local rule governing violations of procedural rules, and statute governing needless and vexatious multiplication of proceedings, district court had to examine whether such award would deter future misconduct by plaintiff's counsel, whether fees charged by defense counsel were reasonably necessary to resist offending action, extent to which defendant could have mitigated its fees and expenses, and whether defense counsel somehow provoked sanctionable conduct. Super Power Supply, Inc. v. Macase Indus. Corp., C.D.Cal.1994, 154 F.R.D. 249, 31 U.S.P.Q.2d 1677, vacated in part.

86. Here defense could have mitigated any extra time it claims it spent, by in the first instance, removing the offending statement and resubmitting the memorandum; allowing Plaintiff's memorandum in support of its cross motion to be entered. That would make the two motions fully

submitted it and there was nothing left to do. Instead defense labeled the reply a sur-reply (another member of his department did not want to allow a reply to a cross-motion in a briefing schedule–apparently Labor and Employment Division does not teach that), unreasonably moved to strike the reply and it was granted, and then finally when it was used as an opposition memo called foul and moved to strike that again.

87. [Attorney] acted in bad faith and engaged in conduct for improper purposes, and therefore sanctions were warranted; attorney engaged in offensive, demeaning, and abusive conduct, engaged in conduct that was extortionate in nature, multiplied the proceedings, and acted with complete and utter disregard for the harm that his actions would cause former attorney and law firm. Revson v. Cinque & Cinque, S.D.N.Y.1999, 70 F.Supp.2d 415, reversed in part , vacated in part 221 F.3d 71.

88. Imposition of liability under 28 U.S.C.A. § 1927, which allows award of sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously," requires finding that attorney has acted recklessly or in bad faith. U.S. v. Associated Convalescent Enterprises, Inc., C.A.9 (Cal.) 1985, 766 F.2d 1342.

89. Imposition of sanctions pursuant to this section against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" requires a finding that counsel acted recklessly or in bad faith, while sanctions imposed under court's inherent power require a finding that counsel's conduct constituted or was tantamount to bad faith. U.S. v. Blodgett, C.A.9 (Cal.) 1983, 709 F.2d 608

90. Recklessness satisfies standard of bad faith that justifies award of attorney fees under statute governing counsel's liability for excessive costs. Bellah v. American Airlines, Inc., E.D.Cal.2009, 656 F.Supp.2d 1207

91. Under statute permitting an attorney to be held liable for causing excessive costs, sanctions may be imposed only for reckless conduct, not negligence or inadvertent acts. Naegele v. Albers, D.D.C.2005, 355 F.Supp.2d 129.

92. Under statute permitting an attorney to be held liable for causing excessive costs, sanctions may be imposed only for reckless conduct, not negligence or inadvertent acts. Naegele v. Albers, D.D.C.2005, 355 F.Supp.2d 129.

93. An attorney's behavior is vexatious under section imposing sanctions for unreasonable and vexatious multiplication of proceedings when it is harassing or annoying, regardless of whether it is

16

intended to be so; the behavior must be more severe than mere negligence, inadvertence, or incompetence. New England Surfaces v. E.I. DuPont de Nemours and Co., D.Me.2008

94. Requirement that counsel's multiplication of proceedings be "vexatious" to be sanctionable necessarily demands that conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence. Obert v. Republic Western Ins. Co., D.R.I.2003, 264 F.Supp.2d 106.

95.  "Vexatious conduct," required for award of statutory attorney fees, involves either subjective or objective bad faith. Pacific Dunlop Holdings, Inc. v. Barosh, C.A.7 (Ill.) 1994, 22 F.3d 113

96. Monetary award under federal statute proscribing attorney misconduct is proper when attorney's actions are so completely without merit as to require conclusion that they must have been undertaken for some improper purpose, such as delay. Wolters Kluwer Financial Services Inc. v. Scivantage, Adnane Charchour, Sanjeev Doss, Cameron Routh, S.D.N.Y.2007, 525 F.Supp.2d 448, affirmed in part , reversed in part 564 F.3d 110, certiorari denied 130 S.Ct. 625.

97. Finding of bad faith is not required to impose sanctions on counsel who multiplies proceedings unreasonably and vexatiously; but if bad faith is present.

98. Finding of bad faith is key element in imposition of statutory sanctions against attorney for "unreasonably and vexatiously" multiplying proceedings in action. Mopaz Diamonds, Inc. v.Institute of London Underwriters, S.D.N.Y.1993, 822 F.Supp.106.

99 . To justify imposition of excess costs of litigation upon attorney, his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in conduct of litigation. Colucci v. New York Times Co., S.D.N.Y.1982, 533 F.Supp. 1011.

100. Prior to imposing sanctions upon attorney for unreasonably and vexatiously multiplying proceedings, court must find that offending attorney's multiplication of proceedings was both "unreasonable" and "vexatious"; evidence of recklessness, bad faith, or improper motive must be present. Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., C.A.5 (La.) 1994, 38 F.3d 1414

101. Award of expenses under statute governing counsel's liability for excessive costs is proper when attorney's actions are so completely without merit as to require conclusion that they must have been undertaken for some improper purpose such as delay; in Second Circuit, imposition of sanctions under that statute also requires finding of bad faith. Kahn v. Superior Chicken & Ribs, Inc., E.D.N.Y.2004, 331 F.Supp.2d 115

102  Sanctions for unreasonable multiplication of proceedings must be supported by a finding of subjective bad faith, which is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent; thus, for sanctions to apply, if a filing is submitted recklessly, it must be frivolous, and if it is not frivolous, it must be intended to harass. East Cascade Women's Group, P.C. v. Tutthill, D.Or.2002, 216 F.Supp.2d 1159.

103. Claims by manufacturers and distributors of lightning protection systems against competitor for false advertising, unfair competition, and tortious interference with contractual relations were maintained in bad faith, with purpose to harass and increase litigation expense by prompting unnecessary motions for summary judgment, and thus warranted award of attorney fees under § 1927 and court's inherent power, despite plaintiffs' contention that they conceded summary judgment motions for strategic reasons, where plaintiffs continued suit for one year after it became clear that they could not prevail on claims. Heary Bros. Lightning Protection Co., Inc. v. Lightning Protection Institute, D.Ariz.2003, 287 F.Supp.2d 1038, affirmed in part , reversed in part 262 Fed.Appx. 815, 2008 WL 59823

104. Sanctions against attorney under statute providing sanctions where attorney multiplies proceedings unreasonably and vexatiously did not apply, as lawsuit was necessarily long and complex and there was no showing of bad faith or multiplying of proceedings for any improper purpose. Card v. State Farm Fire & Cas. Co., N.D.Miss.1989, 126 F.R.D. 654

105. Bad-faith motive could not be inferred solely on basis of party's actions taken in case or that party's actions may have unreasonably and vexatiously multiplied proceedings sufficient to warrant imposition of costs and attorney fees. Mars Steel Corp. v. Continental Illinois Nat.Bank and Trust Co. of Chicago, N.D.Ill.1988, 120 F.R.D. 53, affirmed 880 F.2d 928.

106. Reviewing the entire body of 26 USC 1927 cases (191 pages), there are misrepresentations of law and fact to the court, persistent refusal to withdraw clearly inapplicable or frivolous claims, there was nothing about good faith motion practice in advocacy of one's clients legitimate claims.

107. In reviewing the entire body 28 USC 1927 awards the awards were typically $5000/. or less.

108. In exercising its discretion to impose sanctions, district court may consider factors such as attorney's inexperience and whether attorney entered case at advanced stage. Blue v. U.S. Dept.of Army, C.A.4 (N.C.) 1990, 914 F.2d 525, certiorari denied 111 S.Ct. 1580, 499 U.S. 959, 113 L.Ed.2d

645, certiorari denied 111 S.Ct. 1582, 499 U.S. 959, 113 L.Ed.2d 646

109. The award is unwarranted since this was the attorney's first federal case *cf. Id*.

110. Imposition of damages and costs for frivolous and vexatious appeal requires clear showing of bad faith. State of W. Va. v. Chas. Pfizer & Co., C.A.2 (N.Y.) 1971, 440 F.2d 1079, certiorari denied 92 S.Ct. 81, 404 U.S. 871, 30 L.Ed.2d 115

111. While the case law clearly shows that 28 USC 1927 is clearly inapplicable for both because there was no instance the non-movant or cross movant was ever sanctioned under the statute for the motion practice.


112. There were never sanctions under the statute for procedural errors, if the conduct here even involved errors.

113. There was never a sanction for an attorney prosecuting his or her first case in federal court.

114. If the Court in this case, however, determines, that the matter was referred to His Honor solely for the determination of costs, then one need refer to earlier ¶¶ to reaccount for the number of hours needed which are negligible.

115. Finally, the hourly amount assessed should be reduced. For one the Federal Government does not assess costs and fees under 28 USC 1927. Why does the State or Municipal Government, do so?

116. Surely the Government is a non profit organization and it should bill, if at all, to appropriate rates as to costs.

117. At the CAMP conference, I requested Mr. Martinez salary, he was instructed by the Appellate Division Attorney attending the conference not to respond so that I must estimate his salary.

118. The website for the Law Department indicates that attorneys just graduating from law school are paid $62,037. It also indicates that they are given increments for admission to the Bar and after a year with the Department. Typically even in large law firms paying their beginning Associates twice or more the beginning salary that the Law Department pays, the increment for admission to the Bar is $5000. Mr. Martinez was at the Law Department for one year when the case was assigned to him and he had not yet reached his second anniversary when the allegations that are ay issue at this inquest occurred.

119. Therefore, Mr. Martinez salary at time of some of the allegations is estimated at $72,037.00.

120. Competitive law firms usually expect their Associates to work 1800 billable hours a year. Calculating for the Law Department Vacations etc. Asst. Corp Counsel work 1856 hours  At the average of the  level of effort, Mr. Martinez hourly rate is $36.23/hr. Governments are non-profit institutions, there is no reason that when Mr. Martinez hourly work costs $36.25./hr [less, I suspect if he works much more than this; e.g. if he has 2100 billable hours per year he earns $35/hr, and if he has 2400 billable hours per year (the maximum) he earns $30/hr]. Therefore he should not bill out at $175/hr but at between $30 and $40 per hour as a not for profit actual cost rate.

121. As to how many hours are reasonable for Mr. Martinez to bill; while I believe none, I am a pragmatist rather than an egotist, so whatever is the least likely to be an issue for appeal by me, and for His Honor to follow the question that Judge Batts referred to him, following the mitigation as explained in ¶ 93 Mr. Martinez could not have spent more that 2-3 hours if he merely removed the offending statement in the motion papers, if he identified any statements the he considered, if any, inappropriate for our reply to our cross-motion (as already stated, from my experience with other attorneys being trained in his Division, he might not have known that Plaintiff had the right to a reply of his cross-motion, and thus, was erroneously calling our reply a "surreply";finally there should not have been problem either not having to resubmit the memorandum, because it was not erroneously struck, and this was not resubmitted. Essentially Mr. Martinez made work for himself just to strike out at me and give himself an unfair advantage.

## CONCLUSION

Given these legal standards, there should be no sanctions assessed.  Answering Mr. Martinez critical letters that he did not like when it was difficult to up load to ECF, that there were too many footnotes, that the margins were slightly off (I set then to be 1" all around) *inter alia.*  Mr. Martinez spent the entire time complaining and asking that I be sanctioned for infractions that he invented and that I had to spend hours and hours rebutting; it is he who should be sanctioned –this sanction is almost always used with defendants who want to prolong when they will have to "pay damages." Mr. Martinez made work for himself to blame me and move to sanction me and that is just plain bad faith.  Finally if all these arguments are rejected then, the imposition of fees should be no greater than at Martinez actual salary not some rate he arrogates to himself, and should consider that this is the

rate, that the Executive Office would have billed him out at, and that even that is much more than my willing clients can afford.

---

**DECLARATION UNDER 28 USC § 1746**

I declare, verify, certify and state that the facts and statements contained herein are true and accurate to the best of my knowledge, information and belief and are based on reliable sources within the Office of the Corporation Council, from certain Defendant NYC DOE employees and documents I received from Defendant NYCDOE employees.

Dated: November 9, 2010                    _____/s/_____
New York, New York                                      JOY HOCHSTADT (JH0935)